IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| **COUNCIL ON AMERICAN-ISLAMIC RELATIONS TEXAS DALLAS FORT WORTH** and **COUNCIL ON AMERICAN-ISLAMIC RELATIONS AUSTIN TEXAS**, <br><br> *Plaintiffs*, <br><br> vs. <br><br> **GOVERNOR GREG ABBOTT**, in his official capacity, **ATTORNEY GENERAL KEN PAXTON**, in his official capacity, <br><br> *Defendants*. | CASE No.: 1:25-cv-01878 <br><br> CIVIL ACTION <br><br><br> **PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> JURY TRIAL DEMANDED |

**PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Council on American-Islamic Relations Texas Dallas Fort Worth ("CAIR DFW") and Council on American-Islamic Relations Austin Texas ("CAIR Austin") (together, "Plaintiffs") by and through undersigned counsel, file this Complaint for Declaratory and Injunctive Relief against Defendant Greg Abbott, in his official capacity as Governor of Texas ("Governor" or "Defendant Abbott"), and Defendant Ken Paxton, in his official capacity as Attorney General of Texas ("Attorney General" or "Defendant Paxton") (together, "Defendants"). Plaintiffs present the following claims for relief and supporting factual background.

## I. INTRODUCTION

Governor Abbott improperly invoked the power of his office to designate Plaintiffs as "foreign terrorist organizations" and "transnational criminal organizations" without due process and in violation of federal law. He thus empowered Attorney General Paxton to pursue actions to deprive Plaintiffs and their members of their constitutionally protected property rights in the state of Texas, creating an imminent risk of harm. This attempt to punish the nation's largest Muslim

1

civil rights and advocacy organization simply because Governor Abbott disagrees with its views is not only contrary to the United States Constitution, but finds no support in any Texas law. CAIR has spent the last 31 years vocally speaking up against all forms of bigotry and unjust violence, hate crimes, and terrorism. Governor Abbott's proclamation is defamatory and finds no basis in law or fact, and Plaintiffs therefore ask this Court to declare the Proclamation illegal, and enjoin its enforcement.

## II. PARTIES

1. Plaintiff CAIR DFW is a nonprofit organization designated as tax-exempt under Section 501(c)(3) of the Internal Revenue Code in 2012. It maintains its principal place of business in Richardson, Texas.

2. Plaintiff CAIR Austin is a nonprofit organization designated as tax exempt under Section 501(c)(3) of the Internal Revenue Code in 2017. It maintains its principal place of business in Austin, Texas.

3. Defendant Abbott is the Governor of Texas. He is sued in his official capacity.

4. Defendant Paxton is the Attorney General of Texas. He is sued in his official capacity.

## III. JURISDICTION AND VENUE

5. This Court possesses federal question jurisdiction under 28 U.S.C. § 1331 and jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201.

6. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant Abbott resides in this judicial district.

7. Defendant Paxton is subject to this Court's jurisdiction because he is threatening and about to commence proceedings to enforce an unconstitutional act violating the federal constitution. *Ex Parte Young*, 209 U.S. 123, 155-56 (1908).

8. Defendant Abbott is subject to this Court's jurisdiction because his actions violated the First Amendment by issuing a Proclamation that chills Plaintiffs' freedom of speech and freedom of association, and retaliates against Plaintiffs for their exercise of their rights. *See Freedom from Religion Found., Inc. v. Abbott*, 955 F.3d 417, 425 (5th Cir. 2020).

## IV. STATEMENT OF FACTS

9. The Council on American Islamic Relations ("CAIR National") is the nation's largest Muslim civil rights and advocacy organization.

10. It was founded in 1994 and operates as a registered 501(c)(3) nonprofit organization.

11. CAIR National has 25 affiliated chapters nationwide, including Plaintiffs in this lawsuit, and over 500 board and staff members across the country, including eight employees and two independent contractors in Texas.

12. Plaintiffs are two affiliates of CAIR National that operate in Texas.

13. CAIR National and its affiliates, including Plaintiffs, pursue their mission to enhance the American public's understanding of Islam, protect civil rights, promote justice, and empower American Muslims.

14. CAIR National and its affiliates, including Plaintiffs, stand against all forms of bigotry, including anti-Black racism, Islamophobia, anti-Palestinian racism, and antisemitism, as well as all forms of unjust violence, including hate crimes, ethnic cleansing, genocide, and terrorism.

15. CAIR National and its affiliates, including Plaintiffs, play a leading role in debunking the arguments of both anti-Muslim extremists and Muslim extremists who attempt to paint Islam as a religion of wanton violence.

16. CAIR condemned terrorism so often that ISIS once targeted CAIR's national executive director. CAIR has also condemned suicide bombings by Hamas as far back as the 1990s, and attacks against civilians perpetrated on October 7, 2023.

17. CAIR has also strongly criticized U.S. support for the Israeli government's human rights abuses against the Palestinian people, including occupation, ethnic cleansing, and genocide.

18. Despite years of smear campaigns, the fact remains that CAIR, through its affiliates, including Plaintiffs, are independent American nonprofits that operate in full compliance with all federal, state, and local laws.

19. Neither CAIR National nor its affiliates, including Plaintiffs, are members, chapters, offshoots, or affiliates of any foreign organization.

20. As part of its mission to support civil rights in the United States, CAIR has, over the course of the last six years, successfully sued Governor Abbott and other Texas officials three times over governmental acts contrary to the First Amendment.

21. CAIR National, though its Legal Defense Fund, filed a lawsuit on May 16, 2024 on behalf of two student groups and the Democratic Socialists of America against Governor Abbott and others after Governor Abbott signed an executive order directing universities to institute rules punishing students for criticism of Israel. *See* Complaint for Damages, Declaratory, and Injunctive Relief, Students for Justice in Palestine, at the University of Houston, et al. v. Greg Abbott, et al., No. 1:24-cv-00523 (W.D. Tex. May 16, 2024), ECF No. 1.

22. Previously, CAIR National, through its Legal Defense Fund, won an injunction against the City of Houston and Attorney General Ken Paxton prohibiting enforcement of a state law

4

|   |   |
|---|---|
|   | that disallowed state government entities from entering into contracts unless the contracting company verifies that it will not "boycott Israel during the term of the contract." *See* Order, A&R Engineering and Testing, Inc. v. City of Houston, et al., No. 4:21-cv-03577 (S.D. Tex. Jan. 28, 2022), ECF No. 33. |
| 23. | Before that, CAIR National, through its Legal Defense Fund, won an injunction against a previous version of the anti-boycott law. *See* Order, Bahia Amawi v. Pflugerville Independent School District, et al., No. 1:18-cv-01091-RP (W.D. Tex. Apr. 25, 2019), ECF No. 82. |
| 24. | CAIR National also released a report in August 2025 highlighting the extent that Governor Abbott's administration targets American Muslims living in Texas. |
| 25. | On November 18, 2025, Governor Abbott issued a Proclamation declaring CAIR to be a "successor organization" of the Muslim Brotherhood and a Foreign Terrorist Organization under Texas Penal Code § 71.01(e). Exhibit A. |
| 26. | Governor Abbott's Proclamation refers to CAIR generally, and does not acknowledge CAIR's corporate structure, including a National office and affiliated chapters. |
| 27. | The Proclamation's language and references to CAIR's National Executive Director seem to implicate CAIR National. |
| 28. | However, the direct effects of the Proclamation are felt by the CAIR chapters in Texas—Plaintiffs CAIR DFW and CAIR Austin. |
| 29. | The Proclamation purported to designate CAIR as a "successor organization" to the Muslim Brotherhood as a Transnational Criminal Organization and a proscribed entity under Texas Property Code § 5.254(a)(2)(A), subject to Chapter 5 of the Texas Property Code, and prohibited from purchasing or acquiring land in Texas. |

30. Governor Abbott's Proclamation relies on inflammatory statements that have no basis in fact, such as claiming that CAIR is an "Islamist" organization that operates as a "'front group' for 'Hamas and its support network' in the United States." Exhibit A at 1.

31. The Proclamation also references CAIR's status as an *unindicted* co-conspirator in a legal proceeding in the early 2000s, but ignores the fact that the government never filed any charges against CAIR, that the government assigned the same label to dozens of other organizations, and that a federal appeals court later ruled the declarations improper. Exhibit A at 2.

32. It further cherry-picks statements from individuals with various levels of affiliation with CAIR, claiming that those uncited statements somehow support that CAIR supports terrorism or terrorist actors.

33. Governor Abbott also claims that CAIR seeks to impose "Sharia law" on Texans, without anything to support that contention. Exhibit A at 2.

34. Relying on these provably false statements, Governor Abbott purports to designate CAIR as an entity which cannot acquire an interest in real property in Texas.

35. He asserts that this designation enables "heightened penalties" under Texas law for association with and promotion or aid of CAIR and its activities.

36. Pursuant to Texas Property Code § 5.253(2)(D), the Governor may designate any entity as subject to the prohibitions in the statute.

37. Pursuant to Texas Property Code § 5.254, the Governor need only "consult[] with the public safety director of the Department of Public Safety" prior to making this designation and imposing heightened restrictions and penalties.

38. The Proclamation enables Defendant Paxton to act against CAIR, its affiliates, and "any persons promoting or aiding their criminal activities" without first providing due process.

39. No CAIR employee or agent received any notification of this planned designation, nor was CAIR afforded any opportunity to defend itself or rebut the accusations against it.

40. The first time CAIR became aware of this action by Governor Abbott was via Governor Abbott's press release about the designation. *See* Office of the Texas Governor, Governor Abbott Designates Muslim Brotherhood, CAIR As Foreign Terrorist Organizations (Nov. 18, 2025), https://gov.texas.gov/news/post/governor-abbott-designates-muslim-brotherhood-cair-as-foreign-terrorist-organizations.

41. Despite the plethora of issues that Texans face, Governor Abbott took the time to launch this baseless and unlawful attack on a major U.S. organization.

42. Plaintiffs CAIR DFW and CAIR Austin have standing to challenge Defendants' unlawful acts because, as affiliates of CAIR National operating in Texas, they are directly harmed by the Proclamation which purports to subject them to enhanced civil and criminal penalties within the state.

43. Defendant Abbott is properly before this Court because his actions violated the First Amendment by issuing a Proclamation that chills Plaintiffs' freedom of speech and freedom of association. *See Freedom from Religion Found., Inc. v. Abbott*, 955 F.3d 417, 425 (5th Cir. 2020) (finding that a lawsuit against Governor Abbott in his official capacity for violation of the federal Constitution falls within the *Ex Parte Young* exception to sovereign immunity).

44. Defendant Paxton is properly before this Court because he is charged with enforcing an unconstitutional act violating the federal constitution, causing imminent threat of harm to Plaintiffs.

V. CAUSES OF ACTION

**Count I: Preemption, Against Defendant Paxton**

45. Plaintiffs allege and incorporate by reference paragraphs 10-44 above.

46. The Supremacy Clause, Article VI, Section 2, of the United States Constitution provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof, and all Treaties made, or which shall be made, under the Authority of the United States, shall be the Supreme Law of the Land."

47. A bedrock principle of the Constitution is that Congress has the power to preempt state law. State law must yield to federal law when Congress intends federal law to "occupy the field." *Crosby v. Nat'l Foreign Trade* Council, 530 U.S. 363 (2000).

48. The power to conduct foreign policy and levy sanctions is a federal power derived from the U.S. Constitution and Congressional acts.

49. The federal government "occupies the field" of foreign relations and sanctions. State sanctions on foreign terrorist organizations are preempted by federal law. *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000).

50. The United States Secretary of State holds the authority to designate an entity a "foreign terrorist organization." 8 U.S.C. §§ 1189(a)(1), (d)(4).

51. To designate an organization a "foreign terrorist organization," the Secretary of State determines that the entity is 1) foreign; 2) engages in terrorist activity or terrorism; and 3)

threatens the security of the United States nationals or the national security of the United States. *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010).

52. Defendants are not the U.S. Secretary of State and do not have the power to designate an entity a "foreign terrorist organization."

53. Plaintiffs are domestic organizations that operate exclusively in the United States.

54. Plaintiffs are not foreign organizations and therefore cannot be designated as "foreign terrorist organizations."

55. Plaintiffs do not engage in terrorist activity or terrorism; therefore, they cannot be designated as "foreign terrorist organizations."

56. Plaintiffs' nonprofit work does not threaten the security of U.S. nationals nor the national security of the United States. Therefore, they cannot be designated as "foreign terrorist organizations."

57. Wrongfully and unilaterally designating Plaintiffs as "foreign terrorist organizations," and declaring them unable to purchase land in the state of Texas harms Plaintiffs' advocacy work, fundraising initiatives, and reputation as organizations.

58. Given that state law is preempted by federal law, Plaintiffs are entitled to injunctive relief prohibiting Defendant Paxton from enforcing the Proclamation against them.

**Count II: Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, Against Defendant Paxton**

59. Plaintiffs allege and incorporate by reference paragraphs 10-44 above.

60. The Fourteenth Amendment of the Constitution prohibits states, including Texas, from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. CONST., amend. XIV.

61. Under the Due Process Clause, Plaintiffs are entitled to a right to be heard and a meaningful opportunity to respond regarding the deprivation or harm to their liberty and property interests. *See KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner*, 647 F. Supp. 2d 857, 897 (N.D. Ohio 2009) (citing *Mathews v. Elridge*, 424 U.S. 319, 333, 348 (1974)) (holding government's blocking order depriving organization of assets violated due process for failing to provide "meaningful notice and opportunity to be heard").

62. Plaintiffs, as organizations operated wholly and lawfully within the United States, do not meet the statutory definitions of "Foreign Terrorist Organization" under Texas Law. Tex. Penal Code 71.01(e) (defining "foreign terrorist organization" as "three or more persons operating as an organization at least partially outside the United States who engage in criminal activity and threaten the security of this state or its residents").

63. Nor do Plaintiffs meet the definition of a "Transnational Criminal Organization" under Texas law. Tex. Prop. Code § 5.251(7) (defining "transnational criminal organization" as "two or more persons: (A) who are citizens of or domiciled in a designated country; (B) with an identifiable leadership who operate internationally; and (C) who continuously or regularly associate to engage in corruption, violence, or the commission of other criminal activities").

64. Despite Plaintiffs not meeting the statutory definitions of "Foreign Terrorist Organization" or "Transnational Criminal Organization," Governor Abbott, after consultation with Freeman Miller, the Public Safety Director or the Department of Public Safety and Chief A. Gerald Brown of the Texas Homeland Security Division, unlawfully designated Plaintiffs as entities subject to penalties regarding acquisition and possession of property without due process pursuant to Texas Property Code §§ 5.253, 5.254(2)(A).

65. Governor Abbott's Proclamation deprives Plaintiffs of their procedural due process rights by designating them as "Foreign Terrorist Organizations" under Texas Penal Code 71.01, "Transnational Criminal Organizations" under Texas Property Code § 5.251, and proscribed entities via designation by the governor under Texas Property Code § 5.254 without providing Plaintiffs the right to respond to and challenge the designations.

66. Governor Abbott's Proclamation deprives Plaintiffs of their substantive due process rights by subjecting Plaintiffs to loss of property as a result of their unlawful designations as "Foreign Terrorist Organizations," "Transnational Criminal Organizations," and proscribed entities via designation by the governor under Texas Property Code § 5.254. *See* Tex. Civ. Prac. & Rem. Code § 125.064–125.065, 125.070; Texas Prop. Code § 5.254.

67. Plaintiffs have not been afforded any right to be heard or a meaningful opportunity to respond regarding the deprivation and harm to their liberty and property interests in real estate and continued existence in the state of Texas.

68. Plaintiffs have not been afforded any right to be heard or meaningful opportunity to respond to the governor's false proclamation that CAIR, including all affiliates, is a "successor organization" to the Muslim Brotherhood.

69. As a result of the lack of due process, Plaintiffs are entitled to injunctive relief prohibiting Defendant Paxton from enforcing the provisions implicated by Governor Abbot's Proclamation.

**Count III: First Amendment – Freedom of Speech, Against Defendant Abbott**

70. Plaintiffs allege and incorporate by reference paragraphs 10-44 above.

71. The First Amendment prohibits state officials from restricting or punishing protected speech because they oppose its content or message.

11

72. This protection is strongest when the speech concerns public affairs, political advocacy, minority communities, and matters of social concern.

73. Under exacting scrutiny, Governor Abbott must show (1) a significant governmental interest, (2) that the designation furthers that interest, and (3) that it is narrowly tailored.

74. He cannot. The Proclamation is based on disfavored viewpoints, unsupported assertions, and no evidence of Plaintiffs' wrongdoing; it does not further any legitimate state interest; and it is sweeping rather than narrowly tailored.

75. Plaintiffs engage in core political expression, including civil rights advocacy, public education, community organizing, interfaith work, and commentary on domestic and international policy affecting American Muslims.

76. All such activity is fully protected by the First Amendment.

77. Governor Abbott's Proclamation identifies no criminal conduct by Plaintiffs. Instead, it relies almost entirely on political speech and advocacy – particularly remarks by CAIR's Executive Director encouraging civic engagement, political participation, and representation by American Muslims.

78. These statements are quintessential political and religious expressions. Yet Governor Abbott invoked them to claim Plaintiffs seek to "advance Sharia law in America," a characterization rooted in stereotype and hostility rather than evidence.

79. A state official may not wield governmental power to punish an organization or silence its advocacy because of disagreement with its speech, its religious identity, or the communities it represents.

80. The Proclamation imposes severe burdens on Plaintiffs' protected speech by attaching criminal and civil consequences to its continued advocacy, restricting Plaintiffs and their

members' ability to operate or acquire property, and chilling the willingness of community members, partners, and supporters to associate with Plaintiffs.

81. CAIR National has operated for decades as a mainstream American civil rights organization and has never been designated as a terrorist or criminal organization by the United States government.

82. Its work - legal advocacy, education, and civic engagement - is protected expression central to the First Amendment.

83. Governor Abbott's Proclamation unlawfully targets Plaintiffs because of their protected speech and political advocacy and was issued to silence, punish, and chill Plaintiffs' expression on behalf of American Muslims.

84. Plaintiffs are entitled to declaratory relief that the Proclamation violates the First Amendment and to injunctive relief prohibiting its enforcement, publication, or continued effect.

**Count IV: First Amendment – Freedom of Association, Against Defendant Abbott**

85. Plaintiffs allege and incorporate by reference paragraphs 10-44 above.

86. The First Amendment protects expressive association, the right of individuals to join together and advance shared ideas and beliefs.

87. Courts engage in a three-part balancing test to determine whether a challenged action infringes on expressive association: 1) whether the group engages in expressive association; 2) whether the challenged act significantly burdens the group's ability to advocate its viewpoints; and 3) whether the state's interest justifies the burden by being narrowly tailored to a compelling state interest unrelated to suppressing ideas. *See Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984).

88. Plaintiffs are quintessential expressive-association organizations. Their members, volunteers, staff, and community partners join together to advance shared goals of protecting civil liberties, combating discrimination, and advocating on issues affecting American Muslims and other minority communities.

89. Governor Abbott's Proclamation significantly burdens this protected associational activity.

90. By designating Plaintiffs as "Foreign Terrorist Organizations" and "Transnational Criminal Organizations," the Proclamation threatens civil and criminal consequences for Plaintiffs, their staff, supporters, and anyone who collaborates with or assists the organizations.

91. These consequences – including the risk of liability for "assisting," "promoting," or "associating with" a designated entity under Texas law - chill participation in CAIR's work.

92. Community members, donors, volunteers, and partner organizations reasonably fear that affiliating with Plaintiffs could expose them to investigation, penalties, or reputational harm.

93. The Proclamation also relies on the alleged or actual misconduct of individuals who, at various points in the past, had personal or incidental connections to CAIR National and Plaintiffs, despite no evidence that these individuals acted on behalf of Plaintiffs or that Plaintiffs endorsed their conduct.

94. Governor Abbott cannot demonstrate that the Proclamation is narrowly tailored, or that it serves a compelling interest unrelated to suppressing lawful association.

95. The designation is sweeping, unsupported by evidence, and imposes far broader burdens on association than any legitimate state interest could justify.

96. As a result, the Proclamation substantially infringes Plaintiffs' First Amendment right to expressive association by deterring individuals and organizations from joining, supporting, partnering with, or participating in Plaintiffs' lawful advocacy.

97. Plaintiffs are entitled to declaratory and injunctive relief prohibiting the enforcement, publication, or continued maintenance of Governor Abbott's Proclamation.

**Count V: First Amendment – Retaliation, Against Defendant Abbott**

98. Plaintiffs allege and incorporate by reference paragraphs 10-44 above.

99. To support its claim for First Amendment retaliation, Plaintiffs show that: (1) they engaged in protected First Amendment activity; (2) Defendant Abbott took adverse action that would deter a person of ordinary firmness from continuing to engage in that activity; and (3) there is a causal relationship between the protected activity and the adverse action. *See, e.g., Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

100. Plaintiffs exercised their First Amendment rights by engaging in political and social advocacy relevant to the Muslim community, including speaking on matters of public concern, promoting civic engagement, and advocating for government accountability on domestic and international issues affecting Muslims and minority groups in America.

101. Plaintiffs have also challenged Governor Abbott's unconstitutional actions in federal court on multiple occasions, including lawsuits arising from his efforts to restrict pro-Palestinian advocacy and suppress civil liberties in Texas.

102. Governor Abbott – who has publicly aligned himself with the Israeli government and taken repeated steps to suppress dissent on campuses and in civil society across Texas - took adverse action against Plaintiffs by publicly designating them as "Foreign Terrorist

Organizations," circulating unsupported allegations, and preventing Plaintiffs from owning or acquiring property in Texas.

103. This designation necessarily discourages Plaintiffs from continuing their protected First Amendment speech and association, and sends a clear message to other organizations and individuals that engaging in advocacy related to Palestine, civil rights, or issues affecting minority communities will trigger state retaliation.

104. Defendant Abbott relied on constitutionally protected statements made by CAIR's Executive Director - including urging American Muslims to be civically involved - as well as alleged associations with individuals whose activities have no connection to CAIR's advocacy. Defendant Abbott also misquotes CAIR's Executive Director by falsely inserting a reference to establishing "Sharia Law" in America that he never made.

105. These protected activities were used as the stated justification for the designation.

106. Defendant Abbott lacks any legitimate, evidence-based justification for this action.

107. His public statements demonstrate that his motivation was to silence and chill CAIR's protected advocacy because he disagrees with its views.

108. Plaintiffs are therefore entitled to declaratory and injunctive relief prohibiting enforcement, publication, or continued maintenance of Governor Abbott's Proclamation.

## VI.     PRAYER FOR RELIEF

Plaintiffs pray for judgment in its favor and against Defendant Abbott, and respectfully requests this Court grant the following relief:

1. Declare that the Proclamation issued by Defendant Abbott violates the United States Constitution;

2. Preliminarily enjoin Defendants from enforcing the Proclamation for the duration of the lawsuit;

3. Permanently enjoin Defendants from enforcing the Proclamation;

4. Trial by jury on all issues so triable;

5. Award Plaintiffs compensatory damages of an amount to be decided at trial; and

6. Grant such other relief as the Court may deem just and proper.

Respectfully submitted this 20th day of November, 2025.

*/s/ Chelsea G. Glover*
Chelsea G. Glover
Bar No. 24097738
Charles D. Swift
Bar No. 24091964
Jinan Chehade
*Admission Pending*

Muslim Legal Fund of America
100 N. Central Expy. Suite 1010
Richardson, Texas 75080
Tel: (972) 914-2507; Fax (972) 692-7454
cglover@clcma.org
cswift@clcma.org
jinan.chehade@mlfa.org

Lena F. Masri
Bar No. P73461
Gadeir Abbas
Bar No. 81161

CAIR Legal Defense Fund
453 New Jersey Ave. SE
Washington, DC 20003
T: (202) 488-8787
lfmasri@cair.com
gabbas@cair.com
*Attorneys for Plaintiffs*
