RECEIVED

JAN 06 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ CR
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| COUNCIL ON AMERICAN-ISLAMIC RELATIONS TEXAS DALLAS FORT WORTH, COUNCIL ON AMERICAN-ISLAMIC RELATIONS AUSTIN TEXAS, and COUNCIL ON AMERICAN-ISLAMIC RELATIONS TEXAS, <br><br> *Plaintiffs,* <br><br> vs. <br><br> **GOVERNOR GREG ABBOTT**, in his official capacity, <br><br> **ATTORNEY GENERAL KEN PAXTON**, in his official capacity, <br><br> *Defendants.* | CASE No.: 1:25-cv-01878-ADA <br><br> CIVIL ACTION <br><br><br> **PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> JURY TRIAL DEMANDED |

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Council on American-Islamic Relations Texas Dallas Fort Worth ("CAIR DFW"), Council on American-Islamic Relations Austin Texas ("CAIR Austin"), and Council on American-Islamic Relations Texas ("CAIR Texas") (together, "Plaintiffs") by and through undersigned counsel, file this First Amended Complaint for Declaratory and Injunctive Relief against Defendant Greg Abbott, in his official capacity as Governor of Texas ("Governor" or "Defendant Abbott"), and Defendant Ken Paxton, in his official capacity as Attorney General of Texas ("Attorney General" or "Defendant Paxton") (together, "Defendants"). Plaintiffs present the following claims for relief and supporting factual background.

## I. INTRODUCTION

Governor Abbott, via Proclamation 41-4121, purports to designate Plaintiffs as "foreign terrorist organizations" and "transnational criminal organizations" and to impose legal

consequences on that basis. The Proclamation further purports to prohibit Plaintiffs from purchasing or acquiring interests in real property in Texas, thereby empowering Attorney General Paxton to pursue enforcement proceedings. This attempt to punish the nation's largest Muslim civil rights and advocacy organization is contrary to the United States Constitution and finds no support in any Texas law. CAIR has spent the last 31 years vocally speaking up against all forms of bigotry and unjust violence, hate crimes, and terrorism. Plaintiffs therefore ask this Court to declare the Proclamation illegal and enjoin its enforcement.

## II.   PARTIES

1. Plaintiff CAIR DFW is a nonprofit organization designated as tax-exempt under Section 501(c)(3) of the Internal Revenue Code in 2012. It maintains its principal place of business in Richardson, Texas.

2. Plaintiff CAIR Austin is a nonprofit organization designated as tax-exempt under Section 501(c)(3) of the Internal Revenue Code in 2017. It maintains its principal place of business in Austin, Texas.

3. Plaintiff CAIR Texas is a Texas nonprofit organization registered with the Texas Secretary of State since 2008. It maintains its principal place of business in Houston, Texas.

4. Defendant Abbott is the Governor of Texas. He is sued in his official capacity.

5. Defendant Paxton is the Attorney General of Texas. He is sued in his official capacity.

## III.   JURISDICTION AND VENUE

6. This Court possesses federal question jurisdiction under 28 U.S.C. § 1331 and jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201.

7. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims—including the issuance and intended enforcement of the Proclamation—occurred in this judicial district.

8. Defendant Paxton is subject to this Court's jurisdiction, because he is charged with enforcing, and has threatened to enforce, an unconstitutional act violating the federal constitution.[1]

9. Defendant Abbott is subject to this Court's jurisdiction because his actions violate the Fourteenth and First Amendments by issuing a Proclamation that denies Plaintiffs due process and penalizes Plaintiffs for exercising their rights to freedom of speech.[2]

## IV. STATEMENT OF FACTS

10. The Council on American-Islamic Relations ("CAIR National") is the nation's largest Muslim civil rights and advocacy organization.

11. It was founded in 1994 and operates as a registered 501(c)(3) nonprofit organization.

12. CAIR National has affiliated chapters nationwide, including Plaintiffs in this lawsuit, and maintains board and staff members across the country, including personnel in Texas.

13. Plaintiffs are three affiliates of CAIR National that operate in Texas.

14. CAIR National and its affiliates, including Plaintiffs, pursue their mission to enhance the American public's understanding of Islam, protect civil rights, promote justice, and empower American Muslims.

15. CAIR National and its affiliates, including Plaintiffs, stand against all forms of bigotry, including anti-Black racism, Islamophobia, anti-Palestinian racism, and antisemitism, as

---

[1] *Ex parte Young*, 209 U.S. 123, 155–56 (1908).
[2] *See Freedom from Religion Found., Inc. v. Abbott*, 955 F.3d 417, 424–25 (5th Cir. 2020) (citing *NiGen Biotech, LLC v. Paxton*, 804 F.3d 389, 394–95 (5th Cir. 2015)).

well as all forms of unjust violence, including hate crimes, ethnic cleansing, genocide, and terrorism.

16. CAIR National and its affiliates, including Plaintiffs, play a leading role in debunking the arguments of both anti-Muslim extremists and Muslim extremists who attempt to paint Islam as a religion of wanton violence.

17. CAIR has consistently and publicly condemned terrorism so often that ISIS once targeted CAIR's national executive director. CAIR has also condemned suicide bombings by Hamas as far back as the 1990s, and attacks against civilians perpetrated on October 7, 2023.

18. CAIR has also strongly criticized U.S. support for the Israeli government's human rights abuses against the Palestinian people, including occupation, ethnic cleansing, and genocide.

19. As part of its mission to support civil rights in the United States, CAIR has, over the course of the last six years, successfully challenged unconstitutional actions by Governor Abbott and other Texas officials in federal court.

20. CAIR National, through its Legal Defense Fund, filed a lawsuit on May 16, 2024 on behalf of two student organizations and the Democratic Socialists of America against Governor Abbott and other officials after the governor signed an executive order directing public universities to institute rules punishing students for criticism of Israel.[3]

21. Previously, CAIR National, through its Legal Defense Fund, obtained an injunction against the City of Houston and Attorney General Ken Paxton prohibiting enforcement of a state

---

[3] *See* Complaint for Damages, Declaratory, and Injunctive Relief, *Students for Justice in Palestine, at the Univ. of Houston, et al. v. Greg Abbott, et al.*, No. 1:24-cv-00523 (W.D. Tex. May 16, 2024), ECF No. 1.

law requiring contractors to certify that they would not "boycott Israel" as a condition of contracting with the government.[4]

22. Before that, CAIR National, through its Legal Defense Fund, obtained an injunction against a prior version of the same anti-boycott law.[5]

23. CAIR National also released a report in August 2025 highlighting the extent to which Governor Abbott's administration targets American Muslims living in Texas.

24. On November 18, 2025, Governor Abbott issued Proclamation 41-4241 declaring CAIR to be a "successor organization" of the Muslim Brotherhood and a Foreign Terrorist Organization under Texas Penal Code § 71.01(e). Exhibit A.

25. Governor Abbott's Proclamation refers to CAIR generally, and does not acknowledge CAIR's corporate structure, including a national office and affiliated chapters.

26. The Proclamation's language and references to CAIR's National Executive Director indicate that the designation was directed at CAIR as a whole, without distinction among its constituent entities.

27. However, the direct legal effects of the Proclamation are felt by CAIR's affiliated chapters operating in Texas, including Plaintiffs CAIR-DFW, CAIR-Austin, and CAIR-Texas.

28. The Proclamation further purports to classify CAIR as both a "Transnational Criminal Organization" and "Foreign Terrorist Organization" by executive designation, and to attach legal consequences on that basis.

---

[4] See A&R Engineering and Testing, Inc. v. City of Houston, 582 F. Supp. 3d 415 (S.D. Tex. 2022).
[5] See Amawi v. Pflugerville Indep. Sch. Dist., 373 F. Supp. 3d 717 (W.D. Tex. 2019).

29. The Proclamation also designated CAIR as a proscribed entity under Texas Property Code § 5.254(a)(2)(A), prohibited from purchasing or acquiring land in Texas, and subject to penalties under Chapter 5 of the Texas Property Code.

30. Through the Proclamation and by invoking Texas Property Code § 5.254, Governor Abbott purports to prohibit CAIR from purchasing or acquiring an interest in real property in Texas.

31. Governor Abbott further asserts that this designation subjects CAIR and anyone associated with it to "heightened penalties" under Texas law, including penalties for conduct the Proclamation characterizes as providing assistance or support to CAIR.

32. Pursuant to Texas Property Code § 5.253(2)(D), the Governor may designate an entity as subject to the prohibitions set forth in Chapter 5 of the Texas Property Code.

33. Pursuant to Texas Property Code § 5.254, the Governor need only "consult[] with the public safety director of the Department of Public Safety" prior to issuing such a designation and imposing heightened restrictions and penalties.

34. Through the Proclamation, Governor Abbott purports to authorize Defendant Paxton to initiate enforcement actions against CAIR, its affiliates, and any persons the Proclamation characterizes as "promoting or aiding" CAIR, without first providing notice or an opportunity to be heard.

35. Neither CAIR nor any of its employees or agents received advance notice of the designation, nor was CAIR afforded any opportunity to respond to or contest the Proclamation prior to its issuance.

36. The first time CAIR became aware of the Proclamation was through Governor Abbott's press release announcing the designation.[6]

37. In that press release, Governor Abbott referred to CAIR as "radical extremists" who were "not welcome in [Texas]" and stated that CAIR was "now prohibited from acquiring any real property interest in Texas."[7]

38. The same evening after issuing the Proclamation, Governor Abbott publicly commented on CAIR's anticipated lawsuit, stating that, "[t]he lawsuits will open the doors to all of their financial transactions and funding" and that "[t]he Attorney General will have a heyday."[8]

39. Since issuing the Proclamation, Governor Abbot directed state law enforcement agencies to take action against CAIR.

40. On November 20, 2025, Governor Abbott directed the Texas Department of Public Safety ("DPS") to initiate criminal investigations and enforcement actions against CAIR, including intelligence-gathering and disruption efforts, in coordination with state and federal law enforcement agencies.[9]

---

[6] *See* Office of the Texas Governor, *Governor Abbott Designates Muslim Brotherhood, CAIR as Foreign Terrorist Organizations* (Nov. 18, 2025), https://gov.texas.gov/news/post/governor-abbott-designates-muslim-brotherhood-cair-as-foreign-terrorist-organizations.
[7] *Id.*
[8] Greg Abbott (@GregAbbott_tx), X (Nov. 18, 2025, 7:55 PM), https://x.com/gregabbott_tx/status/1990962057546539107?s=46.
[9] *See* Office of the Texas Governor, *Governor Abbott Directs DPS to Launch Criminal Investigations into Muslim Brotherhood, CAIR* (Nov. 20, 2025), https://gov.texas.gov/news/post/governor-abbott-directs-dps-to-launch-criminal-investigations-into-muslim-brotherhood-cair.

41. Governor Abbott directed Texas DPS to coordinate with the Texas Attorney General's Office regarding enforcement actions related to CAIR, including consideration of additional statutory mechanisms.[10]

42. On December 2, 2025, Governor Abbott sent a letter to the U.S. Secretary of the Treasury Scott Bessent requesting federal action against CAIR's tax-exempt status, citing the Proclamation and related allegations.[11]

43. On December 20, 2025—more than a month after issuing the Proclamation and while enforcement actions were ongoing—Governor Abbott published a public statement titled "America Must Wake Up," disseminated through the Texas State Public Affairs Network.[12]

44. In that statement, Governor Abbott reiterated the same allegations and rhetoric underlying the Proclamation, framing CAIR and related Muslim civil society organizations as part of a broader ideological threat and urging heightened vigilance and action by the public and government alike.

45. The statement did not reference any new evidence, adjudicative findings, or statutory process, nor did it purport to announce a lawful enforcement determination. Instead, it reinforced the Proclamation's narrative and signaled the Governor's continued intent to characterize and treat CAIR as an entity warranting exclusion and heightened scrutiny outside of any judicial or administrative framework.

---

[10] Letter from Governor Greg Abbott to Colonel Freeman Martin, Tex. Dep't. of Pub. Safety (Nov. 20, 2025), https://gov.texas.gov/uploads/files/press/CAIR_Letter_Freeman_Martin_FINAL_2.pdf.

[11] Letter from Governor Greg Abbott to Secretary Scott Bessent, U.S. Dep't. of Treasury (Dec. 2, 2025), https://gov.texas.gov/uploads/files/press/Scott_Bessent.pdf.

[12] *America must wake up*, TEX. STATE PUB. AFFS. NETWORK (Dec. 20, 2025), https://tspantx.com/america-must-wake-up/.

46. On December 23, 2025, in an interview with Fox News Digital, Governor Abbott again doubled down on his Proclamation, referring to Plaintiffs as terrorist supporters and stating, "we will purge them from our state [and] they should be purged from our country."[13]

47. In the interview, Governor Abbott referred to Plaintiffs' support of students protesting for Palestinian rights and opposition to the Israeli government's human rights abuses as grounds for designating Plaintiffs as terrorist organizations and supporters of terrorism.

48. Plaintiffs, as CAIR affiliates operating in Texas, are directly harmed by the Proclamation's legal effects, including the imposition of heightened legal disabilities within the state.

49. At least one Plaintiff currently maintains a property interest in Texas that is directly affected by the Proclamation's restrictions.

50. Defendant Abbott is properly before this Court in his official capacity because Plaintiffs seek prospective declaratory and injunctive relief for ongoing violations of the United States Constitution.[14]

51. Defendant Paxton is properly before this Court because he is charged with enforcing the Proclamation, and Plaintiffs seek prospective relief to prevent ongoing violations of the United States Constitution.[15]

## V.    CAUSES OF ACTION

**Count I: Preemption, Against Defendants Abbott and Paxton**

52. Plaintiffs allege and incorporate by reference paragraphs 10–51 above.

---

[13] Peter Pinedo, *GOP governor lays out plan to 'purge' terrorists and terror supporters from state*, FOX NEWS (Dec. 23, 2025), https://www.foxnews.com/politics/gop-governor-lays-out-plan-purge-terrorists-terror-supporters-from-state.

[14] *See Freedom from Religion Found., Inc. v. Abbott*, 955 F.3d 417, 424–25 (5th Cir. 2020) (holding that a lawsuit against Governor Abbott in his official capacity for violation of the federal Constitution falls within the *Ex parte Young* exception to sovereign immunity).

[15] *Ex parte Young*, 209 U.S. 123, 155–56 (1908).

53. The Supremacy Clause, Article VI, Section 2, of the United States Constitution provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof, and all Treaties made, or which shall be made, under the Authority of the United States, shall be the Supreme Law of the Land."[16]

54. A bedrock principle of the Constitution is that Congress has the power to preempt state law. State law must yield to federal law when Congress intends federal law to "occupy the field."[17]

55. The power to conduct foreign policy and levy sanctions is a federal power derived from the U.S. Constitution and Congressional acts.

56. The federal government "occupies the field" of foreign relations and sanctions. State sanctions on foreign terrorist organizations are preempted by federal law.[18]

57. The United States Secretary of State holds the exclusive authority to designate an entity a "foreign terrorist organization."[19]

58. Defendants are not the U.S. Secretary of State and possess no authority under federal law to designate any organization a "foreign terrorist organization" or to impose consequences that flow from such a designation.

59. Governor Abbot's Proclamation purports to designate CAIR as a foreign terrorist organization and to attach legal consequences to that designation under Texas law. In doing so, the Proclamation intrudes into a field fully occupied by federal law and directly conflicts with Congress's exclusive terrorism-designation framework.

---

[16] U.S. CONST. art. VI § 2.
[17] *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000).
[18] *See id.*
[19] 8 U.S.C. §§ 1189(a)(1), (d)(4).

60. Because the Proclamation is preempted by federal law, it is void and unenforceable under the Supremacy Clause.

61. Plaintiffs are entitled to declaratory and injunctive relief prohibiting its enforcement.

**Count II: Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, Against Defendants Abbott and Paxton**

62. Plaintiffs allege and incorporate by reference paragraphs 10–51 above.

63. The Fourteenth Amendment of the Constitution prohibits states, including Texas, from "depriv[ing] any person of life, liberty, or property, without due process of law."[20]

64. At minimum, Procedural Due Process requires notice and a meaningful opportunity to be heard before the government imposes restrictions that alter an entity's liberty and property interests.[21]

65. Governor Abbott's Proclamation imposes immediate and binding legal consequences on Plaintiffs, including designation as prohibited entities and restrictions on acquiring or holding interests in real property under Texas Property Code §§ 5.253, 5.254(2)(A).

66. Governor Abbott's Proclamation was issued without advance notice to Plaintiffs, without any opportunity to respond or contest the designation, and without any hearing or adjudicative process.

67. Texas law provides no constitutionally adequate procedure by which Plaintiffs could challenge or seek review of the Proclamation either before or after its issuance.

---

[20] U.S. CONST., amend. XIV.
[21] *See KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner*, 647 F. Supp. 2d 857, 897 (N.D. Ohio 2009) (citing *Mathews v. Elridge*, 424 U.S. 319, 333, 348 (1974)) (holding government's blocking order depriving organization of assets violated due process for failing to provide "meaningful notice and opportunity to be heard").

11

68. By imposing legal disabilities through executive designation without notice or an opportunity to be heard, the Proclamation deprives Plaintiffs of liberty and property interests protected by the Fourteenth Amendment.

69. As a result of the Proclamation, Attorney General Paxton is authorized under Texas law to initiate enforcement proceedings based on the designation.[22]

70. Plaintiffs are entitled to declaratory and injunctive relief prohibiting enforcement of the Proclamation and any actions taken pursuant to it.

**Count III: First Amendment – Freedom of Speech, Against Defendant Abbott**

71. Plaintiffs allege and incorporate by reference paragraphs 10–51 above.

72. The First Amendment prohibits state officials from imposing legal restrictions or penalties that burden protected speech because of its content or viewpoint.[23]

73. This protection is at its apex where, as here, the speech concerns civil rights advocacy, public affairs, and matters of public concern affecting minority communities.

74. Plaintiffs engage in First Amendment-protected expression, including civil rights advocacy, public education, litigation, community organizing, interfaith work, and participation in public discourse on issues affecting American Muslims and other minority communities.

75. Government action that imposes legal disabilities on protected speech because of its viewpoint is unconstitutional on its face.

---

[22] *See, e.g.*, Tex. Civ. Prac. & Rem. Code §§ 125.064, 125.070 (authorizing Defendant Paxton to seek injunctive orders against CAIR, its affiliates, and its members as "public nuisances" and for violating any injunctive orders issued under the statute); Tex. Prop. Code § 5.259 (authorizing Defendant Paxton to bring lawsuits against designated entities that purchase or acquire interests in real property in Texas).

[23] *See NRA of Am. v. Vullo*, 602 U.S. 175 (2024) (holding a state official who penalizes regulated entities to punish another entity's protected advocacy and speech violates the First Amendment).

76. By its terms, the Proclamation treats Plaintiffs' protected expression as the trigger for legal disabilities.

77. A state official may not impose legal penalties or disabilities on an organization in response to protected expression.

78. A state official may not wield governmental power to punish an organization or silence its advocacy because of disagreement with its speech or viewpoint.

79. The Proclamation imposes severe burdens on protected speech by attaching legal disabilities to Plaintiffs' continued advocacy and restricting their lawful ability to operate and engage in expressive activity.

80. Plaintiffs are domestic civil rights organizations engaged in protected expressive activity.

81. Plaintiffs' work—including legal advocacy, education, and civic engagement—is protected expression under the First Amendment.

82. By imposing legal disabilities based on protected expression, the Proclamation violates the First Amendment.

83. Plaintiffs are entitled to declaratory and injunctive relief prohibiting the enforcement, publication, or continued effect of the Proclamation.

## VI.   PRAYER FOR RELIEF

Plaintiffs pray for judgment in their favor and against Defendants Abbott and Paxton, and respectfully request this Court grant the following relief:

1. Declare that the Proclamation issued by Defendant Abbott violates the United States Constitution and is unlawful, void, and of no force or effect;

2. Preliminarily enjoin Defendants, their agents, employees, and all persons acting in concert with them from enforcing, implementing, or giving any effect to the Proclamation for the duration of this litigation;

3. Permanently enjoin Defendants, their agents, employees, and all persons acting in concert with them from enforcing, implementing, publishing, maintaining, or otherwise relying upon the Proclamation;

4. Award Plaintiffs their reasonable costs, disbursements, and attorneys' fees, as allowed by law, including pursuant to 42 U.S.C. § 1988; and

5. Grant such other relief as the Court may deem just and proper.

Respectfully submitted this 2nd day of January, 2025.

/s/ *Chelsea G. Glover*
Chelsea G. Glover
Bar No. 24097738
Charles D. Swift
Bar No. 24091964
Jinan Chehade
*Admission Pending*

Muslim Legal Fund of America
100 N. Central Expy. Suite 1010
Richardson, Texas 75080
Tel: (972) 914-2507; Fax (972) 692-7454
cglover@clcma.org
cswift@clcma.org
jinan.chehade@mlfa.org

Lena F. Masri
Bar No. P73461
Gadeir Abbas
Bar No. 81161

CAIR Legal Defense Fund
453 New Jersey Ave. SE
Washington, DC 20003
T: (202) 488-8787
lfmasri@cair.com
gabbas@cair.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Chelsea Glover, certify that I have served the foregoing document via email to the following counsel of record:

Trevor W. Ezell
Office of the Governor of Texas
General Counsel
Trevor.ezell@gov.texas.gov
Attorney for Defendant Greg Abbott

Monroe David Bryant, Jr.
Alexia Kristin Baker
Munera Al-Fuhaid
Texas Attorney General's Office
Special Litigation Division
David.bryant@oag.texas.gov
alexia.baker@oag.texas.gov
munera.al-fuhaid@oag.texas.gov
Attorneys for Defendant Ken Paxton

/s/ *Chelsea Glover*
Chelsea Glover