## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| **COUNCIL ON AMERICAN-ISLAMIC RELATIONS TEXAS DALLAS FORT WORTH**, et al., | |
| *Plaintiffs*, | |
| vs. | CASE No.: 1:25-cv-01878-ADA |
| **ABBOTT**, et al., | |
| *Defendants*. | |

## PLAINTIFFS' OPPOSED MOTION FOR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

TABLE OF CONTENTS........................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................... iii

I.    INTRODUCTION ...................................................................................................... 1

II.   FACTS AND PROCEDURAL HISTORY .......................................................... 2

III.  STANDARD OF REVIEW ........................................................................................ 3

IV.  ARGUMENT.............................................................................................................. 4

      A.   Plaintiffs Possess Standing to Pursue Their Claims.................................... 4

      B.   This Court Has Jurisdiction and Plaintiffs Seek Proper Relief ................. 6

      C.   Plaintiffs are Likely to Succeed on the Merits of their Claims ................. 8

            1.   The Proclamation is Preempted by Federal Law. ............................. 9

            2.   The Proclamation Imposes Property-Based Deprivations Without Due Process. ................................................................................................ 12

      D.   Plaintiffs Will Suffer Irreparable Constitutional Harm Absent a Preliminary Injunction ................................................................................................ 14

      E.   The Balance of the Equities and Public Interest Favor Injunction......................... 15

V.    CONCLUSION............................................................................................................ 15

CERTIFICATE OF CONFERENCE...................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Am. Ins. Ass'n v. Garamendi*
  539 U.S. 396 (2003)....................................................................9

*Cleveland Bd. of Educ. v. Loudermill*
  470 U.S. 532 (1985)...............................................................12, 13

*Crosby v. Nat'l Foreign Trade Council*
  530 U.S. 363 (2000)...........................................................9, 11, 12

*Dearman v. Stone Cnty. Sch. Dist.*
  832 F.3d 577 (5th Cir. 2016) ...................................................13

*Ex parte Young*
  209 U.S. 123 (1908)....................................................................7

*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*
  458 U.S. 141 (1982)..................................................................10

*Fuentes v. Shevin*
  407 U.S. 67 (1972)...............................................................12, 13

*Fuld v. PLO*
  606 U.S. 1 (2025)........................................................................9

*Logan v. Zimmerman Brush Co.*
  455 U.S. 422 (1982)..................................................................13

*Lujan v. Defs. of Wildlife*
  504 U.S. 555 (1992)....................................................................4

*Mathews v. Eldridge*
  424 U.S. 219 (1976)..................................................................13

*Nken v. Holder*
  556 U.S. 418 (2009)..................................................................15

*Rice v. Santa Fe Elevator Corp.*
  331 U.S. 218 (1947)..................................................................10

*Schaper v. Huntsville*
  813 F.2d 709 (5th Cir. 1987) ...................................................13

*Seton v. NLRB*
  756 F. Supp. 3d 405 (W.D. Tex. 2024) ..................................3, 15

*Texas v. Seatrain Int'l, S.A.*
  518 F.2d 175 (5th Cir. 1975) .....................................................3

*TransUnion LLC v. Ramirez*
  594 U.S. 413 (2021)....................................................................4

*Vargas v. Bondi*
  No. 1:25-cv-01699-DAE, 2025 U.S. Dist. LEXIS 229973 (W.D. Tex. Nov. 5, 2025)............8

*Winter v. Nat. Res. Def. Council, Inc.*
    555 U.S. 7 (2008)......................................................................................................3

*Zschernig v. Miller*
    389 U.S. 419 (1968)..................................................................................................9

## **Statutes**

8 U.S.C. § 1189.........................................................................................................5, 10

50 U.S.C. § 1701...........................................................................................................10

50 U.S.C. § 1702(a)......................................................................................................10

31 C.F.R. § 590.101, *et seq*........................................................................................10

31 C.F.R. § 590.201(a)(2).........................................................................................5, 11

31 C.F.R. § 590.301.......................................................................................................11

31 C.F.R. § 590.312.......................................................................................................11

31 C.F.R. § 590.408.......................................................................................................11

31 C.F.R. § 590.502.......................................................................................................11

31 C.F.R. § 590.702.......................................................................................................11

31 C.F.R. § 590.802....................................................................................................6, 11

Tex. Penal Code § 71.01..............................................................................................4, 5

Tex. Prop. Code § 5.251..................................................................................................5

Tex. Prop. Code § 5.253.......................................................................................6, 12, 14

Tex. Prop. Code § 5.254...................................................................................6, 12, 13, 14

## **Rules**

Fed. R. Civ. P. 19(a)(1)(A)..............................................................................................7

## **Constitution**

U.S. CONST.art. VI § 2....................................................................................................9

## I.    <u>INTRODUCTION</u>

Plaintiffs Council on American-Islamic Relations Texas Dallas Fort Worth ("CAIR DFW"), Council on American-Islamic Relations Austin Texas ("CAIR Austin"), and Council on American-Islamic Relations Texas ("CAIR Texas") (together "Plaintiffs") seek a preliminary injunction against Defendants Texas Governor Greg Abbott ("Governor Abbott") and Texas Attorney General Ken Paxton ("Attorney General Paxton") (together "Defendants") prohibiting enforcement, implementation, or reliance upon Governor Abbott's November 18, 2025 Proclamation 41-4241 (the "Proclamation"), which purports to designate Plaintiffs as terrorist and transnational criminal entities and to impose immediate, self-executing legal disabilities without statutory authority or constitutionally required process. To advance the interests of judicial economy, Plaintiffs seek preliminary injunctive relief solely based on Counts I and II of their Amended Complaint, both of which present purely legal challenges to the Proclamation's validity. Plaintiffs are likely to succeed on the merits because the Proclamation exceeds the Governor's statutory authority, intrudes into an area of exclusive federal concern long reserved to the federal government, and imposes punitive legal consequences without any notice or opportunity to be heard—defects apparent from the face of the Proclamation and governing law under controlling Supreme Court precedent.[1] Absent preliminary relief, Plaintiffs face ongoing irreparable constitutional injury from a state action that alters their legal status and subjects them to immediate statutory penalties and disabilities by operation of law. The balance of equities and the public interest weigh decisively in favor of injunctive relief because the State suffers no cognizable harm from being restrained from enforcing an unlawful executive action, while continued enforcement

---

[1] Plaintiffs do not seek preliminary injunctive relief based on Count III, which will be addressed at the merits stage.

1

inflicts immediate and irreparable constitutional injury by operation of law. Plaintiffs therefore respectfully request that this Court grant their Motion and enjoin the Proclamation's enforcement pending final adjudication of its constitutionality.

## II.    FACTS AND PROCEDURAL HISTORY

Plaintiffs CAIR Texas, CAIR DFW, and CAIR Austin are domestic nonprofit organizations operating in Texas. First Amended Complaint at ¶¶ 1–3 (ECF No. 26). Plaintiffs are referenced in the Proclamation and subject to its operative provisions. *Id.* ¶¶ 10–13, 24–27.  As Texas residents, Plaintiffs have property interests immediately affected by the Proclamation.  *Id.* ¶¶ 48–49.

On November 18, 2025, Governor Abbott issued Proclamation 41-4241, which purports to designate "CAIR" as both a Foreign Terrorist Organization ("FTO") and a Transnational Criminal Organization ("TCO"). *Id.* ¶¶ 24, 28; ECF No. 26-1. The Proclamation refers to CAIR as a single undifferentiated entity without distinguishing among any affiliated organizations. *Id.* ¶¶ 25–26. The Proclamation's operative provisions impose immediate legal consequences on Plaintiffs as organizations operating in Texas, including prohibiting CAIR and persons associated with it from purchasing or acquiring real property in Texas. *Id.* ¶¶ 27, 29–30. It also purports to trigger statutory enforcement mechanisms and heightened civil penalties based on the designation. *Id.* ¶ 31. The Proclamation authorizes enforcement actions without any notice, hearing, or opportunity to contest the designation. *Id.* ¶ 34. Plaintiffs received no notice of the Proclamation prior to its issuance. *Id.* ¶¶ 35–36.

The Proclamation describes its purpose as prohibiting CAIR from acquiring property in Texas and authorizes coordinated enforcement actions based solely on the designation. *Id.* ¶¶ 37–

41. Governor Abbott cites the Proclamation to direct state agencies to coordinate to effectuate enforcement of the designation. *Id.* ¶¶ 40–41.

Plaintiffs filed their Original Complaint on November 20, 2025. ECF No. 1. Plaintiffs served Defendants with the Summons and Complaint in this matter on December 1, 2025. ECF Nos. 6–7. Defendants filed Answers to the Original Complaint on December 22, 2025. ECF Nos. 12–13. Plaintiffs filed their First Amended Complaint on January 6, 2026, adding CAIR Texas as a Plaintiff. ECF No. 26. Defendants filed their Answers to the First Amended Complaint on January 16, 2026.  ECF Nos. 28–29.  Plaintiffs now file this Opposed Motion for Preliminary Injunction.

## III.    <u>STANDARD OF REVIEW</u>

To obtain a preliminary injunction, plaintiffs must establish a likelihood of success on the merits, irreparable harm absent preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest. *Seton v. NLRB*, 756 F. Supp. 3d 405, 408 (W.D. Tex. 2024) (Albright, J.) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Courts balance these elements in consideration of each other, rather than examining them in isolation, particularly where the challenged government action presents purely legal questions. *Id.* (citing *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975)).

Where, as here, Plaintiffs' motion turns on facial defects in legal authority and the absence of any constitutionally required process, it is properly resolved on the face of the Proclamation, the pleadings, and governing law. Any asserted need for discovery into Plaintiffs' activities or finances is irrelevant to the legal issues presented by Counts I and II. *See* Transcript of Status Conference at 26–27, *CAIR et al v. Abbott et al*, No. 1:25-cv-01878 (Jan. 7, 2026), ECF No. 27.

## IV.    <u>ARGUMENT</u>

### A.    **Plaintiffs Possess Standing to Pursue Their Claims**

Plaintiffs, nonprofit organizations operating in Texas, possess standing to pursue their claims because Governor Abbott's Proclamation imposes immediate and self-executing legal consequences on them by purporting to exercise terrorism-designation authority reserved to the federal government. To establish standing, Plaintiffs must show "(i) that [they] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Plaintiffs satisfy these requirements.

Governor Abbott has admitted that he designated CAIR as a Foreign Terrorist Organization, a Transnational Criminal Organization, and a proscribed entity under Texas law. Defendant Abbott's Answer, ECF No. 28, at 2. Abbott further admits he gave no notice to anyone acting for CAIR, confirming this was a unilateral, immediate designation, not a targeted enforcement step that might later be applied. *Id.* ¶ 66. These admissions confirm that the injuries Plaintiffs challenge are neither speculative nor contingent on future enforcement actions, but flow directly from the Proclamation itself.

Governor Abbott's Proclamation purports to designate "CAIR," as a "Foreign Terrorist Organization" under Texas Penal Code § 71.01(e), and to subject organizations operating in Texas under that designation to heightened civil penalties under Chapter 125 of the Texas Civil Practice and Remedies Code. ECF No. 26-1 at 5. Although Plaintiffs are domestic organizations and therefore do not meet the statutory definition of a Foreign Terrorist Organization, the Proclamation nonetheless subjects them to immediate legal consequences without any notice or opportunity to

be heard. *Id.*; *see also* Tex. Penal Code § 71.01(e) (defining FTO as persons "operating as an organization at least partially outside the United States"). Moreover, the Proclamation relies on a designation authority that Texas law does not confer on the Governor and that federal law assigns exclusively to the United States Secretary of State as part of a comprehensive federal terrorism-designation scheme, further confirming that the injuries Plaintiffs suffer are traceable to the Proclamation itself. *See* Tex. Penal Code § 71.01 (defining FTO with no reference to designation by the governor); 8 U.S.C. § 1189(a), (d) (establishing an exclusive federal process—administered by the U.S. Secretary of State, in consultation with the U.S. Secretary of the Treasury and U.S. Attorney General—for designation of Foreign Terrorist Organizations). Plaintiffs have suffered concrete and imminent injury from the Proclamation's designation, which alters their legal status and subjects them to exclusionary consequences by operation of law in a field fully occupied by federal regulation.

The Proclamation further purports to designate "CAIR" as a Transnational Criminal Organization and to prohibit organizations operating in Texas under that designation from purchasing or acquiring real property. ECF No. 26-1 at 5. Plaintiffs are domestic organizations operating exclusively in the United States, and therefore do not meet the statutory definition of a Transnational Criminal Organization. ECF No. 26 ¶¶ 1–3, 27; *see also* Tex. Prop. Code § 5.251(7)(A) (defining TCOs as "two or more persons . . . who are citizens of or domiciled in a designated country"). The Proclamation imposes legal consequences that Texas law does not authorize the Governor to impose, and that are governed by a comprehensive federal regulatory scheme reserved to federal authority. *See* Tex. Prop. Code § 5.251(7) (defining TCO's without reference to designation by the governor); 31 C.F.R. § 590.201 (establishing federal authority, exercised by the U.S. Secretary of the Treasury in consultation with the U.S. Attorney General and

U.S. Secretary of State to determine whether an entity meets the definition of a TCO); *id.* § 590.802 (confirming that such authority may only be exercised by the U.S. Secretary of the Treasury or delegated federal officials, including the Director of the Office of Foreign Assets Control ["OFAC"]).

The Texas Property Code purports to authorize the Governor to prohibit designated entities from purchasing or acquiring real property in Texas based on a unilateral determination. Tex. Prop. Code § 5.254(a)(1). The Proclamation invokes that authority to impose property-based disabilities on Plaintiffs without any mechanism for notice or review. ECF No. 26-1 at 5. The Proclamation imposes immediate and self-executing legal consequences upon issuance by operation of law. *See* Tex. Prop. Code § 5.253 (prohibiting TCOs and entities designated by the governor from purchasing or acquiring property). Moreover, the statute provides no mechanisms for notice or for Plaintiffs to contest the designation before the resulting property-based prohibitions take effect. *Id.* As Texas citizens, the Proclamation immediately and directly harms Plaintiffs' property interests through an ultra vires designation intruding into a federally occupied field. ECF No. 26 ¶¶ 48-49.

Plaintiffs therefore demonstrate concrete, actual, and imminent injury traceable to the Proclamation's ultra vires designations and redressable by declaratory and injunctive relief and possess standing to proceed on their claims for declaratory and injunctive relief on Counts I and II.

**B.    This Court Has Jurisdiction and Plaintiffs Seek Proper Relief**

Plaintiffs seek only prospective declaratory and injunctive relief to prevent Defendants' ongoing enforcement, implementation, and reliance on Proclamation 41-4241 as applied to Plaintiffs. This action therefore falls squarely within the settled exception permitting suits against

state officials for prospective relief to stop ongoing violations of federal law by state executive action. *Ex parte Young*, 209 U.S. 123, 155–56 (1908). Governor Abbott admits that he issued the Proclamation designating CAIR as a Foreign Terrorist Organization, a Transnational Criminal Organization, and a proscribed entity, confirming that Plaintiffs challenge an ongoing executive action with present legal effect rather than a speculative or contingent future injury. ECF No. 28 at 2.

Plaintiffs' claims present justiciable questions of statutory authority and constitutional compliance, rather than nonjusticiable political questions. And because Plaintiffs challenge the Proclamation's facial legality and its self-executing legal effects, their claims are ripe for adjudication and redressable by an injunction restraining Defendants' enforcement, implementation, and reliance by operation of law.

Any alleged Rule 19 dispute concerning additional parties does not prevent the Court from granting preliminary relief restraining Defendants' enforcement, implementation, or reliance on the Proclamation as to the Plaintiffs before the court.[2]  Governor Abbott admitted that the Proclamation was issued without advance notice to any CAIR employee or agent, confirming that the challenged action was categorical, immediate, and not dependent on the identity or participation of any particular entity. ECF No. 28 ¶ 66. That admission mirrors the Proclamation's own use of "CAIR" as a unitary designation, rather than as a collection of separately noticed or

---

[2] Rule 19 requires joinder if the party's joinder "will not deprive the court of subject-matter jurisdiction" and "in that [party's] absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A); *see also* Transcript of Status Conference at 21, *CAIR et al v. Abbott et al*, No. 1:25-cv-01878 (Jan. 7, 2026), ECF No. 27 (argument by Defendants' counsel that CAIR National must be joined under Rule 19).  Plaintiffs, CAIR affiliates operating in Texas, face immediate concrete harms from the Proclamation that will be irreparable absent preliminary injunctive relief.  Plaintiffs, as the existing parties, therefore have standing (and this Court has subject-matter jurisdiction) and can be accorded complete relief by this Court.

separately adjudicated entities. ECF No. 26-1 at 2–3, 5. Under these circumstances, preliminary relief directed at Defendants' enforcement of the Proclamation as to the Plaintiffs before the Court is procedurally proper regardless of any later Rule 19 analysis.

**C.    Plaintiffs are Likely to Succeed on the Merits of their Claims[3]**

Plaintiffs are likely to succeed on the merits of Counts I and II of their Complaint as a matter of law based on the face of the Proclamation and governing federal and constitutional authority. With respect to Count I, federal law preempts the Proclamation's attempt to create state-level designations of foreign terrorist or transnational criminal organizations, and any enforcement of penalties flowing from those designations, because Congress has occupied the field of terrorism and transnational criminal organization designation and vested exclusive authority to make such classifications in the federal Executive Branch. With respect to Count II, the Fourteenth Amendment prohibits the Proclamation's imposition and enforcement of Subchapter H of Texas Property Code Chapter 5 because it authorizes the immediate and self-executing deprivation of protected property interests without any notice or opportunity to be heard. Governor Abbott does not dispute that the Proclamation has operative legal effect; he repeatedly states that the Proclamation "speaks for itself" and requires no further action to impose its consequences. *See* ECF No. 28 ¶¶ 25–31. Those admissions confirm that the Proclamation alters Plaintiffs' legal status by operation of law upon issuance.

As set forth below, Plaintiffs have demonstrated a likelihood of success on the merits on Counts I and II, satisfying the first requirement for preliminary injunctive relief.

---

[3] Plaintiffs note that they only need to show that they are likely to succeed on the merits of one of their claims to demonstrate entitlement to a preliminary injunction. *See Vargas v. Bondi*, No. 1:25-cv-01699-DAE, 2025 U.S. Dist. LEXIS 229973, at *6 (W.D. Tex. Nov. 5, 2025). Plaintiffs satisfy that standard on both Counts I and II, and accordingly seek preliminary injunctive relief based on Counts I and II, only.

1.    *The Proclamation is Preempted by Federal Law.*

Governor Abbott's Proclamation purports to create state-level designations of FTOs and TCOs—classifications that fall within a field exclusively occupied by the federal government. Any enforcement of penalties flowing from those designations therefore violates the Supremacy Clause because both the classifications themselves and the penalties attached to them fall within the sole purview of federal law governing foreign affairs and national security. *See, e.g.*, *Zschernig v. Miller*, 389 U.S. 419, 436, 440–41 (1968) (noting that the Constitution entrusts foreign affairs "solely to the Federal Government" and invalidating Oregon law prohibiting inheritance by nonresident alien due to interference with foreign affairs); *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 419 n.11 (2003) (field preemption covers state action taking a position on foreign policy "with no serious claim to be addressing a traditional state responsibility [because] the Constitution entrusts foreign policy exclusively to the National Government"); *Fuld v. PLO*, 606 U.S. 1, 19 (2025) (recognizing "[t]he Federal Government's 'inherent foreign affairs power'"). Plaintiffs' preemption claim does not depend on any disputed facts about Plaintiffs' activities; it rests solely on Texas's creation of a parallel state designation and penalty regime in a field reserved exclusively to the federal government.

Under the Supremacy Clause, state law is preempted where Congress has occupied the field, including where state action intrudes into an area of dominant federal concern. U.S. CONST. art. VI § 2; *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). In field preemption cases, "Congress' intent to supersede state law altogether may be inferred" because the federal legal scheme "'may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" *Fid. Fed. Sav. &*

*Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982) (citing *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

Federal law occupies the field of designating and sanctioning foreign terrorist organizations through a comprehensive and exclusive statutory and regulatory scheme. Under the Immigration and Nationality Act, only the United States Secretary of State—acting in consultation with other federal officials—may designate an organization as an FTO. 8 U.S.C. § 1189(a), (d). The statute details mandatory procedures for designation, which include written notice to Congress and publication in the Federal Register, as well as implications of designation, including freezing of assets and civil and criminal penalties for aid to the organization. *Id.* § 1189(a)(2). It also states three requirements that the organization must meet to be designated an FTO. *Id.* § 1189(a)(1).[4] It provides a review process for the designation of the organization and requires the Secretary of State to create an administrative record reflecting the reasons for the designation. *Id.* §§ 1189(a)(3)-(4).

The Executive Branch likewise possesses exclusive authority to designate and sanction transnational criminal organizations pursuant to federal law and executive orders implemented through the Treasury Department. See 50 U.S.C. §§ 1701, 1702(a) (authorizing the President to declare a national emergency and prohibit foreign nationals from acquiring property interests due to threats to national security); 31 C.F.R. § 590.101, *et seq.* ("Transnational Criminal Organizations Sanctions Regulations") (enforcing President Obama's Executive Order 13,581, "Blocking Property of Transnational Criminal Organizations"). Federal regulations define TCOs

---

[4] Prior to designation, the Secretary of State must find that "(A) the organization is a foreign organization; (B) the organization engages in terrorist activity … or terrorism … or retains the capability and intent to engage in terrorist activity or terrorism; and (C) the terrorist activity or terrorism of the organization threatens the security of United States nationals or the national security of the United States." 8 U.S.C. § 1189(a)(1).

and authorize the U.S. Secretary of the Treasury, in consultation with the U.S. Attorney General and U.S. Secretary of State, to determine whether an entity meets the definition of a TCO. 31 C.F.R. § 590.201(a)(2); *see also id.* § 590.312 (defining a TCO as "a group of persons that includes one or more foreign persons; that engages in or facilitates an ongoing pattern of serious criminal activity involving jurisdictions of at least two foreign states, or one foreign state and the United States, and that threatens the national security, foreign policy, or economy of the United States"). Any authority given to the Secretary of the Treasury can only be taken by OFAC or anyone to whom the Secretary delegated authority to act. *Id.* § 590.802. The regulations detail TCOs' prohibited transactions and blocked property interests, allowing such interests only with federal authorization by OFAC. *See, e.g.*, *id.* §§ 590.301 (allowing financial dealings with TCOs only "pursuant to a license or other authorization from OFAC expressly authorizing such action"), 590.408 (noting that any charitable contributions to a designated TCO must be "specifically authorized by OFAC."), 590.502 (stating "[n]o regulation, ruling, instruction, or license authorizes any transaction prohibited under this part unless . . . issued by OFAC and specifically refers to such part"). The regulations also provide for pre-penalty notice and an alleged violator's right to respond to the notice by writing to OFAC. *Id.* § 590.702.

These federal regimes leave no room for parallel state classification or enforcement schemes. *See Crosby,* 530 U.S. at 376 (determining that "[i]t is implausible that Congress would have gone to such lengths to empower the President if it had been willing to compromise his effectiveness by deference to every provision of state statute or local ordinance that might, if enforced, blunt the consequences of discretionary Presidential action"). Despite this exclusive framework, the Proclamation cites Texas statutes to justify state-level terrorism and national-security classifications—precisely the type of parallel regime the Supremacy Clause forbids. ECF

No. 26-1 at 5. The Texas Property Code further purports to authorize the Governor to impose property-based prohibitions based on unilateral determinations of national security risk. Tex. Prop. Code § 5.254; *see Crosby*, 530 U.S. at 378 (noting conflict where state law penalizes individuals and conduct that Congress has explicitly exempted or excluded from sanctions).  Texas law must yield to federal law on the designation of and sanctions against foreign entities and individuals, and Plaintiffs are therefore likely to succeed in their argument that Governor Abbott's designations in his Proclamation are unconstitutional as a matter of law.

2.    *The Proclamation Imposes Property-Based Deprivations Without Due Process.*

Governor Abbott's Proclamation invokes the Texas Property Code to impose immediate and self-executing prohibitions on the acquisition of real property by designated entities. The Proclamation authorizes these property-based deprivations without providing any notice or opportunity to be heard, in violation of the Fourteenth Amendment. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) (reiterating that the Due Process Clause provides substantive rights to life, liberty, and property, and that due process "is conferred, not by legislative grace, but by constitutional guarantee"). By designating Plaintiffs as proscribed entities under Texas Property Code § 5.254, the Proclamation itself effects an immediate deprivation of protected property interests without any procedural safeguards. *See* Tex. Prop. Code § 5.253 (prohibiting TCOs and entities designated by the governor from purchasing or acquiring property).

The Due Process Clause prohibits the deprivation of protected property interests absent constitutionally adequate procedures, including notice and an opportunity to be heard. *Loudermill*, 470 U.S. at 541; *see also Fuentes v. Shevin*, 407 U.S. 67, 81–82 (1972) (explaining that the Constitution guarantees a "right to notice and a hearing" prior to the deprivation of a property right, and that "no later hearing can undo the fact that an arbitrary taking subject to procedural due

process has already occurred"). Federal constitutional law dictates what procedural protections a state government must provide before revoking a property interest. *Loudermill*, 470 U.S. at 541 (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432 (1982)). State governments must provide some sort of hearing incorporating notice and an opportunity to respond prior to revoking a protected property interest. *Shevin*, 407 U.S. at 82; *see also Dearman v. Stone Cnty. Sch. Dist.*, 832 F.3d 577, 583 (5th Cir. 2016) (holding plaintiff received federal due process protections when she was notified that defendant "considered ending her employment" at the end of the year, "was given an opportunity to respond" to defendant's reasons for her termination, "appeared before [defendant] and defended herself from the accusations against her," and "submitted a written rebuttal to the allegations" prior to her termination); *Schaper v. Huntsville*, 813 F.2d 709, 714 (5th Cir. 1987) (5th Cir. 1987) (holding plaintiff received federal due process protections because he was "informed . . . of the proposed termination, [given] a list of reasons for the decision, as well as an opportunity to object to the decision," and "received a hearing" prior to his discharge). Defendants unambiguously failed to provide any pre-deprivation due process here.

This is not a *Mathews v. Eldridge* balancing-of-interests dispute, because no procedural due process occurred at all before the deprivation took effect. *See Mathews v. Eldridge,* 424 U.S. 219, 335–40 (1976) (holding pre- and post-deprivation procedures for disability benefits satisfied procedural due process requirements). The Proclamation and Texas Property Code § 5.254 provide no notice, hearing, or mechanism for review at all before the property-based prohibitions take effect, which is per se incompatible with the requirements of procedural due process. Governor Abbott has admitted that he provided no advance notice to any CAIR entity or representative before issuing the Proclamation. ECF No. 28 ¶ 35. This admission confirms that the Proclamation imposes deprivations without any pre-deprivation notice or opportunity to be heard.

Governor Abbott's Proclamation purports to prohibit designated entities from purchasing or acquiring interests in land in Texas pursuant to Texas Property Code § 5.254, with immediate legal effect upon issuance. The statute provides no mechanism for notice, hearing, or review prior to the imposition of these property-related prohibitions and vests the Governor with unilateral authority to impose and remove the designation without any procedural constraints. Tex. Prop. Code §§ 5.253(2)(D), 5.254. Plaintiffs are therefore likely to succeed in showing that the Proclamation's self-executing deprivation of their property interests without procedural safeguards violates the Due Process Clause as a matter of law.

## D. Plaintiffs Will Suffer Irreparable Constitutional Harm Absent a Preliminary Injunction

Plaintiffs face irreparable constitutional harm absent a preliminary injunction restraining enforcement of the Proclamation, which is self-executing by its terms. The Proclamation designates Plaintiffs as entities prohibited from purchasing or acquiring real property in Texas, thereby immediately depriving them of protected property interests without any notice or opportunity to be heard. The Proclamation's designation also inflicts irreparable reputational harm by branding Plaintiffs as terrorist or criminal organizations under state law, a state-imposed stigma that independently constitutes constitutional injury and cannot be remedied by monetary damages or undone by later relief.[5] Absent preliminary relief, Plaintiffs will continue to suffer ongoing constitutional injury from the self-executing deprivation of property interests and the continuing effects of a state-imposed terrorist designation.

---

[5] *See, e.g.*, Ayden Runnels, *Texas comptroller questions whether some Islamic schools can be excluded from voucher program*, Tex. Tribune (Dec. 22, 2025), https://www.texastribune.org/2025/12/22/texas-school-voucher-exclusions-kelly-hancock/ (describing how Texas Comptroller attempted to disqualify schools that hosted Plaintiffs from state voucher program based on Governor Abbott's Proclamation).

E.    **The Balance of the Equities and Public Interest Favor Injunction**

Plaintiffs also demonstrate that the balance of equities and the public interest favor preliminary injunctive relief as a matter of law. *See Seton*, 756 F. Supp. 3d at 409 (Albright, J.) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)) (holding that these two factors merge when the government is the defendant and constitutional rights are at stake). As described above, Plaintiffs face ongoing irreparable constitutional harm from the Proclamation's self-executing deprivation of protected property interests and its continuing legal effects. In contrast, Defendants suffer no cognizable harm from being restrained from enforcing an unlawful executive action pending final adjudication. *See id.* at 409–10 (holding that "[t]he government suffers no cognizable harm from stopping the perpetuation of unlawful agency action") (citation omitted). The balance of equities and the public interest therefore support the issuance of a preliminary injunction prohibiting enforcement of the Proclamation during the pendency of this action.

V.    <u>CONCLUSION</u>

Plaintiffs have satisfied each requirement for preliminary injunctive relief as a matter of law and respectfully request that this Court enjoin enforcement of the November 18, 2025, Proclamation 41-4241 pending final adjudication. Absent preliminary relief, Plaintiffs will continue to suffer irreparable constitutional harm from the Proclamation's self-executing deprivation of protected property interests and its ongoing legal effects. The balance of the equities and the public interest also favor issuance of a preliminary injunction. Plaintiffs respectfully request this Court maintain the status quo by enjoining enforcement, implementation, or reliance upon the Proclamation and its self-executing effects pending final adjudication.

Plaintiffs respectfully request that the Court waive any bond requirement under Rule 65(c), or, in the alternative, set a nominal bond, because this motion seeks to prevent ongoing violations of federal constitutional rights, involves purely legal claims, and serves the public interest.

Respectfully submitted this 22nd day of January, 2026.

*/s/ Chelsea Glover*
Chelsea G. Glover
Bar No. 24097738
Charles D. Swift
Bar No. 24091964
Jinan Chehade
IL Bar No. 6345527

Muslim Legal Fund of America
100 N. Central Expy. Suite 1010
Richardson, Texas 75080
Tel: (972) 914-2507; Fax (972) 692-7454
cglover@clcma.org
cswift@clcma.org
jinan.chehade@mlfa.org

Lena F. Masri
Bar No. P73461
Gadeir Abbas
Bar No. 81161

CAIR Legal Defense Fund
453 New Jersey Ave. SE
Washington, DC 20003
T: (202) 488-8787
lfmasri@cair.com
gabbas@cair.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Fed. R. Civ. P. 65(a)(1) and Local Rule CV-7(g), the undersigned gave notice to Defendants of the foregoing motion on December 31, 2025, and conferred in a good-faith attempt to resolve the matter by agreement. On January 2, 2026, Counsel for Governor Abbot opposed this motion, and Counsel for Attorney General Paxton stated he "could not consent" to the motion.

*/s/Chelsea Glover*
Chelsea Glover