IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

COUNCIL ON AMERICAN-          *
  ISLAMIC RELATIONS           *
  TEXAS DALLAS FORT           *          January 7, 2026
  WORTH, ET AL.               *
                              *
VS.                           *
                              * CIVIL ACTION NO. 1:25-CV-1878
GREG ABBOTT                   *
KEN PAXTON                    *

BEFORE THE HONORABLE ALAN D ALBRIGHT
STATUS CONFERENCE

APPEARANCES:

For the Plaintiff:  Chelsea Gabrielle Glover, Esq.
                    Muslim Legal Fund of America
                    Civil Litigation
                    100 N. Central Expy, Ste 1010
                    Richardson, TX 75080

For Defendant Abbott:

                    John D. Ramer, Esq.
                    Cooper & Kirk, PLLC
                    1523 New Hampshire Avenue, N.W.
                    Washington, DC 20036

                    Trevor W. Ezell, Esq.
                    Office of the Governor of Texas
                    1100 San Jacinto Blvd
                    Austin, TX 78701

For Defendant Paxton:

                    Monroe David Bryant, Jr., Esq.
                    Texas Attorney General's Office
                    Special Litigation Division
                    P.O Box 12548
                    Austin, TX 78711-2548

Court Reporter:     Kristie M. Davis, CRR, RMR
                    PO Box 20994
                    Waco, Texas 76702
                    (254) 666-0904

Halepota Ex. No.

**1**

exhibitsticker.com

Proceedings recorded by mechanical stenography, transcript produced by computer-aided transcription.

(Hearing begins.)

DEPUTY CLERK: Court calls Case AU:25-CV-1878, Council on American-Islamic Relations Texas Dallas Fort Worth, et al., versus Abbott, et al. Case called for a status conference.

THE COURT: Announcements from counsel, please.

MS. GLOVER: Chelsea Glover, counsel for plaintiffs.

MR. RAMER: Good afternoon, Your Honor. John Ramer from Cooper and Kirk on behalf of the governor. I'm joined by Mr. Ezell, the general counsel for the governor, and Caleb Gunnels and Jason Bramow, assistant general counsels for the governor.

MR. BRYANT: Your Honor, I'm David Bryant with the office of the Attorney General of Texas representing the Attorney General Paxton as defendant.

THE COURT: Okay. Let's start with the defendants, please. And am I going to get one argument or two? I'm fine with either.

MR. RAMER: Your Honor, I'm going to take the lead and then if Mr. Bryant has anything to correct or clarify on behalf of the Attorney General, he'll do

that. But I'll take the lion's share.

THE COURT: All good.

MR. RAMER: Your Honor, the governor issued the relevant proclamation and plaintiffs here filed suit back on November 20th. The -- both defendants filed their answers on December 22nd. And then Your Honor scheduled this conference on December 23rd.

Since then, there have been a couple of developments that I think would help -- clarifying these developments would help clarify the case.

First, on December 30th, the plaintiffs reached out asking for defendants' position because plaintiffs intended to move for a preliminary injunction and they also asked for defendants' consent for a service of non-ECF documents.

We consented to the service. With respect to the preliminary injunction, the governor would oppose such relief. The Attorney General stated that he can't take a position unless he sees a prospective motion.

That was December 30th. Since then, we've not heard anything about the motion for a preliminary injunction. However, the following day, plaintiffs did e-mail us what is designated as a first

amended complaint and --

THE COURT: I'm sorry. I was trying to catch up with what you've written and listen. What was it, Monday, you said?

MR. RAMER: On -- this would have been on January 2nd.

THE COURT: Okay.

MR. RAMER: They e-mailed the first amended -- what they're calling the first amended complaint and informed us that they were unable to file that on CM/ECF and have mailed it.

I'll let counsel correct me if I'm wrong. But...

And so if that becomes the operative complaint, we were served with that on January 2nd. And our answers to the -- to that first amended complaint will be due on Friday, January 16th.

As far as how the case should proceed, if the Court accepts the -- we do not oppose the amended complaint. We'll file our answers. And then from our perspective --

THE COURT: Have you reviewed their -- I'm sure you have. You've reviewed their amended complaint?

MR. RAMER: We have, Your Honor.

THE COURT: Is there anything in it that is substantive enough that you'll need a -- is everything you've argued so far still kosher or do you need extra time to argue something that's new in the amended complaint?

MR. RAMER: We do not need extra time to file a new answer. It's largely the same but there are some distinctions. They've compressed the counts.

So in the operative complaint that's currently on the docket, there were five counts.

The first count was a preemption claim brought exclusively against the Attorney General. The second count was a due process claim brought exclusively against the Attorney General. Count 3 -- and I might mix up the First Amendment. Counts 3, 4, and 5 are all First Amendment -- were all First Amendment counts. One was just a pure speech claim. One was a free association claim. And then one was a essentially First Amendment retaliation claim.

In the new complaint, there are now three counts. Preemption claim remains. It is now brought against both the Attorney General and the governor. The due process claim remains. It is brought against both the Attorney General and the governor. And then the First Amendment claim is now just one count.

And --

THE COURT: But does it combine speech and association?

MR. RAMER: From our read of it, it reads purely like a First Amendment retaliation claim is what's left.

THE COURT: Okay.

MR. RAMER: I do also just want to highlight that it -- they removed a number of factual assertions that were made in the first complaint.

THE COURT: Let me ask you this, and plaintiffs' counsel can respond if she thinks you've got it wrong. Does it appear to you that the amended complaint was an effort to address some of the issues you had raised and fix them by filing a new complaint?

MR. RAMER: I think there are at least a couple paragraphs that could be -- fall into that category. Specifically with respect to conduct by the governor, I think they saw in our answer we asserted an affirmative defense of sovereign immunity. And so perhaps those paragraphs about actions that the governor has taken are supposed to address that.

THE COURT: I'm not sure how they can fix that in a complaint.

MR. RAMER: I tend to agree with that,

Your Honor.

And I also think there are some allegations and assertions that were removed for the reason -- I think I'd have to defer to plaintiffs' counsel, but we do think it's significant that some of these were removed.

Like the assertion that plaintiffs' nonprofit work does not threaten security of U.S. nationals nor the national security of the United States.

They deleted the assertion that they comply with all federal, state, and local laws.

They deleted the assertion that they are domestic organizations that operate exclusively in the United States.

Now, obviously, you know, they're the master of their complaint but those are things that we found noteworthy in terms of trying to remove those from the case.

THE COURT: Let me ask you something. I'll show my ignorance. I listen -- I try and keep up with this area of the law, but it's certainly not something I've, as a judge, spent an enormous amount of time on. And plaintiffs' counsel can weigh in on this when it's her turn as well.

But my sense of the posture -- procedural posture of me dealing with a sovereign immunity case is a lot like the issue that I would address, let's say a police officer arrested somebody and they were being sued for whatever it is they get sued for.

And, you know, there, I know the initial step is to determine whether or not they have qualified immunity because the -- we don't want the burden to -- you know, the question is the burden of the litigation.

It occurs to me that sovereign immunity is -- I don't know if the word "equal" is right but at least the equivalent where it's a gateway issue. I don't -- in other words, I know there are judges who say I don't need to -- I'll take it up at a later -- but it seems to me that sovereign immunity, this is the gateway where that should be decided.

Am I right on that? That's -- philosophically that seems right.

MR. RAMER: Your Honor, I think often it is decided on a motion, like a 12(b)(1) motion to dismiss.

THE COURT: Okay.

MR. RAMER: But it can also be decided at summary judgment like Your Honor alluded to. But I agree that many times, what defendants would do in a

situation is file a 12(b)(1) motion to dismiss for lack of jurisdiction based on sovereign immunity.

We filed an answer, as did the Attorney General. I think our feeling is we think we have very strong legal arguments. We think we prevail on the law including for reasons of sovereign immunity. At the same time, we also think that we prevail on the facts and want to be prepared to litigate this case on the facts, which is why we filed.

THE COURT: Okay.

MR. RAMER: And so from our perspective, once we file the answers, we think the case should proceed down a normal course of parties have a Rule 26 conference and come up with a discovery plan. We do think that there could be substantial discovery in this case given the nature of the claims that the plaintiffs are bringing and given the nature of the defenses that we intend to raise.

And in particular, some topics that we think would be relevant for discovery include things that go to the government's interest behind the proclamation for purposes of the due process claim.

For purposes of the First Amendment claim, we think that there's discovery necessary to show under the relevant legal standard that the

proclamation would have been undertaken regardless of protected speech.

And then third, with respect to the preemption claim, they're essentially bringing a claim under Crosby. And I think we'll have -- both sides will have a lot to say about Crosby in this litigation. I do think that there's a strong argument that the thrust of Crosby goes to when a state is doing -- engaging in some form of conduct that removes negotiating leverage from the president.

And just very briefly, you know, Crosby -- Crosby involved -- Massachusetts passed a law for sanctions on Burma, and what the Court held was that that was preempted because the president was engaging in negotiations with Burma and Massachusetts essentially took away bargaining leverage.

Here, to defend against the Crosby claim, we would need to know precisely who the plaintiff organizations are and what they do to determine whether the -- whether the Crosby claim is viable.

And I have topics that we think would be relevant in particular to discovery. I don't know if Your Honor wants me to get into that now. I'm happy to do so. But otherwise, we think once we file the answers, the case should proceed in the normal course.

THE COURT: Why don't I find out from plaintiff what they're thinking and then I'll need to know if I need more from you.

MR. RAMER: Thank you, Your Honor.

THE COURT: Yes, ma'am.

MS. GLOVER: Thank you, Your Honor.

Hello, Your Honor.

So to respond to what defendants --

THE COURT: And I'm going to let you talk. I'm sorry. I have a bad habit of interrupting, but I worry if I don't ask what I think of, I won't remember it to ask.

MS. GLOVER: Of course.

THE COURT: Are there issues -- and anyone from defendant can take this up as well. Are there issues that you -- what I see this case -- but again, I'm a novice at these cases.

It seems to me that there are issues where discovery will matter, legal questions where discovery will matter and issues where discovery might not matter. I mean, no one's fighting over what happened, they're fighting over whether with what happened, it was legal.

MS. GLOVER: Correct.

THE COURT: And so what I'm wondering is

does it make sense -- and you can -- you're welcome to say -- this is you all's case. I'm trying to -- when I ask, I'm asking in the sense of I want to do what's best, if you can agree, what's best for the parties.

Would it make sense to simultaneously set you on a motion -- are there issues that could be taken up by motion quickly where we could have a hearing set, you know, sometime in the late spring and issues could be winnowed out? Or does it make more sense -- and am I just being a pain in your whatever by asking to do it that way and would the parties prefer for me to treat this as sort of what I took from your brethren, that, no, just, you know, let's get a discovery schedule and we'll take things up in due course.

So I'm totally open to hearing your thoughts about, you know, how you'd like to go about addressing the case.

MS. GLOVER: Thank you, Your Honor.

We -- plaintiffs disagree with defendants on to -- as to whether we need discovery in this case. We do intend to file a motion for preliminary injunction. We were waiting to get the amended complaint on file. And the reason we had to mail it was because we're adding an additional party and we can't efile.

THE COURT: Who's that?

MS. GLOVER: Oh, CAIR Texas.

THE COURT: Oh, so you're adding an additional plaintiff?

MS. GLOVER: Yes.

THE COURT: Okay. And I don't know enough about the cases. Is that to overcome something they've raised that -- have they argued that because CAIR Texas not in the case, there is a deficiency, or is that just something that you're doing?

MS. GLOVER: I believe Defendant Abbott has an affirmative defense there's an indispensable party that's not present.

THE COURT: Okay.

MS. GLOVER: We don't know what that -- who that party is but we know that this is another CAIR Texas entity. And so we wanted to make sure that whatever relief we requested would cover all of --

THE COURT: And have you asked to add CAIR Texas yet?

MS. GLOVER: Yes.

THE COURT: And do defendants oppose that?

MS. GLOVER: They do.

MR. RAMER: No, Your Honor. No.

THE COURT: Okay. Well, then I'll grant that.

MS. GLOVER: Thank you.

THE COURT: And is that -- was that the only gate blocking your intent to file for a preliminary injunction now?

MS. GLOVER: Yes. We wanted to make sure the complete amended complaint was before the Court before we then moved for a preliminary injunction.

THE COURT: Okay. So let me shift gears on you a little bit then. And eventually I hope I'll let you get back to what it is you planned to say.

So would it make sense -- let me come at it from this angle. Would it make sense to -- from your perspective to -- would your bid be that I wait and there's no discovery, we have a preliminary injunction hearing and then I decide what to do? Is that your position?

MS. GLOVER: Yes, Your Honor.

THE COURT: Okay. And I assume defendants' position is because you're certain that I'm going to deny the motion for preliminary injunction, because that's what you intend to argue, that -- or at least since there's a chance I might deny it, that you'd like to go ahead and get started now by doing

discovery now?

MR. RAMER:  Your Honor, I think our -- our answer is that even if a PI is filed, we see the need for expedited discovery given the nature of the claims that they are bringing.

THE COURT:  Okay.  Why don't we do this?  You may have done this and I apologize if you have.  Let me look real quick at my notes here.  I don't see in my notes, even though you may have put it in there and I just don't have it immediately at my fingertips.

Have the defendants articulated to the plaintiff exactly what discovery they would like to take on an expedited basis?

MR. RAMER:  We have not, Your Honor.  I have some categories today I can discuss.  But they haven't filed -- we haven't seen the PI motion so we...

THE COURT:  So why don't we do this.  Even though you haven't gotten to say anything.  I think what would be most effective is why don't I hear from counsel categories he'd like to take discovery on and what -- and you make a list of what -- as he goes, and whatever it is that you oppose, you can tell me you oppose it and why.

MS. GLOVER:  Okay.  Sounds good.

THE COURT:  I understand your point which

is you'd like to just proceed without discovery to a hearing on -- and let's assume -- I'm making this up -- let's assume plaintiff gets their preliminary injunction filed by Monday. I don't care when you do. I'm just saying.

About how long would you need to file a response -- would you need discovery before you file? And number two, how long would you need to file a response?

MR. RAMER: Your Honor, I think to adequately and fully litigate the preliminary injunction, we would need discovery to file a response. We of course can address legal arguments, but the nature of the legal claims they're bringing turn on the government interest supporting the particular action. And obviously the government interest has to do with what these plaintiff organizations are and what they do, which is what we would need discovery on too.

THE COURT: Okay. So why don't you sit down. I'll hear from them what discovery they'd like to take and then I'll decide whether to allow that while -- why don't we try it -- why don't we try as a first cut this. But if you tell me I'm being dumb to do it this way, you might phrase it differently than that, but you can tell me what you think you should do.

It seems to me from what the plaintiff is saying that your first cut would be, Judge, we need the following discovery at a minimum because if they're going to file a motion for preliminary injunction, we will need at least X to be able to respond to the preliminary injunction.

So if you're willing to live with that as a first cut of what I permit, I'm probably going to be relatively generous. In other words, if they're going to bring a preliminary injunction, I'm -- and you say we need this to respond to it, I don't see how I tell you you don't get that.

I'm less likely to be generous in terms of we'd like to know something because at trial we might do X. That's farther down the road. But I really -- what I -- because what I really want to do in this case, now that I know there's going to be a preliminary injunction, is I want to get the preliminary injunction set for a hearing as quickly as possible. Which means I want you to have -- get your discovery done to respond to that.

Because I'd like to have the preliminary injunction -- assuming it were filed in a week, you know, I'd like to be having the hearing within a month or two at most.

And so tell me what it is you believe you would -- what discovery you think you -- defendants would be entitled to that's, as best you can, limited to what you anticipate the preliminary injunction would seek.

MR. RAMER: So, Your Honor, based on the -- I'll answer based on the claims that they have brought and the defenses relevant to those legal standards.

So for example, their due process claim is a Matthews versus Eldridge claim.

THE COURT: I don't know what that means. Sorry.

MR. RAMER: Well, it's --

THE COURT: If you were talking about patent cases, I'd probably be a little further down the line.

MR. RAMER: I would be lost.

THE COURT: But I'm not familiar with that case. I'm sorry.

MR. RAMER: The relevant legal standard requires a -- the Court to take into consideration the government's interests, which I've alluded to. And the First Amendment claim would also require the Court taking into consideration the government's interest

because we can overcome things that potentially are associated with, quote/unquote, protected speech.

So that is why we think that the discovery is so significant because -- I mean, not to mince words, but the governor's position is that the plaintiffs here are connected to terrorist organizations and engage and facilitate terrorist activity. And so that is obviously about as compelling as a government interest can get.

And so in order to have evidence to support that, we would need evidence into things such as the organizational structure of the plaintiffs.

And one note, I'll pause here briefly, is with respect to the indispensable party that we referenced in the answer, what we were responding to is the assertions in the complaint that -- and I will be candid, I find it a little hard to parse exactly what they are saying about the plaintiff organizations' relationship to so-called, quote/unquote, CAIR National, which is a part of CAIR that is located in DC. And CAIR National is not currently a plaintiff here.

Yet, the day after plaintiffs filed their complaint, CAIR National submitted a PIA, a Public Information Act, essentially FOIA request to the

governor. Also, CAIR National is a plaintiff in a case in Florida that is litigating a similar executive order and, indeed, represented by some of the same counsel.

And so to the extent that plaintiffs here are suggesting that, quote/unquote, CAIR National is not in this case somehow, we think that they have to be joined.

Now, I do think, from our perspective, CAIR National is here. They are litigating on behalf of CAIR National. Therefore, discovery requests to the plaintiffs here would extend to CAIR National.

But to the extent Your Honor disagrees with that, we -- that's the indispensable party that we were referring to. And so that goes to the first bucket of -- sorry.

THE COURT: So it occurs to me a potential response I might get from the plaintiff -- whether she's prepared to make it now, she might think about it now that she's heard that -- might be to argue whether or not you're entitled to get information about an entity that's not here and which could lead to a problem of you saying, well, it's because we think they're indispensable. And them saying, nuh-uh. We don't think so. And you say, yes. They are. And them, no. They're not.

So it seems to me an issue -- is there a way to -- for me -- is there a way for me to decide fairly whether or not they should be subject to discovery or not and is that something you're ready to tell me today?

MR. RAMER: Your Honor, we think that under Rule 19, they would be an indispensable party that should be joined.

THE COURT: Well, I know you -- I understand you -- and -- I'm sorry. I may have interrupted you. Because I anticipate they may say, no. They're not.

MR. RAMER: Right.

THE COURT: And so -- which won't get us very far.

MR. RAMER: Right. No. I agree.

And that's why I was going to continue on to explain that the relevant standard under Rule 19 that we think applies here is the fact that -- is the part of Rule 19 that relates to complete relief.

Because what Rule 19 says is that if a party is absent and the Court cannot provide complete relief, then the party has to be joined to the extent that they can be joined.

And here, looking at the complaint, what

they are essentially doing is litigating on behalf of CAIR National by seeking an injunction against enforcement of the proclamation in its entirety.

And so to litigate essentially the rights of CAIR National when CAIR National is not here, again, we reject the premise of this kind of corporate shield defense with respect to potential terrorist activity.

But to the extent they are asserting that, that is the reason under Rule 19(a) we think that the nature of the relief that they are seeking means that the Court cannot provide complete relief in accordance with the complaint unless CAIR National were in the case.

And to bring it back to the discovery requests, that is why we are seeking discovery into the structure.

THE COURT: So let me try it a little bit differently. Again, I'm just trying to not have us all have to get together again.

Because again, I understand -- it's an unusual indispensable party because you're saying -- I don't know how often we see an argument made that there's a missing indispensable plaintiff.

And so here -- in the sense that you -- it's you all are making the argument they're

indispensable because I think you -- and stop me when -- that they're indispensable because you think what the governor and the law -- the Attorney General are doing affects -- impacts them. Which to you makes them indispensable in this case.

Am I following that correctly?

MR. RAMER: I think so, Your Honor.

I think our position is the reason that they are indispensable is because the plaintiffs are seeking relief to go toward the benefit of CAIR National.

THE COURT: Okay. Now, that -- and that's as close as we may get. So I understand your -- that argument. Would it be fair to say that that's a surmise of -- a reasonable surmise you'd have and that you need discovery to determine whether or not you're correct or not?

MR. RAMER: I think two responses to that. Yes. That's one aspect of it. I think the second --

THE COURT: That lets you win.

MR. RAMER: Say again now.

THE COURT: That lets you win.

Then -- I'm saying that. I'm just trying to frame it in a way that there's a reason where I

avoid the fight over whether or not they are indispensable and turn this into a reasonable pursuit of discovery on your part to determine one way -- you say they are, they say they're not. But you feel the only way to resolve it is for you at least to have some discovery to that end. Which I'm willing to give you.

So to that end, what is it -- how would you go about taking -- what discovery would you want to take to accomplish the mission, if you can, of showing that they are indispensable?

MR. RAMER: So, Your Honor, I will -- one thing we would want to know is CAIR's organization --

THE COURT: I don't care what you want to know. I'd like to know how you would do it. I mean, are you talking about interrogatories? Are you talking about a 30(b)(6) of somebody? If so, who? You can tell me what it is you want. That doesn't help me as a mechanic very much. Because I've got to grant you what you can do.

MR. RAMER: Understood, Your Honor. I apologize.

THE COURT: No, no. No apology. I just -- I want to be as helpful -- I want to be as clear on the record because, again -- and by the way, so you -- if you haven't been in front of me, I don't

have discovery motions.

If you all disagree about something, I have discovery e-mails and you send in -- each side sends in an e-mail limited to 500 words about what the dispute is. And within a day or so, or at least within a week, the week it's filed, I tend to have a hearing and/or not have a hearing and resolve it. But -- you will get in more trouble by having a problem and not getting it to me quickly because I can't take back time.

So tell me what -- if you were to say we'd like to take the -- we'd like to do the following discovery, what would that be?

MR. RAMER: So, Your Honor, we would like to do the following discovery. We would like to -- we would like to do document requests.

THE COURT: Of?

MR. RAMER: Sufficient to show --

THE COURT: No. What do you want to ask? Tell me -- you're making the list and I'm going to give plaintiffs' counsel an opportunity to say nuh-uh because. So tell me the list you want to -- me to permit you to do.

MR. RAMER: Right.

THE COURT: Not sufficient to show. But

give me categories that counsel can respond to.

MR. RAMER: Documents, the category of financial -- the financial structure.

THE COURT: Of what entity?

MR. RAMER: Of the plaintiff organizations, which we think includes CAIR National.

THE COURT: CAIR National isn't in the case yet. But -- but so any -- but any documents they have where there are interactions with -- that might show that -- however you need to frame it, it -- the point here is for you to be able to determine whether or not they are in fact here without that entity even though there will be a benefit to them.

So let me try it this way. I think it'd be better than just putting you on the spot here.

I'm going to allow you to do discovery that establishes whether or not all the entities that should be here should be here. And also, as a -- at a macro level, anything that you can articulate that you believe would show that they -- that as you are arguing, that CAIR is in fact an entity that is -- what was your -- I want to use your word. That terrorist organization?

MR. RAMER: Right. The proclamation -- yeah. A transnational criminal organization of a

foreign territory.

THE COURT: Okay. So -- but to say I want everything that relates to them being a transnational organization would be like telling Microsoft I want everything that has to do with Outlook. That's not going to help you and it's not going to help them.

So what you need to do is go back with either your forensic people who do accounting or whatever it is you can that will actually bore sight the issue of whether or not whoever the plaintiffs are in this case and whatever plaintiffs you think need to be added are -- would in fact fall under the ambit of the statute.

And then my preference of the way discovery is taken is that I like 30(b)(6)s a lot.

Now, what I dislike in a 30(b)(6), from when I was a lawyer, was when you show up and you ask a question and they say, oh, that's not right. So what I suggest you do -- in other words, you have the topics. You send to them we want this information and then we'd like a person to show up to discuss that.

I think it enures greatly to your benefit to provide as many of the questions as you can think you want the 30(b)(6) witness to be prepared to answer

to them in advance. At a minimum, that eliminates the objection, oh, that's -- I didn't know you were going to ask that. And so that eliminates that objection.

I'm not -- they don't get to say, oh, you didn't give that to us. You don't get to ask. I'm just saying from your perspective, anything that you have provided them, they can tell you in advance, we don't think this is okay. And if there are a lot of things that the plaintiff thinks are not okay that you want to ask, well, then that falls back in the bucket of you now have a discovery dispute.

Send us an e-mail and my clerk and I will be happy to go through the questions that they think are not necessary or appropriate and I'll have a hearing on that to determine whether or not I find that what you are doing is appropriate to accomplish the goals that you want and is fair to the plaintiff.

So that seems to me -- what I'm trying to strike a balance is the most efficient and effective way to get the defense what they say they need to prepare for both an argument to add one or more necessary parties and to defend against a not-yet-filed preliminary injunction but one we think you probably have some understanding of what will be sought. And is equally fair to the plaintiff that the discovery won't

be overly burdensome because I want it to go to those issues.

I'm also fine, entirely up to you. I don't know where these witnesses are located. Obviously if you'd like to take the depos in person where they're located, good on you. If the parties want to agree to do Zoom depositions, that's fine with me too.

To the extent you know you're going to ask witnesses about certain documents, let them know in advance they're going to be asked about certain documents.

Again, I'm not limiting you to asking about those documents. I'm just saying I won't be very sympathetic to the plaintiff if they say, oh, we didn't know to prepare our witness on this because when you say, no. You had it and we said we were going to talk to you about Page 12. I mean, they may be unhappy about that, but it won't be that they didn't know you wanted to do it.

So to me, I'm -- I've babbled a lot. Hopefully I've given you the relief that you were seeking. Is there anything you want -- anything that you want while we're together that I haven't addressed?

MR. RAMER: Your Honor, I think that the

30(b)(6) approach Your Honor has outlined is -- works for us and --

THE COURT: To me, it would be them get the documents to you. If you need it on an expedite -- a reasonable expedited basis, work that out so you can get the depos taken and I can get the hearing done.

Now, I haven't given you a chance to really say anything which is -- I apologize for. Is there anything that -- about what I've said I'm going to permit that you think would be unfair or prejudicial to your client?

MS. GLOVER: Yes, Your Honor. We don't believe -- we don't agree with defendants that they need discovery into factual issues.

THE COURT: I know.

MS. GLOVER: I'm sorry. Not to do a nuh-uh thing. But these are purely questions of law. Especially on Counts 1 and 2.

THE COURT: Let me give you an example. Are you prepared to agree with them that -- I am terrible with names. Fair --

MR. RAMER: Mr. Ramer.

THE COURT: No, no, no. The name of the entity that you want to add as a --

MR. RAMER: Oh, CAIR National.

THE COURT: CAIR National.

Are you prepared to say that they should be part of the case?

MS. GLOVER: We are not. We don't believe they should be part of the case.

THE COURT: Well, then -- then we have an issue.

MS. GLOVER: Right. I guess I would respond I don't believe that -- well, I don't believe that the proclamation actually does apply to CAIR National and I guess that's also the issue. That's a question of law.

THE COURT: Well, that's why I framed it to where they're doing discovery -- I knew you were going to say that.

MS. GLOVER: Of course.

THE COURT: That's why I'm framing the discovery where they get to -- and you get to say you don't think they're relevant, they get to say they are relevant. And in this case, they get to do discovery to help me determine. And that may be an issue -- that will be an issue we have to take up.

MS. GLOVER: Okay.

THE COURT: I mean, I'm not deciding -- I'm not in any way deciding that they -- today that

they are an indispensable party. I'm giving the defendants the -- because there's a fight over it, I'm giving them the opportunity to do discovery and persuade me based on what they find. And then -- and you will have an equal opportunity at a hearing to argue why they're wrong and I'll make a decision.

MS. GLOVER: Just to clarify, would we have the opportunity through the discovery e-mails to your chambers to dispute, you know, the topics that they ask?

THE COURT: Sure.

MS. GLOVER: Because as you probably have guessed, we believe that this is a fishing expedition to get into our clients --

THE COURT: I've never heard that term before.

(Laughter.)

THE COURT: Sure. No.

And here's -- you know, here's where both sides -- I'll tell you in advance, here's -- you know, judges will often tell people the biggest thing you have is your credibility. And everyone is like, well, duh. What does that mean?

Let me explain to you and this is a particular case where if they send you whatever they

send you and you're unhappy with it and we have a fight over it, if as I'm looking through it, I think they've asked for a bunch of stuff that I don't think they need, well, then they've lost their credibility and they'll have a harder time getting what they really want and they'll have a harder time.

On the other hand, if they send it to you and you say, we need to have a hearing, and I'm looking through it and I'm going, well, I would have asked for that. I would ask asked for that. I would have asked that. I would have asked for all this stuff. Well, then it's your credibility problem.

MS. GLOVER: Understood.

THE COURT: So I wouldn't just pull the trigger on the grenade. I mean, I have about one out of every hundred of cases I have because of this method, I have lawyers that just don't talk at all if they have a fight. They just have me decide it. And I'm -- I don't want that. I'm not a babysitter.

But here, I think you all have a legitimate argument. I meant it. They think they're indispensable. You think they're not. I don't know. And so the only way for me to resolve it is to give the side that wants them in the discovery to help me make that decision. And so keep that in mind as you're

saying we think it's a fishing expedition.

Just understand at this point, I don't think their request for information to establish something like that is a fishing expedition because I'm the one who has to resolve it and I want them to have as much information there -- as they -- as there exists so I can make the right decision. I think that's a legitimate question and not inappropriate.

So that's why I kind of turned what the issue was so that -- of course you all think it's -- everyone who gets discovery thinks it's a fishing expedition. And they don't want to do it.

But I'm just letting you know I think what I've heard them asking for so far and what I've allowed, they've already convinced me, in terms of getting discovery on it, that they're entitled to it.

MS. GLOVER: Okay.

THE COURT: Does that help?

MS. GLOVER: Understood, Your Honor.

THE COURT: Anything else you can add?

MS. GLOVER: No. As I said, we intend to file our motion for a preliminary injunction next week and so we'll have that before you and we can proceed from there.

THE COURT: Why don't we do this?

Whenever it is you file your motion for preliminary injunction, why don't -- how soon -- well, let me ask you this. Let me ask prior to -- that's -- I don't need to ask.

Once you have -- once they have the preliminary injunction, I assume the defendant can get your discovery requests for documents, you know, out to them in a week?

MR. RAMER: Yes, Your Honor.

THE COURT: Okay. So assuming next week they get it, the following week, how long will it take CAIR to -- or whoever the entities are to respond? Just in terms of the production of documents assuming it's not overly burdensome. It sounds to me like it's going to be primarily financial documents.

MR. RAMER: Financial and structure of the organization.

THE COURT: Which to me is all on computer. So would you be able to get that information in two weeks?

MS. GLOVER: If the Court requests it, yes.

THE COURT: Okay. So that I think takes us through the end of January at least. Then, so once -- let's do -- my plan will be this right now.

I'd like for you all to get everything done between filing the injunction, sending the requests for discovery, responding to the requests for discovery, asking for the 30(b)(6), preparing and providing the 30(b)(6)s, I'm thinking early March for a hearing in the -- on the preliminary injunction.

Does that sound reasonable to the parties?

MS. GLOVER: Yes, Your Honor.

MR. RAMER: Yes, Your Honor.

THE COURT: Okay. Anna will take care of letting y'all know when the hearing will be. I would like -- I don't do that -- this often. I would like the hearing to be in person.

MS. GLOVER: That works, Your Honor.

THE COURT: Okay. Anything else from anyone?

MS. GLOVER: I did have one question.

THE COURT: Sure.

MS. GLOVER: We had mailed our amended complaint to the Court and I believe it was delivered yesterday but I don't think it's on the docket. I have a copy in case you want it right now.

THE COURT: I don't think we need one. You just -- what is your problem with the -- it --

being able to file it electronically?

MS. GLOVER: The Western District of Texas doesn't allow you to add a new party. The ECF.

THE COURT: Oh. So -- like I know the rules. Someone should probably know these things.

However, you -- we don't need a copy. We're not going to take it back and read it today. All good. If you'll just make sure it gets filed and docketed.

You might make sure you have Jen's contact information because she's the clerk that'll make sure it gets docketed. I just want to make sure there's no snafu on it being docketed because of that particular issue. But I've granted -- I've granted the addition of the party. So -- so hopefully there'll be some kind of docket entry I believe today that will reflect that.

MS. GLOVER: Thank you, Your Honor.

THE COURT: Anything else from defendants?

MR. RAMER: Not from the governor, Your Honor.

MR. BRYANT: No, Your Honor.

THE COURT: Thank you so much for being -- are you here in Austin?

MS. GLOVER: No. I'm in Dallas. I drove down.

THE COURT: Okay.

(Off-the-record discussion.)

THE COURT: Thank you all.

THE BAILIFF: All rise.

(Hearing adjourned.)

*KRISTIE M. DAVIS, OFFICIAL COURT REPORTER*
*U.S. DISTRICT COURT, WESTERN DISTRICT OF TEXAS (WACO)*

UNITED STATES DISTRICT COURT )

WESTERN DISTRICT OF TEXAS     )

I, Kristie M. Davis, Official Court Reporter for the United States District Court, Western District of Texas, do certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

I certify that the transcript fees and format comply with those prescribed by the Court and Judicial Conference of the United States.

Certified to by me this 16th day of January 2026.

> */s/ Kristie M. Davis*
> KRISTIE M. DAVIS
> Official Court Reporter
> PO Box 20994
> Waco, Texas 76702
> (254) 666-0904
> kmdaviscsr@yahoo.com