**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

COUNCIL ON AMERICAN-ISLAMIC RELATIONS )
TEXAS DALLAS FORT WORTH, COUNCIL ON )
AMERICAN-ISLAMIC RELATIONS AUSTIN )
TEXAS, and COUNCIL ON AMERICAN-ISLAMIC )
RELATIONS TEXAS, )
                                        )
             *Plaintiffs,*               )   Case No. 1:25-cv-01878-ADA
                    v.                   )
GOVERNOR GREG ABBOTT, in his official capacity, )
and ATTORNEY GENERAL KEN PAXTON, in his )
official capacity, )
                                        )
             *Defendants.*

**NON-PARTY CAIR FOUNDATION, INC.'S REPLY TO DEFENDANTS' RESPONSE
TO EMERGENCY MOTION TO MODIFY
<u>PROTECTIVE ORDERS ECF NOS. 64 AND 42</u>**

Non-party CAIR Foundation, Inc. (the "Foundation") writes briefly in reply to Defendant Governor Abbott's Response to the Foundation's Emergency Motion to Modify Protective Orders ECF No. 64 (May 6, 2026) and ECF No. 42 (March 6, 2026) (the "Motion," ECF No. 65).

**I. The Foundation cited the correct standard governing modification of a protective order, and good cause exists to modify the orders.**

Without citing a single case that applies F.R.C.P. 54(b) to a modification of a protective order, Governor Abbott argues that the Foundation's motion for modification is governed by Rule 54(b). ECF No. 66 at 3-4 ("Def. Abbott's Resp."). Governor Abbott also incorrectly contends that the four-factor test only applies in criminal cases. *Id.* While the case cited in the Foundation's Motion—*United States v. Morales*—was a criminal case, the Fifth Circuit was explicitly adopting the standard from civil cases:

> *[W]e find it prudent to borrow from the civil context. . . . In that context, courts consider four factors* when determining whether to modify a protective order: [ (]1) the nature of the protective order[;] (2) the foreseeability, at the time of issuance of the order, of the modification requested[;] (3) the parties' reliance on the order; and most significantly (4) whether good cause exists for the modification.

*United States v. Morales*, 807 F.3d 717, 723 (5th Cir. 2015) (internal quotation omitted) (emphasis added). Courts within the Circuit continue to apply that four-factor test for motions for modification in **civil** cases, citing *Morales* and *Peoples*. *See, e.g.*, *Bob Daemmrich Photography, Inc. v. Scholastic Inc.*, No. 1:15-CV-1150-RP, 2018 WL 4178325, at *2 (W.D. Tex. Apr. 23, 2018) (applying the four-factor test); *MBA Eng'g Inc. v. Matrix Tr. Co.*, No. 3:20-CV-01915-E, 2023 WL 2619172, at *4 (N.D. Tex. Mar. 23, 2023) (applying the test and noting that it "is well established that a district court retains the power to modify or lift confidentiality orders that it has entered.") (internal quotation omitted) ; *Raytheon Co. v. Indigo Sys. Corp.*, No. 4:07-CV-109, 2008 WL 4371679, at *2 (E.D. Tex. Sept. 18, 2008).

These same "four factors" apply even "[i]n deciding whether to modify a stipulated

1

protective order." *Raytheon Co.*, 2008 WL 4371679, at *2 (E.D. Tex. Sept. 18, 2008) (partially granting a party's Emergency Motion to Modify the Agreed Protective Order and to Modify the Confidentiality Designation of the Expert Report). This is in keeping with the general principle that "Rule 26(c) protective orders are 'flexible devices' and are open to modification by the issuing court. [And o]ften, parties other than the two parties involved in the original suit where the protective order was issued challenge such orders." Patrick S. Kim, *Third-Party Modification of Protective Orders Under Rule 26(c)*, 94 MICH. L. REV. 854 (1995) (citing 8 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2044.1 (2d ed. 1994)).

Moreover, despite Defendants' contention that First Amendment protections do not reach discovery, *see* Def. Abbott's Resp. at 8, it is black letter constitutional law that First Amendment associational privileges apply when a discovery order "entail[s] the likelihood of a substantial restraint upon the . . . right to freedom of association." *Nat'l Ass'n for Advancement of Colored People v. Ala.*, 357 U.S. 449, 462 (1958); *see also* ECF. 65 at 5 (the Motion) *accord Young Conservatives of Texas Found. v. Univ. of N. Texas*, No. 4:20-CV-973-SDJ, 2022 WL 2901007, at *2 (E.D. Tex. Jan. 11, 2022). While the Governor complains that it is unfair for a plaintiff (which the Foundation is not) to seek protection when discovery threatens its associational rights, Def. Abbott's Resp. at 6-8, this position finds no support in the case law. Indeed, this was the precise fact pattern in *Young Conservatives of Texas*. There, the court found that the plaintiff demonstrated an "objectively reasonable probability that disclosure of its members' names and contact information" to the state university defendants would chill associational rights, given allegations that Young Conservatives on campus had been subjected to harassing rhetoric and that "[m]embers of the public and opposition groups" had sought to ban the group from campus. WL 2901007, at *3. Given this prima facie showing of harm, the burden shifted to the defendants to "demonstrate

a compelling need for the information that is sufficient to justify the potential chilling effect." *Id*. at *3.

Because Governor Abbott demonstrates through his new attack that he is actively seeking to use discovery as a tool to threaten the Foundation's donors, and thus fundamentally infringe on its associational rights, "good cause" exists to modify the existing protective orders.

## II. Governor Abbott's waiver argument fails.

Governor Abbott contends that the Foundation "waived" the broader relief sought in this Motion because its initial Motion for Protective Order (the "Motion for Protective Order," ECF No. 55) proposed narrower compromises. Def. Abbott's Resp. at 5–6. That argument inverts both the record and the law.

The Foundation's Motion for Protective Order expressly preserved the very First Amendment concerns it now presses. *See* ECF No. 55 at 4 (citing *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021) and *X Corp. v. Media Matters for Am.*, 120 F.4th 190 (5th Cir. 2024)). The Foundation explained that the donor requests were "especially problematic" and that "the harm flows from the compelled disclosure itself." *Id.* at 9. The Foundation also documented that "several regular donors asked to be removed from ongoing monthly donations" and "local Muslim organizations refrained from partnering with the Foundation . . . because of the Proclamation." *Id.* at 10.

That the Foundation, at the instructions of this Court during the April 22 hearing, offered narrower compromise positions during the meet-and-confer process is not a waiver; it is precisely the good-faith conduct this Court encouraged. The Foundation could not have foreseen that, within hours of the Court's order narrowing the requests, Governor Abbott would show bad faith by inaccurately broadcasting the resulting order to the public as targeting not just foreign, but *all*,

3

Foundation donors and donees. *See* Mot. at 2–3.

Nor can the Foundation's public statements highlighting that certain donors were not ordered disclosed somehow get contorted into an admission that disclosing other donors is not a burden on the Foundation's First Amendment rights. The Foundation has consistently maintained that forced disclosure is a severe associational burden. *See, e.g.*, ECF No. 55 at 4 & 9-10 ("[C]hilling [of rights] is already occurring. . . . Forcing the Foundation to disclose sensitive donor information, funding relationships, and broad categories of internal communications would predictably compound the reputational harm the Foundation is already experiencing and further chill support," violating First Amendment-protected freedoms). Governor Abbott's recent actions only put the First Amendment burden in sharper focus for this Court to see. Of course, the Foundation would seek to mitigate the chilling effect of Governor Abbott's assaults by highlighting its limitations. Governor Abbott's reading would put the Foundation in an impossible bind: stay silent while a state official misleads the public about a court order targeting the Foundation's donors, or speak up and waive constitutional protections.

### III. Governor Abbott may not seek the substantive benefits of treating the Foundation as a party, while denying it the procedural rights of one.

In a perversion of the sword-and-shield metaphor, Governor Abbott argues that the Foundation cannot assert its associational rights because the Plaintiffs initiated this suit. Def. Abbott's Resp. 66 at 6–8. First, this argument (yet again) conflates the Foundation with the Plaintiffs. Confusingly, it directly contradicts the Governor's own argument that "only Plaintiffs," not the Foundation, can bring the Motion. *Id.* at 4. Governor Abbott may not invoke one theory of the case to seek discovery directly from the Foundation, then turn around and argue the Foundation cannot seek to modify the protective orders governing that discovery.

Rule 26(c)(1) permits "any person from whom discovery is sought" to seek protection.

Fed. R. Civ. P. 26(c)(1). Such protection is not limited to parties. *Id*. As the substantive target of Defendants' requests, the Foundation is the person from whom discovery is sought within the meaning of that rule. That is precisely what the Supreme Court held in *First Choice*: an entity facing compelled disclosure of associational information has standing to defend its First Amendment rights in federal court. *First Choice Women's Resource Centers, Inc. v. Davenport*, No. 24-781, 2026 WL 1153029, at *5–7 (U.S. Apr. 29, 2026).

Governor Abbott's position ignores this case's posture and would effectively eliminate anyone's ability to challenge state actions that infringe constitutional rights. This dispute began because **Governor Abbott** issued Proclamation 41-4241 unilaterally branding "CAIR" as a "Foreign Terrorist Organization" and "Transnational Criminal Organizations" and prohibiting all of its "affiliates and members" from acquiring land in Texas. *See* ECF No. 1-2 (Proclamation 41-4241 (Nov. 18, 2025)). As a result of Defendants' actions, Plaintiffs initiated this case to protect their own legal rights. Governor Abbott repeatedly justifies the requested discovery as necessary to "muster a defense" to the Plaintiffs' claims. Def. Abbott's Resp. at 7. But this is not a defamation suit, wherein a Defendant may build out the truth through post-hoc factfinding to justify their actions. It strains credulity to argue that the state can infringe on a person's constitutionally protected rights, yet the person waives such rights if they seek redress in court. For these reasons, "the Fifth Circuit has likewise recognized a First Amendment privilege when discovery requests implicate associational rights" for a Plaintiff that initiated suit. *Young Conservatives of Tex. Found.*, 2022 WL 2901007, at *2 (E.D. Tex. Jan. 11, 2022).

\*\*\*

For the reasons stated here and in the Motion, the Court should reject Governor Abbott's weaponization of this lawsuit to target the Foundation's protected associational rights.

Dated: May 13, 2026

Respectfully submitted,

*/s/ Shahmeer Halepota*
John Zavitsanos
State Bar No. 22251650
jzavitsanos@azalaw.com
Shahmeer Halepota
State Bar No. 24109968
shalepota@azalaw.com
Nicholas Petree
State Bar No. 24083657
npetree@azalaw.com
**AHMAD, ZAVITSANOS & MENSING, PLLC**
1221 McKinney St., Suite 2500
Houston, Texas 77010
Telephone: 713-600-4904 | Fax: 713-655-0062

**ATTORNEYS FOR NON-PARTY
CAIR-FOUNDATION, INC.**

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served on all counsel of record pursuant to the

Court's CM/ECF system on May 13, 2026.

*/s/ Shahmeer Halepota*
Shahmeer Halepota

6