**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| COUNCIL ON AMERICAN-ISLAMIC RELATIONS TEXAS DALLAS FORT WORTH, COUNCIL ON AMERICAN-ISLAMIC RELATIONS AUSTIN TEXAS, and COUNCIL ON AMERICAN-ISLAMIC RELATIONS TEXAS, | ) ) ) ) ) ) ) |
| *Plaintiffs*, | ) Case No. 1:25-cv-01878-ADA ) |
| v. | ) **PUBLIC REDACTED** ) |
| GOVERNOR GREG ABBOTT, in his official capacity, and ATTORNEY GENERAL KEN PAXTON, in his official capacity, | ) ) ) ) |
| *Defendants*. | ) |

**GOVERNOR ABBOTT'S MOTION TO COMPEL PRODUCTION AND AMEND THE BRIEFING SCHEDULE**

CAIR National has once again refused to produce documents in response to a reasonable and proportionate discovery request. Governor Abbott now moves to compel production of documents responsive to the search terms listed in ███ to this motion. This Court has now ordered production of CAIR National's documents multiple times—going back to March. *See* ECF Nos. 45, 64, 70. Now, two months later, CAIR National still has not produced a single document in response to Governor Abbott's search-term RFPs. Governor Abbott, meanwhile, has repeatedly and substantially narrowed his requests—from 167 terms down to 19 and from 23 custodians down to 4—all using CAIR National's own assessment of the time it would take to comply. The Court should grant this motion to compel and enter the proposed briefing schedule to avoid further delay efforts by CAIR National.

1

## <u>BACKGROUND</u>

On November 18, 2025, Governor Greg Abbott issued a Proclamation declaring the Muslim Brotherhood and the Council on American-Islamic Relations to be Foreign Terrorist Organizations and Transnational Criminal Organizations under Texas law. The Texas-based chapters of CAIR sued Governor Abbott and Attorney General Paxton. After Plaintiffs indicated they would seek a preliminary injunction, the Court granted Defendants discovery into Plaintiff's "financial documents," documents regarding the "structure of the organization" of Plaintiffs, and documents that the Governor "believe[s] would show that . . . CAIR is in fact an entity that is" a "terrorist organization" and "transnational criminal organization." Tr. of Jan. 7, 2026, Proceedings, ECF No. 27 at 26:16–27:1, 35:13-17 (Jan. 16, 2026) ("Hrg. Tr.").

After preliminary discovery took place, including multiple Rule 30(b)(6) depositions, Defendants moved to compel discovery into CAIR-Foundation, Inc. ("CAIR National") because Plaintiffs' operations were inextricably intertwined with CAIR National's. Almost two months ago, this Court agreed, ruling that "Plaintiffs in this action have 'possession, custody, or control' of documents held by CAIR National" under Rule 34. ECF No. 45 at 1 (quoting FED. R. CIV. P. 34(a)(1). The Court thus granted Defendants' motion to compel discovery into CAIR National. ECF No. 50. Governor Abbott then served on Plaintiffs requests for production tailored to CAIR National, along with a corresponding list of 167 search terms and 23 custodians. ECF No. 55-5 at 29.

After Defendants served their requests, Plaintiffs' counsel served their objections and then separate attorneys for CAIR National served what they described as "informal objections" on behalf of CAIR National exclusively. *Id.* at 45-46. These other attorneys also asserted, in direct defiance of this Court's order, that Plaintiffs "do not have possession, custody, and control of CAIR

[National's] documents." *Id.* at 49. Although the Governor was willing to confer with both Plaintiffs' counsel and the separate attorneys representing CAIR National, the Governor's counsel repeatedly made clear that the document requests were served on Plaintiffs (not a purported "nonparty") pursuant to the Court's order. *See id.* at 20, 27, 41.

After receiving these various objections and engaging in a lengthy meet-and-confer process, Governor Abbott substantially narrowed his proposed search terms. He cut the 167 terms down to 30 and the number of custodians from 23 to four. *Id.* at 23, 28-29. Although he substantially reduced the scope of his requests, Plaintiffs refused to even produce a hit report that demonstrated the purported burden of the search. With negotiations at a standstill, Governor Abbott filed a second motion to compel, requesting production of documents that did not require search terms and requesting Plaintiffs produce a hit report for the search-term RFPs.

The Court held a hearing on these motions and directed the parties to submit a proposed order. The order compelled discovery of CAIR National's foreign donors, CAIR National's donees, and the travel of CAIR National Executive Director Nihad Awad's to nine foreign countries. The order also required Plaintiffs to produce a hit report that identified the number of documents responsive to each proposed search term so that the parties could meaningfully confer about possibly narrowing the list of search terms. CAIR National finally produced a hit report, and it turned up a total of ███████████. *See* Ex. ██. Governor Abbott then submitted a revised list of terms, eliminating 3 terms entirely and narrowing 12 others substantially. CAIR National ran a second hit report, which turned returned ███████████. *See* Ex. ██. ████████████████████████ ████████████████████████████████████████████ ████████████████████ He also offered to confer if CAIR National thought it would be helpful. Ex. ██. CAIR National, who has been handling the negotiations for Plaintiffs, refused.

3

████████████████████████████████████████████████████████

████████████████████████████████████████████████████ *Id.*

## LEGAL STANDARD

Parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). "The scope of discovery is broad." *Via Vadis, LLC v. Amazon.com, Inc.*, No. 1:14-cv-00813-LY, 2021 WL 3134257, at *1 (W.D. Tex. July 23, 2021); *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). "A discovery request is relevant when the request seeks admissible evidence or 'is reasonably calculated to lead to the discovery of admissible evidence.' " *Id.* (quoting *Wiwa v. Royal Dutch Petroleum* Co., 392 F.3d 812, 820 (5th Cir. 2004)).

"After a party has attempted in good faith to obtain discovery without court action, that party may move for an order compelling disclosure." *Via Vadis, LLC*, 2021 WL 3134257, at *1. "The party resisting discovery must show how each discovery request is not relevant or otherwise objectionable." *Id.* When faced with a motion to compel, "[t]he Court must balance the need for discovery by the requesting party and the relevance of the discovery to the case against the harm, prejudice or burden to the other party." *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 389 (N.D. Tex. 2003).

## ARGUMENT

Governor Abbott's proposed search terms satisfy the motion-to-compel standard. First, the documents he demands are highly relevant to the discovery already ordered by the Court. Second, production of these documents would not be overly burdensome, as evidenced by CAIR National's own submissions in this case and in light of modern e-discovery principles.

1. The terms that Governor Abbott has identified are highly likely to contain relevant documents. *Crosby*, 647 F.3d at 262. As this Court has already concluded (multiple times), relevant documents for the purpose of preliminary-injunction discovery include "financial documents," documents regarding the "structure of the organization" of Plaintiffs, Hrg. Tr. at 35:13-17, and documents that the Governor "believe[s] would show that . . . CAIR is in fact an entity that is" a "terrorist organization" and "transnational criminal organization." *Id.* at 26:16-27:1. In the interests of space, the Governor will not highlight the relevance of every single term, but a handful of search terms or search strings illustrate the relevance of his search terms. *See Crosby*, 647 F.3d at 262.

5



████████████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████

Needless to say, the Governor is not engaging in some sort of "speculative fishing expedition." *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010).

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████

2. The relevance of this production is beyond dispute. *Crosby*, 647 F.3d at 262. It is also narrowly targeted and minimally burdensome. Governor Abbott has taken CAIR National's burden objections seriously and repeatedly narrowed his request to accommodate those concerns. Before CAIR National even produced a hit report, Governor Abbott reduced the number of search terms by 82% and cut the number of custodians from 23 to four. After the first hit report turned up █████████, Governor Abbott refined his search criteria, and the next report turned up only █████████ When CAIR National objected to that number, Governor Abbott was willing to narrow even further and pick out the most probative terms that resulted in under 25,000 hits. This series of events ████████████████████████████████████ [2] Hrg. Tr. at 26:16-27:1.

---

[2] Shortly before Governor Abbott moved to compel, CAIR National emailed the court and described the reduction from 134,334 hits to 25,000 hits as a "slightly reduced term proposal." An 80% reduction is plainly not a "slight[]" reduction.

The burden on Plaintiffs and CAIR National would also be reasonable and proportional, especially considering they are the ones who have initiated a lawsuit that seeks to enjoin the highest levels of the Texas government from carrying out their duties and enforcing a democratically enacted statute. CAIR National has already submitted to this Court an estimate of production costs associated with an earlier round of search terms. Using that declaration to estimate costs, the burden here will be reasonable. *See* Decl. of Shahmeer Halepota, ECF No. 55-1.

According to CAIR National, it will cost between "$.70 and $.90 per document to conduct first-level review" of these documents through the use of a litigation vendor. *Id.* ¶ 2. If they have to review approximately 25,000 documents, the cost would be $22,500, at the maximum. *Id.* A second level of review would be conducted on, according to CAIR National's declaration, approximately "10 percent of the documents." *Id.* ¶ 3. That review would cost $300 per hour, and they claim that each attorney could review 100 documents per hour. *Id.* That means it would take only 25 man-hours to review the relevant documents at a cost of $7,500. *Id.* Even if "5 percent of documents required privilege review," the additional cost would be just a few thousand dollars. *Id.* ¶ 4. In short, the cost to CAIR National would be just over $30,000, even using the high end of their own estimates.[3] For some, $30,000 may be a lot, but CAIR National claims that its annual budget is approximately $13 *million* dollars, *see* Decl. of Thania Clevenger, ECF No. 55-8 ¶ 13, which demonstrates that this discovery would not unreasonably disrupt their operations at all.

---

[3] This reasonable and proportional search does not require CAIR National to produce "inaccessible electronic data," and cost shifting is not justified—especially in light of the degree to which CAIR National's discovery conduct has required the Governor to file multiple discovery motions. *See, e.g.*, *Novick v. AXA Network, LLC*, No. 07-cv-7767, 2013 WL 5338427, at *3-4 (S.D.N.Y. Sep. 24, 2013) (explaining that cost-shifting in e-discovery does not apply for emails that are kept in an accessible format). Nor do these numbers even take into account the possibility of using standard "technology-assisted review or a similar tool (collectively 'TAR') to identify responsive documents." *In re Google Digital Advert. Antitrust Litig.*, No. 21-MD-3010, 2023 WL 2557433, at *3 (S.D.N.Y. Mar. 17, 2023).

Indeed, after Governor Abbott issued the proclamation at issue in this case, ██████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████

CAIR National has previously argued that it is entitled to special solicitude in the discovery process because it is not a party to this litigation. ECF No. 55-4. CAIR National is entitled to no such solicitude. As this Court has recognized, the discovery here is served upon Plaintiffs, even though it requests documents held by CAIR National. ECF No. 45; ECF No. 50; ECF No. 70 at 3 n.1 ("[T]he undersigned ordered Plaintiffs to comply with Defendants' discovery requests after finding Plaintiffs had possession and control over the relevant CAIR Foundation documents."). Governor Abbott's counsel has been willing to negotiate with counsel hired by CAIR National, but that fact does not somehow transform this discovery from party discovery into something else. And even if the Court did consider CAIR National's status in determining the proper scope of discovery, there is still no question that Governor Abbott's requests are reasonable. As discussed above, they have been extraordinarily narrowed, and they target highly relevant terms.

Finally, this Court should enter the amended schedule set forth in Governor Abbott's proposed order. The parties have agreed on a production date of June 1, 2026, for documents responsive to Abbott RFPs 4 & 5. Neither Plaintiffs nor CAIR National have taken a position on Governor Abbott's proposed June 5, 2026, deadline for production of search-term RFPs, but that date is eminently reasonable based on the timeline discussed above. Assuming this Court rules within a week of this motion being filed, Plaintiffs and CAIR National would have two weeks to coordinate their production. No party objected to Defendants' response briefs being due on June

19, 2026, which is in line with the current schedule. Governor Abbott's proposal that Plaintiffs' reply brief be due on June 26, 2026, is also reasonable because it tracks the spacing in the current schedule. Plaintiffs requested a July 3, 2026, deadline to file their reply brief, but there is no reason to push that date out any more than it already has been pushed.

## CONCLUSION

Governor Abbott respectfully requests that the Court grant the motion to compel and that the Court enter the discovery and briefing schedule set forth in the attached proposed order.

Dated: May 15, 2026                                              Respectfully submitted,

TREVOR W. EZELL                                  */s/ Charles J. Cooper*
*General Counsel*                                  Charles J. Cooper (Pro Hac Vice)
Tex. State Bar No. 24109849                        John D. Ramer (Pro Hac Vice)
Caleb Gunnels                                      Bradley L. Larson (Pro Hac Vice)
Deputy General Counsel                             COOPER & KIRK, PLLC
Tex. State Bar No. 24109959                        1523 New Hampshire Avenue, N.W.
Jason Bramow                                       Washington, D.C. 20036
Deputy General Counsel                             Tel: (202) 220-9600
Tex. State Bar No. 24101545                        Fax: (202) 220-9601
OFFICE OF THE GOVERNOR OF TEXAS                    ccooper@cooperkirk.com
P.O. Box 12428                                     jramer@cooperkirk.com
Austin, TX 78711                                   blarson@cooperkirk.com
Tel: (512) 463-3329
Fax: (512) 463-1932
trevor.ezell@gov.texas.gov

*Counsel for Defendant Greg Abbott, in his official capacity as Governor of Texas*

**CERTIFICATE OF SERVICE**

On May 15, 2026, this document was filed electronically through the Court's CM/ECF system, which automatically serves all counsel of record.

/s/ *Charles J. Cooper*
Charles J. Cooper