**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| COUNCIL ON AMERICAN-ISLAMIC RELATIONS TEXAS DALLAS FORT WORTH, COUNCIL ON AMERICAN-ISLAMIC RELATIONS AUSTIN TEXAS, and COUNCIL ON AMERICAN-ISLAMIC RELATIONS TEXAS, <br><br> *Plaintiffs,* <br><br> v. <br><br> GOVERNOR GREG ABBOTT, in his official capacity, and ATTORNEY GENERAL KEN PAXTON, in his official capacity, <br><br> *Defendants.* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No. 1:25-cv-01878-ADA |

**NON-PARTY CAIR FOUNDATION'S RESPONSE TO GOVERNOR ABBOTT'S
MOTION TO COMPEL PRODUCTION AND AMEND THE BRIEFING SCHEDULE**

1

The dispute before the Court does not concern, as the Governor's Motion to Compel (the "Motion") frames it, whether Governor Abbott's search terms will be run. The dispute concerns proportionality and the marginal utility of the expedited discovery he seeks beyond what CAIR Foundation (the "Foundation") proposed in its May 15 communication to Governor Abbott (the "Proposal"). *See Edwards v. McDermott Int'l, Inc.*, 2022 WL 1568279, at *2 (S.D. Tex. May 18, 2022). Under the Foundation's Proposal, each of the Governor's search terms would still apply, subject only to proximity limiters on 4 of Defendants' 29 search terms and date-range limitations that curb duplicative review and diminishing returns.

The Foundation's Proposal is in keeping with this Court's initial instinct regarding production, which was "to start by going back to 2023." Tr. of Apr. 22 Hearing at 21:4. Once Governor Abbott "receive[s] whatever it is [he] receive[s], if [he] believe[s] that there's information that—where [he] might need to go back further," he could make that case. *Id.* at 21:5-8. If, however, there is nothing in tens of thousands of documents that he can find to *ex post facto* justify his unlawful Proclamation, the Foundation should not be subjected to further costly discovery in the Governor's fishing expedition.

The Foundation's Proposal is also in keeping with the general principle that "requests for expedited discovery should be narrowly tailored." *Accruent, LLC v. Short*, No. 1:17-CV-858-RP, 2017 WL 8811606, at *1 (W.D. Tex. Nov. 8, 2017). It bears emphasizing that this discovery is only for the Plaintiff's (not the Foundation's) *preliminary* injunction that would turn on whether federal law preempts the Governor's request—a pure question of law—and whether the Governor afforded the Plaintiffs due process *at the time of the Proclamation*, not whether he can justify his Proclamation after the fact.

Rather than accept the Foundation's Proposal, or at least agree to discuss it, the Governor argues the relevance of his search terms, minimizes the estimated significant discovery costs to the Foundation (which were based on caveated preliminary evaluations), and entirely ignores the additional costs the Foundation would bear from simultaneously reviewing Attorney General Paxton's proposed terms. Because the Motion focuses on the wrong dispute, it fails to demonstrate that the marginal documents it would surface justify the extensive costs that the Foundation must incur to surface them. The Court should deny the Motion and enter an order granting the Foundation's Proposal. At a minimum, the Court should limit the requests to the same "four years of production" that it imposed on previous requests. Tr. of Apr. 22 Hr'g at 24:5.[1]

## **Background**

Governor Abbott issued a Proclamation that not only erroneously declared Plaintiffs as Foreign Terrorist Organizations and Transnational Criminal Organizations but also precluded Plaintiffs from owning property in the State of Texas. Plaintiffs filed suit to enjoin that Proclamation.

The Foundation has undertaken substantial effort as a non-party in responding to discovery requests, including the negotiation of custodians and search terms with both Defendants. After initial negotiations reached an impasse, the Court convened the April 22, 2026 hearing to address the pending discovery disputes. The Court directed the Foundation to run hit reports against the Defendants' proposed terms within the Defendants' proposed time frames (8 years for most of Governor Abbott's terms) and instructed the Defendants to use those reports to "find a way to focus on the documents that you really would like to have." Tr. of Apr. 22, 2026 Hr'g at 37:15-18.

---

[1] In one final attempt to resolve this dispute without court intervention, the Foundation offered to utilize defendants' most recent proposed search terms but to limit the date range to 4 years. Halepota Dec., Ex. 1. Defendants refused to discuss the proposal. *Id.*

The Court advised Defendants' counsel that the Court would "look much more favorably on" them if their narrowing reflected that work. *Id.* The Court held open the question of cost allocation, pending the parties' subsequent negotiation. *Id.* at 37:20-25, 38:2-7.

The Foundation thereafter ran the hit reports, Defendants and the Foundation exchanged narrowing proposals, and the Foundation made the Proposal, which includes substantially all of the search terms in the Governor's most recent proposal and narrowed the time frame for most of the terms from 8 years to 3 years. Governor Abbott rejected the Proposal and shortly thereafter filed the Motion.[2] On Friday, May 22, the Foundation sent another communication in an attempt to come to an agreement, proposing to run all of Governor Abbott's May 14 and Attorney General Paxton's May 6 proposed search terms as-is but reducing the time frame for that search to 4 years. Halepota Dec. at ¶ 9. Defendants rejected the May 22 proposal and refused to further confer. *Id.*

The Defendants' current proposed search terms and time frames hit at least 34,152 documents, representing almost $190,000 in estimated costs for the Foundation to conduct the review. Halepota Dec. at ¶ 7.

### Legal Standard

Rule 26(b) "has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011). While the scope of discovery is broad, it has "ultimate and necessary boundaries." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). The 2015 Amendments to Rule 26(b)(1) made those boundaries express, requiring that discovery be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). A district court judge is afforded broad discretion in defining the scope of

---

[2] Attorney General Paxton only responded to the Foundation's Proposal on May 22 after additional follow up from the Foundation's counsel, rejecting same. Halepota Dec., Ex. 1.

discovery; however, that discretion is cabined within the framework of Rule 26(b)(1). *Id.* Under that framework, discovery requests must be limited when they are "overly broad and not proportional." *Via Vadis, LLC v. Amazon.com*, Inc., No. 1:14-cv-00813-LY, 2021 WL 3134257, at *2-3 (W.D. Tex. July 23, 2021); *see also Crosby*, 647 F.3d at 264 ("[a court] must limit otherwise permissible discovery if it determines that the burden or expense of the proposed discovery outweighs its likely benefit.").

Proportionality is not measured in a vacuum, nor is it measured by the amount that the party seeking discovery has given up; rather, "proportionality focuses on the marginal utility of the discovery sought." *Edwards v. McDermott Int'l, Inc.,* No. 4:18-cv-04330, 2022 WL 1568279, at *2 (S.D. Tex. May 18, 2022) (internal quotation omitted). To determine that utility, a district court assesses six factors: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. *See* Fed. R. Civ. P. 26(b)(1).

The party resisting discovery bears the burden of making specific objections and showing that the discovery fails the proportionality analysis set out by the six factors above. *Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 467-68 (N.D. Tex. 2015); *Orchestratehr, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 505 (N.D. Tex. 2016). Once those objections are made, however, the requesting party must, consistent with its "collective responsibility" under Rule 26(b)(1), demonstrate that the discovery it seeks is "proportional to the needs of the case." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment (proportionality is a "collective responsibility" of the parties and the court). The Court then evaluates the dispute under the six-factor framework,

and in the context of search terms, the Court will compare the competing proposals by reference to the marginal value of additional terms. *Edwards*, 2022 WL 1568279, at *3.

### Argument

Governor Abbott's search term demands fail Rule 26(b)(1)'s proportionality calculation for two reasons. First, contrary to the Governor's framing, the Foundation does not dispute whether the search terms referenced in his Motion should be run. Rather, the Foundation takes issue with the unconstrained breadth of those terms. Second, the Governor's demands impose almost $190,000 in estimated costs to review, approximately $100,000 of which could be removed by utilizing the Foundation's Proposal. Reviewing and producing 8 years of documents strains the Foundation's resources, and the burden and expense of producing almost a decade worth of documents outweigh any likely benefit. The Governor has failed to demonstrate why 8 years of documents, rather than the 3 years (the Proposal made on May 15) or 4 years (additional proposal made on May 22) offered by the Foundation, meet the six-factor proportionality test.

1.  **The Foundation's Proposal Includes Searches for Each Individual Search Term that the Governor's Motion to Compel Addresses.**

Governor Abbott's Motion mischaracterizes the parties' dispute as one over relevance by listing a host of terms that he contends are "highly likely to contain relevant documents." Mot. at 5. But the Foundation's proposed edits address only high-volume terms that drove hit counts into the hundreds of thousands, rather than any of the terms that the Governor discusses in his Motion. In other words, the Foundation's proposal merely shrinks existing terms, rather than eliminating any terms altogether. Critically, none of the terms the Governor has highlighted as highly relevant are even referenced in the Foundation's narrowing proposed edits. Instead, the Foundation proposes the following targeted modifications to the high-volume terms responsible for disproportionate hit counts:

- **Apply a "within 5 words" proximity limiter to the Governor's "Flood" and "Ismail" searches:** The Governor's terms currently search "Flood" AND several terms as well as "Ismail" AND several terms. However, *"flood"* is a common English word that, when run without a proximity limiter, captures every document referencing flood-related events including, for example, weather reports, infrastructure communications, and unrelated metaphorical uses. "Ismail" is a common given and last name. Replacing the "AND" in both searches with the "within 5 words" proximity limiter retains the terms but excludes the off-topic uses that drove the original hit volume.

- **Run the Governor's "Martyr*" term within 5 words of (attack OR terror* OR success OR support OR oppress* OR /.*coloniz.*/ OR intifada OR occup* OR free* OR akbar OR praise OR jihad):** The standalone search of "Martyr*" captures every document using any variant of the word in any context. The proximity-and-Boolean construction retains the term but limits it to those documents and contexts most likely to be probative of the allegations relevant to the Governor's Proclamation.

- **Run the Attorney General's "Jihad" term within 5 words of (support OR contrib* OR financ* OR donat* OR fund*):** The standalone search of "Jihad" captures every reference, including theological, historical, and academic discussions that are not within the scope of the Court's order on preliminary-injunction discovery. The financial-context Boolean retains the term while limiting it to the context relevant to the Attorney General's RFPs.

- **Apply a January 1, 2023 – December 31, 2025 date range across all searches, with three exceptions for "Martyr*," "Flood," and "break! the siege" terms:** The narrowed date range targets the period in which the conduct potentially relevant to the Proclamation occurred. The three excepted terms run against an expanded date range because they are most likely to surface relevant documents from earlier periods.

Each of these modifications retains the substantive scope of the Governor's search terms while reducing the disproportionate volume and cost of discovery.  In a final attempt to resolve this matter, the Foundation also proposed simply limiting the date range to four years (and keeping everything else about Defendants' most recent proposals the same) for all searches.

2. **The Governor's Demand Imposes Significant Costs on a Non-Party for Documents That Provide no Marginal Benefit over Those the Foundation Has Already Agreed to Produce.**

Governor Abbott's Motion understates the costs that would be incurred by the Foundation in utilizing his search terms. Critically, the Governor's Motion ignores the 10,000 documents that the Foundation would still be required to review due to Attorney General Paxton's search terms.

Thus, the total number of documents that the Foundation would have to review is almost 35,000, the cost of which would be at least $189,500 for the full review. Halepota Dec. at ¶ 7. This cost, and its associated search terms, are disproportionate to the needs of the case because they provide no marginal benefit when compared with those included in the Foundation's Proposal. To reiterate, none of the terms that the Governor discussed as relevant in its Motion are removed in the Foundation's May 15 Proposal or follow-up offer made on May 22.[3] Thus, the dispute before the Court is about burden and proportionality rather than relevance.

In an effort to reframe the proportionality analysis, the Governor leans on prior efforts at narrowing the scope of discovery. However, that history does not establish proportionality, which is measured against the needs of the case rather than by comparing the requesting party's current demands with its previously abandoned demands. This distinction is essential, because otherwise a party could establish proportionality by anchoring with an indefensibly maximalist demand and then use any subsequent concessions as evidence of good faith. The Governor's discovery negotiations reflect exactly this tactic. He has abandoned two untenable discovery demands that resulted in hit counts of nearly a million, and costs of over $1 million, and now argues that *this* demand—still totaling at least $189,000—must be proportional simply because it is smaller than the previous demand. But that is not how Rule 26(b) operates.

Rule 26(b) imposes a "collective responsibility" on both parties to "consider[] proportionality…[when] resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee's

---

[3] The Foundation's proposed January 1, 2023 – December 31, 2025, date range applies across the narrowed search terms, including the terms the Governor highlights in his Motion. The date range thus reduces the hit volume for those terms below what an 8-year run would produce. The Governor's Motion does not address the date range or explain why documents predating January 2023 are necessary to discovery focused on the Governor's Proclamation issued on November 18, 2025.

note to 2015 amendment. Further, courts have long recognized that "at some point, discovery yields only diminishing returns and increasing expenses." *Updike v. Clackamas Cnty.*, No. 3:15-cv-00723-SI, 2016 WL 111424, at *1 (D. Or. Jan. 11, 2016). Yet, that is precisely what the Governor demands here: discovery that will yield diminishing returns, as evidenced by the fact that the Proposal runs every one of his requested search terms.

Applying Rule 26(b)(1) confirms that the Governor's search terms are not proportional to the needs of the case. The Governor's Motion downplays nearly $190,000 of estimated discovery costs. But the Foundation is not a state government, nor does it have continuous streams of revenue, nor may the speculative prospect of donations be used as evidence that these significant costs are nothing.[4] And imposing $189,500 in non-party production costs in service of preliminary-injunction discovery in a case in which the Foundation has no claim or defense, is not the kind of allocation the Rule contemplates.[5] This is not a case for money damages—the actual Plaintiffs in the case are seeking only injunctive and declaratory relief.

---

[4] The Governor extrapolates that the Foundation will benefit from this litigation based on an internal fundraising email produced by Plaintiffs. In concluding that such potential fundraising would defray the significant costs of discovery, the Governor misconstrues both the record and the rule. Speculative donations are not "resources" within the meaning of Rule 26(b)(1). Thus, this argument is irrelevant to the proportionality analysis before the Court.

[5] The Court held open the question of cost allocation at the April 22 hearing and indicated that cost-shifting may become warranted as the volume of production grows. Tr. of Apr. 22, 2026 Hr'g at 34:18-22 ("the more documents they are than their argument that costs should be imposed be comfortable and reasonable"); *see also id.* at 37:20-25. If the Court declines to adopt the Foundation's proposal and instead requires production of the additional 21,000 documents the Governor demands, it should shift the costs of that additional production to the State. Federal Rule of Civil Procedure 26(c)(1)(B) authorizes the Court to issue an order "specifying terms, including . . . the allocation of expenses, for the disclosure or discovery." Cost-allocation under Rule 26(c) is particularly appropriate where, as here, the substance of the production burden falls on a non-party. The Governor has characterized the costs of his propounded discovery as unburdensome. Mot. at 8. Thus, if the State is serious and sincere about obtaining the additional discovery, with a budget astronomically larger than that of the Foundation, it should bear the resulting costs of discovery without difficulty.

The Foundation's Proposal, by contrast, would require review of approximately 14,000 documents, which would still cost the Foundation at least $89,618.[6] This results in a difference of approximately $100,000 to the Foundation between the two proposals. The Governor must demonstrate how the marginal benefit of the additional 4-years' worth of propounded discovery is "proportional to the needs of the case." Fed. R. Civ. P. 26. He does not do so in his Motion, wherein he instead argues only the relevance of terms. The Court has already instructed Governor Abbott on this point, telling counsel at the April 22 hearing that it would "look much more favorably on you if it's clear to me you're trying to find a way to focus on the documents that you really would like to have." Tr. of Apr. 22, 2026 Hr'g at 37:15-18. The Governor's Motion failed to do that. Instead, it identifies terms that would be covered by the still voluminous number of 14,000 documents that the Foundation has already agreed to review and produce. Thus, the marginal cost of the Governor's demand is significant while the marginal benefit is undemonstrated.

**3.  The Court should provide a reasonable time for the completion of the production.**

Governor Abbott proposes that the Foundation be required to produce almost 35,000 documents, going through first and second tier reviews and quality-check privilege review, within the next two weeks. That is patently unreasonable. Conducting the first-level review at approximately 45 documents an hour, it would take 5 people 40 hours a week for almost 4 weeks to complete the initial review. The second review, estimated to be conducted of 35% of the documents (11,953 documents), would take 5 people 53 hours to conduct. For the final, quality-check privilege review, of approximately 5% of the total documents (1,708 documents), it will take one person an entire 40-hour work week to complete. In sum, with 5 people working full-time on the project, it would take over 6 weeks to conduct all levels of review for Defendants' current

---

[6] Based on the same review rates in the attached declaration.

proposals. Therefore, the Foundation requests at least 6 weeks to conduct such reviews if the Motion is granted.

## **Conclusion**

For the foregoing reasons, the Foundation respectfully requests that the Court deny the Governor's Motion and adopt the Foundation's Proposal. The Foundation proposes June 22 as the production date for any documents pursuant to the May 15 Proposal, and July 10 if the Motion is granted. The Foundation does not oppose an adjustment of the briefing schedule to accommodate the production timeline that the Court orders. Additionally, if the Court grants the Motion in whole or in part, the Foundation respectfully requests that the costs of any additional production be allocated to the State for the reasons set forth in footnote 4.

Dated: May 22, 2026

Respectfully submitted,

*/s/ Shahmeer Halepota*
John Zavitsanos
State Bar No. 22251650
jzavitsanos@azalaw.com
Shahmeer Halepota
State Bar No. 24109968
shalepota@azalaw.com
Nicholas Petree
State Bar No. 24083657
npetree@azalaw.com
**AHMAD, ZAVITSANOS & MENSING, PLLC**
1221 McKinney St., Suite 2500
Houston, Texas 77010
Telephone: 713-600-4904 | Fax: 713-655-0062

-and-

Mimi Marziani
State Bar No. 24091906
mmarziani@msgpllc.com
Rebecca (Beth) Stevens
State Bar No. 24065381
bstevens@msgpllc.com
Joaquin Gonzalez
State Bar No. 24109935
jgonzalez@msgpllc.com
**MARZIANI, STEVENS & GONZALEZ PLLC**
500 W. 2nd Street, Suite 1900
Austin, TX 78701
Tel: (210) 343-5604

**ATTORNEYS FOR NON-PARTY CAIR FOUNDATION, INC.**

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served on all counsel of record pursuant to the Court's CM/ECF system on May 22, 2026.

*/s/ Shahmeer Halepota*
Shahmeer Halepota

12