**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| COUNCIL ON AMERICAN-ISLAMIC RELATIONS TEXAS DALLAS FORT WORTH, COUNCIL ON AMERICAN-ISLAMIC RELATIONS AUSTIN TEXAS, and COUNCIL ON AMERICAN-ISLAMIC RELATIONS TEXAS, <br><br> *Plaintiffs,* <br><br> v. <br><br> GOVERNOR GREG ABBOTT, in his official capacity, and ATTORNEY GENERAL KEN PAXTON, in his official capacity, <br><br> *Defendants.* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  Case No. 1:25-cv-01878-ADA |

**NON-PARTY CAIR FOUNDATION, INC.'S RESPONSE TO DEFENDANT
GOVERNOR ABBOTT'S MOTION TO COMPEL**

1

**INTRODUCTION**

The Governor's Motion (ECF No. 76) rests on a fundamentally flawed premise and likely could have been avoided had he followed the Federal Rules of Civil Procedure's requirement to confer in good faith prior to seeking relief on discovery matters. *See* Fed. R. Civ. P. 37(a)(1).

The Court's May 27 Order directed Nonparty CAIR-Foundation, Inc. (the "Foundation") "to produce documents that contain the terms listed in Exhibit A to Governor Abbott's motion *and are responsive to Abbott RFPs 8-12 or 14*." ECF No. 75 at 1 (emphasis added). It did not order the Foundation to produce every document that contains a term on the Governor's search-term list with no regard to responsiveness. The Foundation incurred the expense to review every document containing a hit on the Governor's terms. It then produced the documents that were responsive and withheld the documents that were not. That is what the Order required.

Now, the Governor seeks production of more than 23,000 documents without regard for responsiveness or privilege. But the Governor made no attempt to meaningfully confer about his Motion prior to filing it. Had he conferred, he might have learned why any particular term yielded few responsive documents. For example, he may have realized that a request for all "communications with individuals employed by the Washington Trust Foundation" yielded no responsive documents because there are no individuals employed by the Washington Trust Foundation. A raw hit count is not evidence that responsive documents were withheld. Nor is a movant's speculative disbelief grounds to compel. The relief the Governor seeks ignores the cornerstone of discovery that it must be "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The Motion should be denied.

**BACKGROUND**

The disputed requests are the Governor's search-term requests, RFPs 8 through 12 and 14.

The Foundation objected that these requests were overbroad and unduly burdensome. *See* ECF No. 55 (CAIR Foundation's Motion for Protective Order). The Court subsequently held a hearing on April 22, 2026, at which it made clear that a large hit count is a sign that terms are too broad, not a measure of how many documents must be produced. Told that one set of terms returned 130,000 hits, the Court responded that "if they got 130,000 documents that they're not narrow enough." Apr. 22, 2026 Hr'g Tr. at 34. The Court pressed both Defendants to narrow their terms and compared a sweeping term to a demand for every document from Microsoft mentioning "Outlook," an approach which the Court said "won't work." *Id*. at 35.

To advance the dispute, the Court directed the Foundation to produce a term hit count. ECF No. 64 at 4. After the hit report issued, the parties negotiated and the Governor narrowed his terms, though ultimately the parties still disagreed on certain parameters. The Court then ordered the Foundation "to produce documents that contain the terms listed in [] Governor Abbott's motion *and are responsive to Abbott RFPs 8-12 or 14*." ECF No. 75 at 1 (emphasis added).

In the 28 days between the Court's Order on May 27 and the date of the Foundation's last production on June 24, the Foundation reviewed 28,636 documents for responsiveness to both Defendants requests. The documents were selected for review either because they hit on the search terms Defendants provided or they hit on the 156 additional search terms the Foundation selected to locate responsive documents. For emails that included search terms, inclusive (as opposed to non-inclusive) email threads were reviewed to increase efficiency and minimize review of redundant material.

The Foundation reviewed these documents through a three-step process: First, a first-level review of the documents was conducted by the undersigned Foundation counsel overseeing contract review attorneys. Second, Foundation counsel conducted a second-level quality control

review of almost 30% (8,072 documents) of all documents reviewed. Third, Foundation counsel conducted a third-level privilege log review, which encompassed documents that had been coded for withholding, redactions, or further review.

In total, the commercial vendor contract review attorneys spent 743 hours and 11 minutes on first-level review, which included document review, the vendor's own quality-control process, and review management. The undersigned Foundation counsel spent more than 330 additional hours securing the vendor for first-level review, coordinating the various review projects, drafting protocols for and training reviewers, first-level review, second-level quality control review, third-level privilege log review, discussions with the client and among Foundation counsel concerning document collection, review, and production, and preparing a privilege log.

By June 17, the Foundation had completed its production of documents responsive to Governor Abbott's RFPs except for those subject to the third-level privilege log review. By June 24, the Foundation had completed its third-level privilege log review and produced (1) its privilege log, (2) documents which were determined, after additional privilege review, to not be privileged, and (3) completed its production of over 1,500 documents responsive to Attorney General Paxton's RFPs. On June 18, the Governor's counsel sent two emails asking whether the production was complete. Mot. Exs. B, C. The Foundation confirmed that it was. Four days later, without any conference about the substance of the production, the Governor filed the Motion.

ARGUMENT

**I.      The Governor did not confer in good faith before filing.**

Federal Rule of Civil Procedure 37(a)(1) "requires a party moving for an order compelling disclosure or discovery to 'include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to

4

obtain it without court action.'" *Anzures v. Prologis Texas I LLC*, 300 F.R.D. 314, 315 (W.D. Tex. 2012) (holding that a summary statement that the parties conferred was insufficient to meet the good-faith conferral certificate requirement). The conferral language "used in Rule 37 is 'a simple requirement and should be utilized.'" *Id.* (quoting *Ross v. Citifinancial, Inc.*, 203 F.R.D. 239, 240 (S.D. Miss. 2001)). This Court's Local Rules impose similar requirements and authorize the Court to deny a motion unless the movant has "conferred in a good-faith attempt to resolve the matter by agreement . . . ." W.D. Tex. Loc. R. CV-7(g).

The Governor's entire pre-filing effort was two emails on June 18 asking whether the production was complete. Mot. Exs. B, C. The Governor did not raise any of the specific arguments he now contends are evidence of non-responsiveness. He did not ask why there were limited documents related to particular search terms. He instead asked one yes-or-no question as to the completeness of production and then went to court.

That is not good-faith conferral. Good faith requires an honest effort to understand and narrow the dispute before seeking the Court's help. *See Anzures*, 300 F.R.D. at 315. Even when an opposing party has "pointed out serious flaws in discovery responses to opposing counsel" through multiple emails, this is insufficient to constitute good-faith conferral. *Id.*; *see also Compass Bank v. Shamgochian*, 287 F.R.D. 397, 400 (S.D. Tex. 2012) (holding a "single letter unilaterally identifying flaws in Defendant's discovery responses and setting an arbitrary response deadline" was not good faith conferral). Had the Governor conferred in good-faith, he may have understood why his search terms yielded so many hits but so few responsive documents. The lack of a good-faith conferral certificate is ground alone to deny the Motion. *See, e.g.*, *Greer v. Bramhall*, 77 F. App'x 254, 255 (5th Cir. 2003); *Anzures*, 300 F.R.D. at 316.

5

## II.     The Foundation diligently complied with the Order.

The Governor's underlying premise that a discrepancy between search-term hits and produced documents evidences non-compliance is misguided. "[T]he fact that a party may disbelieve or disagree with a response to a discovery request . . . is not a recognized ground for compelling discovery, absent some indication beyond mere suspicion that the response is incomplete or incorrect." *VeroBlue Farms USA Inc. v. Wulf*, 345 F.R.D. 406, 420 (N.D. Tex. 2021) (quoting *Heller v. City of Dallas*, 303 F.R.D. 466, 486 (N.D. Tex. 2014)). A "mere belief, without any evidence, that a party has not produced documents . . . in its possession, is insufficient to support a motion to compel." *Id.* (internal citation and quotation marks omitted).

The entire discovery process is premised on the responding party setting in place protocols to search for responsive information. It is not the requesting party or the court's "role to dictate how a party should search for relevant information absent a showing that the party has abdicated its responsibility," because "a responding party is best situated to preserve, search, and produce its own [electronically stored information]." *Id.* (quoting *Moore v. Westgate Resorts*, No. 3:18-CV-410-DCLC-HBG, 2020 WL 113352, at *12 (E.D. Tenn. Jan. 9, 2020)). After a discovery response, "there should be no discovery on discovery, absent an agreement between the parties, or specific, tangible, evidence-based indicia (versus general allegations of deficiencies or mere 'speculation') of a material failure by the responding party to meet its obligations. *Salzgitter Mannesmann Int'l (USA) Inc. v. Sun Steel Co. LLC*, No. 3:22-CV-00030, 2022 WL 3041134, at *2 (S.D. Tex. Aug. 2, 2022) (quoting *The Sedona Principles, Third Edition*, 19 Sedona Conf. J. 1, 123 (2018)). Because the Foundation performed a diligent search for responsive documents and the Governor has no "specific, tangible, evidence-based indicia (versus general allegations of deficiencies or mere 'speculation') of a material failure," the Motion should be denied. *Id.*

A.      **The Order required responsive documents, not every hit on a search term.**

The May 27 Order directed the Foundation to produce documents that "are responsive to Abbott RFPs 8-12 [or] 14." ECF No. 75 at 1. A search term is only a tool for finding documents that might be responsive. It is not a definition of what is responsive.

Defendants made abundantly clear that their discovery "seeks materials regarding CAIR's structure and connections with foreign terrorists. . . . And the Governor's requests are tailored to obtain that discovery." Ex. 1 (April 8, 2026 Email from J. Ramer to S. Dhanji et al.). Rule 26's relevancy standard requires as much, and this Court specifically recognized that the requests needed to be tied to the Governor's purported defense. *See* Jan. 26 Hr'g Tr. 26:16-27:1 (the Court advising it is allowing the Governor discovery on matters that he believes would show that "CAIR is in fact an entity that is -- what was your -- I want to use your word. That terrorist organization?").

The Governor's Motion relies exclusively on arguments related to the Foundation's responses to RFP 8, 11, and 12, which are:

- REQUEST NO. 8: Produce all documents and communications concerning or relating to terrorism, terrorist organizations, or other illegal activities.
- REQUEST NO. 11: Produce all documents and communications concerning CAIR National's relationship with Intuitive Solutions, LLC.
- REQUEST NO. 12: Produce all documents and communications with individuals employed by the Washington Trust Foundation.

As detailed below, the search term list provided by the Governor was overbroad and by-and-large did not identify documents relevant to any claim. The Foundation reviewed the 28,636 identified documents for responsiveness, conducted a second-level quality control review and additional privilege review, and then produced the responsive documents in under a month.

Despite this diligence, the Governor complains that the Foundation won't hand over *all* documents containing search terms regardless of responsiveness or privilege. Ironically, this is analogous to a case the Governor relies on, where the court denied a similar request seeking to

compel all documents identified by search terms. ECF No. 76 at 7 (citing *Chen-Oster v. Goldman, Sachs & Co.*, No. 10 CIV. 6950 AT JCF, 2014 WL 716521, at *1 (S.D.N.Y. Feb. 18, 2014)). The court in *Chen-Oster* held that "[t]here is no evidence that the parties agreed-and [the court] did not order-that documents identified by the search tool would be produced without regard to whether they were relevant as defined by the earlier discovery demands and responses." *Chen-Oster*, 2014 WL 716521, at *1. The Governor's demand here is equally unjustified. *See id.* (noting the search term "protocol did not override the discovery demands and responses").

      **B.**      **The Foundation performed a diligent search and the Governor's search terms identified nonresponsive documents.**

The Motion notes three search-terms for RFP 8 which he believes demonstrate deficiency, as well as the responses to the Washington Trust and Intuitive Solutions, LLC RFPs. But the discrepancy between hit counts and responsive documents the Governor raises was a result of overbroad and poorly crafted requests, not failure to search.

      *i. RFP 8.* The Governor argues that the discrepancy between the number of hits for the terms "Samidoun," "Soleimani," and "Qassam" and the number of documents produced for those terms is "facially implausible" for RFP 8. Mot. at 4-5. RFP 8 seeks documents and communications "concerning or relating to terrorism, terrorist organizations, or other illegal activities." ECF No. 55-3 at 7. As articulated by the Governor, the relevant universe is the Foundation's own "connections with foreign terrorists," Ex. 1 at 3 (April 8, 2026 Email from J. Ramer to S. Dhanji et al.)—that is to say, things that might support "that as [Defendants] are arguing that CAIR is in fact [a] terrorist organization." Jan. 26 Hr'g Tr. 26:16-27:1. The Governor confirms in his Motion that the scope of the discovery was to find documents that "implicat[e] his defense that Plaintiffs are connected to terrorist organizations and engage in and facilitate terrorist activity," as it must be to comply with Rule 26's relevancy requirement. Mot. at 8.

There were many search term hits because the Governor's search terms were poorly conceived and overbroad, and few responsive documents because the Foundation is not a terrorist organization. "Qassam" is a common Arabic name. It produced documents that included, for example, references to place names, such as a mosque in Tampa, Florida called Masjid Al-Qassam where a local non-profit provided COVID tests and held fundraiser for needy families in January and February, 2022. *See, e.g.* Exs. 2, 3. Further, "Qassam," "Soleimani," and "Samidoun" are phrases that appear commonly in global news, so  a substantial portion of the search-term hits were news alerts and third-party list-serve forwarded articles that have no connection to the Foundation. *See, e.g.*, Exs. 4 at 16 (President Trump's 2020 State of the Union Address); 5 at 2 (Email from Mosaic Magazine); 6 at 1 (Email from Dispatches); 7 at 2 (Email from Jewish Breaking News, mentioning a person, "Abu al-Qassam" ); 8  at 2 (Email from Mazin Qumsiyeh); 9 at 3 (Email from The Forward); 10 at 5 (Email from I. Hooper forwarding email from Jewish Onliner). These types of documents are nonresponsive because they in no way "implicat[e the Governor's] defense that Plaintiffs are connected to terrorist organizations and engage in and facilitate terrorist activity." Mot. at 8.

*ii. The Washington Trust Foundation.* RFP 12 seeks "all documents and communications with individuals employed by the Washington Trust Foundation." ECF No. 55-3 at 7. To respond to this request, the Foundation first had to determine who are "individuals employed by the Washington Trust Foundation." The Foundation reviewed *every* IRS Form 990 submitted by the Washington Trust Foundation from 2016 to the present and determined that the entity has no employees. *See, e.g.*, Exs. 11 at 7 (2018 Form 990); 12 at 7 (2020 Form 990); 13 at 7 (2022 Form 990); 14 at 7 (2024 Form 990s).

9

The Governor's search terms, in contrast, asked for documents containing "'Washington' w/3 'trust.'" Just because a document contains the words "Washington" and "trust" near each other does not make it responsive to a request for documents and communications with "individuals *employed by* the Washington Trust Foundation." It is the requesting party's burden to craft their requests, not the producing party's burden to correct poorly designed requests.

***iii. Intuitive Solutions, LLC.*** RFP 11 seeks documents "concerning CAIR National's relationship with Intuitive Solutions, LLC." ECF No. 55-3 at 7. The Governor's search terms were documents that contained "intuitive" and "solution" anywhere in the document, with no proximity limiter. Those are two ordinary English words. A document that uses the word "intuitive" somewhere and the word "solution" (in the singular) anywhere else in its text is not a document about the Foundation's relationship with a particular entity named "Intuitive Solutions, LLC."

This search overwhelmingly produced documents, some hundreds of pages long, that contain the word "intuitive" somewhere and the word "solution" somewhere else. *See, e.g.*, Exs. 15 (Indigo Vision Product Catalog); 16 (114-page Email from Business Wire listing "Headline News"); 17 (Third-party email containing transcript of podcast); 18 (Email from Prerna Raj re "Field service management solution"). For example, a 126-page hardware product catalog that has the word "intuitive" twice, and the word "solution" twenty-six times. *See, e.g.*, Ex. 15 at 102, 110.

The request sought documents "concerning CAIR National's relationship with Intuitive Solutions, LLC," but the corresponding search term was not constructed to elicit such documents. None of the documents collected from the custodians selected by Governor Abbott contained, for example, contracts, invoices, or similar business documents concerning the relationship between the Foundation and the company Intuitive Solutions, LLC.

\* \* \*

10

The ratio of search term hits to responsive documents is the Governor's *only* support for his deficiency claim. However, this argument is "mere suspicion that the response is incomplete or incorrect," not evidence. *VeroBlue Farms USA Inc.*, at 420. The confusion might have been cleared up if the Governor had bothered to confer with the Foundation prior to filing the Motion. A production of 188 responsive documents out of more than 23,000 hits is exactly what one expects when the terms are common names and ordinary words. The Governor chose broad terms *over* the Foundation's objection. The Foundation specifically warned that the Governor's discovery contained "vague requests and untailored search terms." ECF 74-1 (Halepota Decl.). The low responsiveness rate is the predictable result of that choice. It is not proof that documents were withheld.

Finally, no sanctions or costs are warranted. The Foundation complied with the Order, and its position is substantially justified. It is the Governor who filed an opposed motion without the good-faith conference the Rules require. If the Governor had raised any issues concerning specific search terms or requests, the Foundation would have been willing to confer in good faith to see if agreement was possible for additional searches or production. And the Foundation remains willing to conduct any such conferral. The Court should decline to award the Governor any costs.

## CONCLUSION

The Foundation did what the Order required. It reviewed the documents that hit on the Governor's terms and produced the ones that were responsive to the requests. The Governor's belief that more must exist, unsupported by any specific evidence and resting only on speculation based on raw hit counts, is not a ground to compel. The Court should deny the Motion.

Dated: June 29, 2026

Respectfully submitted,

*/s/ Shahmeer Halepota*
John Zavitsanos
State Bar No. 22251650
jzavitsanos@azalaw.com
Shahmeer Halepota
State Bar No. 24109968
shalepota@azalaw.com
Nicholas Petree
State Bar No. 24083657
npetree@azalaw.com
**AHMAD, ZAVITSANOS & MENSING, PLLC**
1221 McKinney St., Suite 2500
Houston, Texas 77010
Telephone: 713-600-4904 | Fax: 713-655-0062

-and-

Mimi Marziani
State Bar No. 24091906
mmarziani@msgpllc.com
Rebecca (Beth) Stevens
State Bar No. 24065381
bstevens@msgpllc.com
Joaquin Gonzalez
State Bar No. 24109935
jgonzalez@msgpllc.com
**MARZIANI, STEVENS & GONZALEZ PLLC**
500 W. 2nd Street, Suite 1900
Austin, TX 78701
Tel: (210) 343-5604

**ATTORNEYS FOR NON-PARTY CAIR FOUNDATION, INC.**

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served on all counsel of record pursuant to the Court's CM/ECF system on June 29, 2026.

*/s/ Shahmeer Halepota*
Shahmeer Halepota

12