**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

COUNCIL ON AMERICAN-ISLAMIC
RELATIONS TEXAS DALLAS FORT
WORTH, COUNCIL ON AMERICAN-
ISLAMIC RELATIONS AUSTIN TEXAS,
and COUNCIL ON AMERICAN-ISLAMIC
RELATIONS TEXAS,

)
)
)
)
)
)
)

     *Plaintiffs*,

)
)

Case No. 1:25-cv-01878-ADA

     v.

)
)

**PUBLIC REDACTED**

GOVERNOR GREG ABBOTT, in his official
capacity, and ATTORNEY GENERAL KEN
PAXTON, in his official capacity,

)
)
)
)
)

     *Defendants.*

)

**REPLY IN SUPPORT OF GOVERNOR ABBOTT'S MOTION TO ENFORCE THIS
COURT'S MAY 27 ORDER AND TO COMPEL PRODUCTION**

**INTRODUCTION**

CAIR National has taken an artificially narrow view of relevance to avoid producing documents responsive to the Governor's RFPs. This tactic is evidenced not only by the data—producing fewer than 1% of documents responsive to the Governor's search terms—but also by CAIR's admission that its responsiveness review deviated from the text of the RFPs. The only reasonable remedy for this is to order CAIR National to produce all documents responsive to the Governor's search terms.[1] Given the degree to which CAIR National's own discovery conduct has contributed to needless delay and discovery motions, the Court should order CAIR National to produce all documents containing the Governor's search terms by July 1, extend Defendants' briefing deadline for the preliminary injunction to July 8, and award costs.

**ARGUMENT**

As explained in his motion to compel, the Governor developed narrowly tailored search terms designed to yield materials that are indisputably relevant. ECF No. 76 at 4-7. These terms included the specific names of terrorists and terrorist entities, *id.* at 4-5, and terms associated with foreign financing, *id.* at 5-6. And although the Governor's search terms resulted in a universe of ▮▮▮ documents, CAIR National produced only ▮ documents as responsive. *Id.* at 1. These facts alone justify granting the Governor's motion to compel.

In response, CAIR National now confirms that its review for responsiveness deviated from the Governor's RFPs. For example, rather than search for documents responsive to the text of RFP 8 (*i.e.*, documents "relating to terrorism, terrorist organizations, or other illegal activities," ECF

---

[1] To the extent CAIR National elected not to review the documents for privilege at the same time it was reviewing documents for responsiveness, the Governor is willing to agree to allow CAIR National to claw back any privileged documents that are inadvertently produced.

No. 55-3 at 7), CAIR National decided for itself whether documents showed its "*own connections* with terrorists." ECF No. 81 at 8 (emphasis added) (internal quotations omitted). CAIR National had no authority to add this artificial—and unverifiable—limitation, and it clearly excludes relevant documents.

Whether or not a document (in CAIR National's own view) demonstrates CAIR's "connections" with terrorists (however CAIR National defines that), CAIR National's candid discussions *about* terrorism and terrorist entities are undoubtedly relevant to CAIR National's proximity to and support of terrorism. *See Deitz v. Performance Food Grp., Inc.*, No. 6:20-cv-00153-ADA-JCM, 2021 WL 2715974, at *3 (W.D. Tex. Apr. 21, 2021) (Albright, J.) (referencing the "low bar for relevance"); *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 606 (W.D. Tex. 2019) (explaining that relevance "is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant" (internal quotations omitted)). At bottom, CAIR claims it "is not a terrorist organization," ECF No. 81 at 9, so it refuses to produce documents that would show otherwise.

Two examples from this case illustrate the point. First, as recounted in the Governor's Proclamation, CAIR National's Executive Director, Nihad Awad, explained that he was "happy to see" the October 7 attacks by Hamas, which he described as "self-defense" and "people breaking the siege" of Israel's purported occupation, and he said that "Israel as an occupying power does not have that right of self-defense." Peter Baker, *White House Disavows U.S. Islamic Group After Leader's Oct. 7 Remarks*, N.Y. TIMES (Dec. 8, 2023), https://perma.cc/ZDB4-4YLB. These comments were so extreme that the Biden Administration "disavowed" CAIR. *Id.* After all, Hamas has been designated a foreign terrorist organization by the U.S. State Department since 1997. Based on CAIR National's self-declared limitation, similar discussions would likely be excluded

2

from CAIR's production because it may not (in CAIR's view) demonstrate "connections with terrorists"—even though such a statement clearly shows CAIR National's support of terrorism. In other words, given its public *support* for Hamas, CAIR National's self-serving "responsiveness review" may well have deemed Hamas not to be a terrorist organization at all.

Similarly, the Holy Land Foundation trial resulted in convictions of individuals found guilty of funneling money to Hamas. *See* ECF No. 71 at 6 (citing *United States v. Holy Land Found. for Relief & Dev.*, No. 3:04-CR-0240-P, 2009 WL 10680203, at *7 (N.D. Tex. July 1, 2009)). Meanwhile, ███████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████ *Id.* (citation omitted). To the extent ████████

███████████████████ in its document review, materials related to *convicted terrorists* would be excluded. Further, the court in that case found "ample evidence" that CAIR conspired with Hamas, *id.* (citation omitted), but CAIR National has maintained that linking it to the Holy Land Foundation litigation is an "Urban Legend," *Dispelling Rumors About CAIR*, CAIR, https://perma.cc/W6MY-T3PC. CAIR thus presumably deemed materials concerning the Holy Land Foundation trial as irrelevant since (by CAIR's own lights) they do not demonstrate CAIR National's "connections" to terrorism. The Court should end this gamesmanship.

CAIR National asserts the Governor's motion is based on "mere suspicion." ECF No. 81 at 6 (internal quotations omitted). Far from it. CAIR National's hit-count report tells the tale: A collection of ██████ of documents were returned from the Governor's search terms—which were *already* narrowly tailored to hit on documents that are indisputably relevant. Yet CAIR National produced just ████ of these documents. The Governor highlighted several examples in his motion: ████████████████████████████████████████████

3

████████████████████████████████████████ ECF No. 76 at 4-5. [2] ████████

███████████████████████████████ *see id.*, there can be no argument that documents and communications containing these terms do not "relat[e] to terrorism, terrorist organizations, or other illegal activities," ECF No. 55-3 at 7 (Governor Abbott's RFP 8).

Indeed, gamesmanship like this is part of the reason the Governor included RFP 10 (which, contrary to CAIR National's assertion, the Governor expressly highlighted in his motion, *see* ECF No. 76 at 1-3). That RFP provided *a list* of individuals and entities and requested all documents and communications "concerning" them. *See* ECF No. 55-3 at 7. And that list specifically includes (among many others) ███████████████████████████████████. *See* ECF No. 71 at 5. This Court ordered production of all documents responsive to RFP 10. *See* ECF No. 75 at 2. And while the search terms ██████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████ Notably, CAIR National omitted entirely the discussion of this RFP in its opposition.

CAIR National selects a handful of documents to illustrate, in its view, the irrelevance of documents containing the Governor's search terms. ECF No. 81 at 9-10. As an initial matter, this curation is beside the point; the Governor acknowledges that *some* of the documents that CAIR National has declined to produce may not be responsive. The problem is that the Governor has no way of knowing which documents among the ████████████ being withheld by CAIR National *are* responsive because CAIR National has not undertaken an adequate review for responsiveness.[3]

---

[2] CAIR National takes issue with the Governor for notifying the Court of CAIR's unexplained "supplemental" production. But the Governor felt obligated to inform the Court because the supplemental production included additional documents referencing ████████ To the extent CAIR National now takes the position this supplemental production pertains only to RFPs by the Attorney General, that simply proves its production to the Governor was incomplete.

[3] While sampling can be used to demonstrate a party's failure to conduct a proper responsiveness review, *e.g.*, *Deal Genius, LLC v. O2COOL, LLC*, 682 F. Supp. 3d 727 (N.D. Ill.

CAIR National's own hedging language is telling. It does not assert that *all* of the documents it declined to produce are documents that "have no connection" to CAIR National. *See* ECF No. 81 at 9. Instead, it says a "substantial portion" or "overwhelming[]" amount were clearly irrelevant. But even if CAIR National is withholding a small "portion" of relevant documents, it has violated the Court's order and failed to produce discovery to which the Governor is entitled. Nor can CAIR National reasonably assert an undue burden: the documents have already been collected and reviewed, and all CAIR National needs to do is hit a few buttons to send them. To the extent it requires extra work on CAIR National's part, that is a result of CAIR National's own doing.

Finally, CAIR National faults the Governor for not engaging in yet another round of "conferral." *See id.* at 4-5. But CAIR National was *subject to an order* from the Court to produce documents responsive to the Governor's RFPs. This was not run-of-the-mill discovery negotiations, and this Court's order was not up for debate. CAIR National's vision of negotiating the substance of the order compelling production only further underscores its lack of respect for the Court's discovery orders. *See* ECF No. 76 at 7 (cataloging the ways CAIR National has refused to faithfully adhere to the Court's orders). Besides, there was nothing to confer about. When the Governor asked whether CAIR National viewed its production as satisfying its obligations under that order, CAIR National confirmed that it did. The only benefit of more "conferral" would be to delay the already drawn-out discovery process even further. It is clear this discovery process will not be timely completed until the Court orders it. The Court should grant the Governor's motion.

---

2023), given the posture here, ordering CAIR National to simply produce all documents containing the search terms is the most efficient remedy. That is the point of the Governor's citation to *Chen-Oster*, which CAIR misconstrues and which observed that this approach "sav[es] resources." ECF No. 76 at 7. And it is plainly supported by *Syntel Sterling Best Shores*, which CAIR simply ignores and which ordered production of "all non-privileged documents … that hit." *Id.* at 7.

Dated: June 30, 2026

TREVOR W. EZELL
*General Counsel*
Tex. State Bar No. 24109849
Caleb Gunnels
Deputy General Counsel
Tex. State Bar No. 24109959
Jason Bramow
Deputy General Counsel
Tex. State Bar No. 24101545
OFFICE OF THE GOVERNOR OF TEXAS
P.O. Box 12428
Austin, TX 78711
Tel: (512) 463-3329
Fax: (512) 463-1932
trevor.ezell@gov.texas.gov

Respectfully submitted,

*/s/ Charles J. Cooper*
Charles J. Cooper (Pro Hac Vice)
John D. Ramer (Pro Hac Vice)
Bradley L. Larson (Pro Hac Vice)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com
jramer@cooperkirk.com
blarson@cooperkirk.com

*Counsel for Defendant Greg Abbott, in his official capacity as Governor of Texas*

6

**CERTIFICATE OF SERVICE**

On June 30, 2026, this document was filed electronically through the Court's CM/ECF system, which automatically serves all counsel of record.

/s/ *Charles J. Cooper*
Charles J. Cooper