**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

COUNCIL ON AMERICAN-ISLAMIC RELATIONS TEXAS DALLAS FORT WORTH, COUNCIL ON AMERICAN-ISLAMIC RELATIONS AUSTIN TEXAS, AND COUNCIL ON AMERICAN-ISLAMIC RELATIONS TEXAS,

PLAINTIFFS,

v.

GOVERNOR GREG ABBOTT, IN HIS OFFICIAL CAPACITY; AND ATTORNEY GENERAL KEN PAXTON, IN HIS OFFICIAL CAPACITY,

DEFENDANTS.

CASE NO. 1:25-cv-01878-ADA

---

**ATTORNEY GENERAL PAXTON'S MOTION FOR JUDGMENT ON THE PLEADINGS**

---

Defendant Ken Paxton, in his official capacity as Attorney General of Texas, moves for judgment on the pleadings as to Counts I and II of Plaintiffs' Amended Complaint. *See* ECF No. 26 at 9–12.

## BACKGROUND

On November 18, 2025, Governor Greg Abbott issued a Proclamation designating the Muslim Brotherhood and Council on American-Islamic Relations ("CAIR") as Foreign Terrorist and Transnational Criminal Organizations under Texas law.[1] Just two days later, Plaintiffs Council on American-Islamic Relations Texas Dallas Fort Worth ("CAIR DFW") and Council on American-Islamic Relations Austin Texas ("CAIR Austin") filed their initial Complaint for Declaratory and Injunctive Relief against Greg Abbott, in his official capacity as Governor of Texas, and Ken Paxton, in his official capacity as Attorney General of Texas, seeking to permanently enjoin the Proclamation's enforcement. ECF No. 1.

---

[1] Because of the Court's familiarity with the background of this case, Attorney General Paxton does not repeat it at length here.

1

After Defendants filed their Original Answers (ECF Nos. 12, 13), Plaintiffs filed their First Amended Complaint, adding Council on American-Islamic Relations Texas ("CAIR Texas") as a plaintiff. ECF No. 26 (hereinafter "Am. Compl."). Plaintiffs' Amended Complaint asserts facial preemption and constitutional due process claims against Attorney General Paxton as the official "charged with enforcing the Proclamation." Am. Compl. ¶ 51. In addition to filing their Amended Complaint, Plaintiffs moved to preliminarily enjoin the policy's enforcement. ECF No. 30.

This Court considered and granted myriad motions to compel Plaintiffs and their parent organization, CAIR National, to produce documents that would help Defendants properly defend against the preliminary injunction motion and make their case regarding the necessity of CAIR National's joinder as an indispensable party. The parties spent more than half a year navigating thorny discovery disputes engendered by Plaintiffs' and CAIR National's dilatory tactics.

Following the Court's most recent order compelling document production, Plaintiffs withdrew their motion for preliminary injunction. ECF No. 96. Plaintiffs' Amended Complaint stands as their sole remaining live pleading, and it should be dismissed. At bottom, Plaintiffs lack standing to sue Attorney General Paxton, and their due process claim against him is not ripe for review. Aside from those jurisdictional defects, Attorney General Paxton is entitled to judgment as a matter of law because Plaintiffs have no cause of action for their preemption claim and the Proclamation is not preempted. Lastly, Plaintiffs' due process claim would warrant dismissal under long-standing precedent, even if it were ripe for review.

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings" under Rule 12(c) of the Federal Rules of Civil Procedure. FED. R. CIV. P. 12 (c). Judgment on the pleadings is appropriate when there are no issues of material fact and "the pleadings show that the moving party is entitled to prevail as a matter of law." *Greenberg v. General Mills Fun Group, Inc.*, 478 F.2d 254, 256 (5th Cir. 1973).

A Rule 12 (c) motion is governed by the same standards as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Hall v. Innovis Data Sols., Inc.*, No. 1:25-CV-01058, 2026 WL 2045017, at *1 (W.D. Tex. July 14, 2026) (Albright, J.). Thus, the "central issue" for a court considering a Rule 12 (c) motion "is whether . . . the complaint states a valid claim for relief." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). A claim for relief is not valid if it is facially implausible, meaning the plaintiff has not pleaded "factual content that allows the court to draw the reasonable inference that the [defendant] is liable for the misconduct alleged." *Hall*, 2026 WL 2045017, at *1 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

And while courts will "accept[] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff[s]," *see Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021) (quoting *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007)), that tenet is not limitless. Courts "are not bound to accept as true . . . legal conclusion[s] couched as . . . factual allegation[s]." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## ARGUMENT

### I.    PLAINTIFFS LACK STANDING TO SUE ATTORNEY GENERAL PAXTON

Organizations have standing if they can satisfy "the same standing test that applies to individuals." *Ass'n of Cmty. Orgs. For Reform Now v. Fowler*, 178 F.3d 350, 356 (5th Cir. 1999). Therefore, to sustain their action against Attorney General Paxton, Plaintiffs must show that they "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of [Attorney General Paxton], and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Because this "case is at the pleading stage," Plaintiffs are obligated to "clearly . . . allege facts demonstrating each element." *Id.* (citation modified). Plaintiffs, however, have not shouldered their burden.

3

### A.    PLAINTIFFS HAVE NOT SUFFERED ANY INJURY IN FACT

Crucially, Plaintiffs' Amended Complaint fails to allege facts demonstrating the "[f]irst and foremost" requirement of Article III standing—injury in fact. *See id.* at 339 (alteration in original). Injury in fact concerns the "'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). An alleged injury is not "concrete" unless it "actually exist[s]." *Id.* And it is not "particularized" unless it "affect[s] the plaintiff in a personal . . . way[.]" *See id.* (quoting *Lujan*, 504 U.S. at 560 n.1). To be "imminent," an alleged injury must be "certainly impending." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013) (quoting *Lujan*, 504 U.S. at 565 n.2). "Allegations of possible future injury" do not suffice. *Whitmore v. Arkansas,* 495 U.S. 149, 158 (1990).

Nothing in Plaintiffs' Amended Complaint suggests they have suffered a "concrete" or "imminent" injury arising from Attorney General Paxton's conduct. As an initial matter, Plaintiffs do not identify any real property that they were "prohibited from purchasing or acquiring," nor do they purport to have ever incurred "penalties under Chapter 5 of the Texas Property Code" because of the Proclamation. Am. Compl. ¶ 29. Indeed, they have not demonstrated any impending plans to purchase or otherwise acquire real property in Texas whatsoever.

Supposedly "[a]t least one Plaintiff currently maintains a property interest in Texas that is directly affected by the Proclamation's restrictions." *Id.* ¶ 49 (emphasis added). But that "conclusory allegation" does not "specify any facts giving rise to a reasonable inference that" CAIR's designation as a Transnational Criminal Organization directly harms Plaintiffs' property interests. *See Hurd v. BAC Home Loans Servicing, LP,* 880 F. Supp. 2d 747, 768–69 (N.D. Tex. 2012), *report & recommendation adopted by* 880 F. Supp. 2d 747 (N.D. Tex. 2012).

Chapter 5 of the Texas Property Code prohibits entities from "purchas[ing] or otherwise acquir[ing] an interest in real property in this state" after they are designated as a Transnational Criminal Organization, which means the Proclamation does not adversely affect Plaintiffs' existing property interests, in any event. *See* TEX. PROP. CODE § 5.253 (2) (D). Plaintiffs have not alleged

4

future intentions to purchase land or real property in Texas, but even if they had, possible future intentions "to purchase additional property . . . do[] not show a present injury in fact to them." *See Huang v. Paxton,* 2025 WL 3654180, at *9 (W.D. Tex. Dec. 9, 2025) (Albright, J.); *Lujan,* 504 U.S. at 564 (noting "'some day' intentions [] without any description of concrete plans . . . do not support a finding of the 'actual or imminent' injury").

At best, Plaintiffs' standing argument rests on a "speculative chain of possibilities." *Clapper,* 568 U.S. at 414. Under Texas law, the Attorney General must "establish procedures to examine a [designated Transnational Criminal Organization's] purchase or acquisition of an interest in real property [.]" *See* TEX. PROP. CODE § 5.255 (a). He has entirely discretionary authority, however, to determine whether the investigation of a designated transnational for "a possible violation of [the Texas Property Code] is warranted." *Id.* In other words, the Attorney General may not even commence such an investigation if he determines it to be unwarranted. *See id.* § 5.255 (b).

If the Attorney General finds that a Transnational Criminal Organization has unlawfully purchased or otherwise acquired Texas real property, he "may bring an *in rem* action against [Transnational Criminal Organization's] real property" or he "may refer the matter to the appropriate local, state, or federal law enforcement agency." *Id.* § 5.255 (c) (emphasis added).

And the Attorney General's authority to bring civil enforcement actions against entities for violating Chapter 5 of the Texas Property Code is similarly discretionary. *Id.* § 5.259(a). It is ultimately up to a court, not the Attorney General, to determine whether the designated Transnational Criminal Organization should be divested of its acquired interest in real property and held liable for a civil penalty. *Id.* §§ 5.257, 5.259(b).

"[T]he Attorney General is himself in charge of setting procedures for potential prosecution" under Chapter 5, *see Wang v. Paxton*, 161 F. 4th 357, 362 (5th Cir. 2025), yet Plaintiffs' Amended Complaint makes no allegation that Attorney General Paxton has exercised that authority against them. Nor does it accuse Attorney General Paxton of investigating or commencing any in rem proceeding against Plaintiffs pursuant to his discretionary authority.

**5**

All told, Attorney General Paxton could not possibly initiate such enforcement actions against Plaintiffs when none of them have demonstrated any imminent plans to purchase or acquire real property in Texas to begin with. Plaintiffs, lacking any serious claim of unlawful property deprivations, ask this Court to engage in "guesswork as to how independent decisionmakers"—*i.e.*, district court judges—may "exercise their judgment" in potential future litigation. *See Clapper*, 568 U.S. at 413. That theory of standing plainly fails to show how Proclamation's designation exposes Plaintiffs to "certainly impending" harm. *See id.* at 414.

For similar reasons, CAIR's designation as a Foreign Terrorist Organization in Governor Abbott's Proclamation does not confer standing on Plaintiffs, either. Although "great weight is given" to the Governor's pronouncement, it does not subject Plaintiffs to self-executing legal penalties or automatically alter their legal status. *See Moyer v. Peabody*, 212 U.S. 78, 85 (1909). State criminal law alone defines what constitutes a Foreign Terrorist Organization under Texas law. TEX. PENAL CODE § 71.01 (e).

Section 125.064 of the Texas Civil Practice & Remedies Code provides that "[a] district, county, or city attorney, the attorney general, or a resident of the state may" bring a public nuisance action against "[a]ny person who habitually associates with others to engage in gang activity as a member of a [Foreign Terrorist Organization] . . . [or] [a]ny person who owns or is responsible for maintaining a place that is habitually used for engaging in gang activity" by a Foreign Terrorist Organization. TEX. CIV. PRAC. & REM. CODE § 125.064 (a)–(b). Nevertheless, only "[i]f the court finds that" the Foreign Terrorist Organization in fact "constitutes public nuisance," will a defendant be enjoined "from engaging in the gang activities of the . . . foreign terrorist organization[.]" *Id.* § 125.065(a).

Plaintiffs have not alleged any intention to engage in conduct violative of Texas's public nuisance laws. Moreover, "[i]t is just not possible for [them] to prove in advance that the judicial

system will lead to any particular result" as to their legal status.[2] *Clapper*, 568 U.S. at 413–14 (quoting *Whitmore*, 495 U.S. at 159–60). Given Plaintiffs' failure to "clearly show[] an injury-in-fact, . . . none has standing" to sue Attorney General Paxton. *See Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017).

## II.   PLAINTIFFS' DUE PROCESS CLAIM IS NOT RIPE

Standing issues aside, Plaintiffs' due process claim against Attorney General Paxton is not ripe for review. Federal courts' subject matter jurisdiction extends solely to "'cases' and 'controversies.'" *Lower Colo. River Auth. v. Papalote Creek II, L.L.C.,* 858 F.3d 916, 922 (5th Cir. 2017). And ripeness "implicates a court's subject matter jurisdiction[.]" *Urb. Devs. LLC v. City of Jackson,* 468 F.3d 281, 292 (5th Cir. 2006). A claim is not ripe for judicial review when it, as in this case, hinges on "contingent future event that may not occur as anticipated, or . . . may not occur at all." *Id.* (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). The touchstones for ripeness are (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration." *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003).

Plaintiffs' claim of property-interest deprivations without notice or a "meaningful opportunity to be heard," *See* Am. Compl. ¶ 64, rests "atop a mountain of conjecture and speculation," with respect to Attorney General Paxton, *see United Transp. Union v. Foster*, 205 F.3d 851, 858 (5th Cir. 2000). Under the existing facts of this case, it is not yet fit for judicial review.

Again, when the Governor designates an entity as a Transnational Criminal Organization under the Texas Property Code, it does not give the Attorney General carte blanche to seize or otherwise confiscate that organization's real property in Texas.

---

[2] Attorney General Paxton filed a Petition and Application for Temporary and Permanent Injunctions against the Muslim Brotherhood and CAIR in Collin County, Texas, on February 6, 2026—a month after Plaintiffs filed their First Amended Complaint. *Texas v. Muslim Brotherhood*, et al., No. 471-00734-2026 (Tex. 471st Dist. Ct. Feb. 6, 2026). The ongoing state-court action involves a public nuisance claim, among others.

It is well established, however, that "[s]tanding is determined as of the date of the filing of the [operative] complaint[.]" *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 460 (5th Cir. 2005) (compiling cases). Thus, Plaintiffs "cannot rely on events that unfolded after the filing of [their First Amended Complaint] to establish [their] standing [in this case]." *Id.* at 460.

If the Attorney General investigates and determines that a violation has occurred, then he may pursue an *in rem* action against the Transnational Criminal Organization, or he may "refer the matter to the appropriate local, state, or federal law enforcement agency."[3] TEX. PROP. CODE § 5.255 (b), (c). But that chain of events "may not occur at all." *Urb. Devs. LLC*, 468 F.3d at 295. The Attorney General has wholly discretionary authority to bring civil actions against entities that violate the subchapter of the Property Code invoked in the Proclamation. TEX. PROP. CODE § 5.259 (a).

Right now, the Court can merely surmise whether "[P]laintiffs may or may not be" deprived of due process sometime in the future since Attorney General Paxton's discretionary enforcement "process has not yet run its course." *See Monk*, 340 F.3d at 283.

True, "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief." *Thomas v. Union Carbide Agr. Products Co.*, 473 U.S. 568, 581 (1985). But the threatened injury, at the very least, must be "certainly impending." *Id.* Plaintiffs have not alleged any imminent plans to purchase or acquire real property in Texas and thus cannot claim any "certainly impending" deprivation of their property interests. *See id.*

Finally, Plaintiffs will not suffer any substantial hardship if review of their premature due process claim against Attorney General Paxton is withheld at this time. There is no evidence that Attorney General Paxton has "required [them] to engage in, or to refrain from, any conduct" to date. *See Texas v. United States*, 523 U.S. 296, 301 (1998). Accordingly, Plaintiffs' due process claim against him is not ripe.

## III.    ATTORNEY GENERAL PAXTON IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

### A.  PLAINTIFFS LACK A CAUSE OF ACTION FOR THEIR PREEMPTION CLAIM

"The Supremacy Clause is not the source of any federal rights, and certainly does not create a cause of action." *Armstrong v. Exceptional Child Ctr., Inc.,* 575 U.S. 320, 324 (2015) (citation modified). Instead, it simply "creates a rule of decision:  [The Clause] instructs courts what to do when state and federal law clash, but is silent regarding who may enforce federal laws in court,

---

[3] For instance, Plaintiffs would presumably receive a "meaningful opportunity to be heard" during an in rem proceeding under TEX. PROP. CODE § 5.255 (b).

and in what circumstances they may do so." *Id.* at 324–25. "[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Plaintiffs' preemption claim does not implicate a congressionally created right of action and should be dismissed accordingly.

### B.  GOVERNOR ABBOTT'S PROCLAMATION IS NOT PREEMPTED

Plaintiffs argue that the Proclamation's state-level designation and sanctioning of Foreign Terrorist Organizations intrudes on fields fully occupied by federal regulation. Am. Compl. ¶¶ 56–59. In doing so, they invoke field preemption, a form of implied preemption that occurs when states attempt to regulate "in a field that Congress . . . has determined must be regulated by its exclusive governance." *City of El Cenizo v. Texas*, 890 F.3d 164, 176 (5th Cir. 2018).

But the Court should not easily allow their claim of field preemption to upend state policy. *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 796 (5th Cir. 2024) ("Field preemption of state law is disfavored."). Plaintiffs have not shown that Governor Abbott's Proclamation regulates in a field in which Congress has unequivocally "ouste[d] . . . state power[.]" *See De Canas v. Bica,* 424 U.S. 351, 357 (1976). Nor have they proven, despite bringing a facial challenge, that there is "no set of circumstances . . . under which [the Proclamation] would be valid." *SO Apartments, L.L.C. v. City of San Antonio*, 109 F.4th 343, 349 (5th Cir. 2024) (characterizing a facial challenge as "the most difficult challenge to mount successfully").

All preemption cases begin with the presumption that federal law does not supersede States' exercise of their historic police powers without evidence "that [preemption] was the clear and manifest purpose of Congress." *Am. Bev. Ass'n v. Paxton,* 820 F. Supp. 3d 494, 504 (W.D. Tex. 2026) (Albright, J.) (citing *Wyeth v. Levine*, 555 U.S. 555, 565 (2009)). Regardless, Plaintiffs' preemption claim is foreclosed since they failed to demonstrate, based on federal statutory text, that Governor Abbott's Proclamation "upset[s] any purposes and objectives of Congress whatsoever." *See Zyla Life Scis., L.L.C. v. Wells Pharma of Hous., L.L.C.,* 134 F.4th 326, 338 (5th Cir. 2025).

### 1. The Proclamation Does Not Intrude on a Fully Occupied Field

To begin with, Plaintiffs have not demonstrated that the state-level designation and sanctioning of Foreign Terrorist Organizations intrude on fields fully occupied by federal regulation. While "[c]ongressional intent to preempt" a field may be "inferred from the existence of a pervasive regulatory scheme," *see Hodges v. Delta Airlines*, 44 F.3d 334, 335 n.1 (5th Cir. 1995), it takes more than a comprehensive federal regulatory scheme to displace state policies, *see R.J. Reynolds Tobacco Co. v Durham Cnty,* 479 U.S. 130, 149 (1986). The party asserting preemption must identify "an unambiguous congressional mandate" articulating Congress's intent to subsume state law in the relevant field. *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 147–48 (1963).

Plaintiffs' Amended Complaint cites provisions of the Immigration and Naturalization Act ("INA") to advance their theory of preemption. Am. Compl. ¶ 57. But it fails to satisfactorily establish—"by reference to the text [and structure] of the" INA—that Congress had the "clear and manifest purpose" to preempt "state laws empowering state officials to" classify and impose sanctions on terrorist organizations. *See United States v. Texas*, 97 F.4th 268, 317 (5th Cir. 2024) (Oldham, J., dissenting); *see Kansas v. Garcia*, 589 U.S. 191, 208 (2020) ("[A]ll preemption arguments[] must be grounded 'in the text and structure of the statute at issue[.]'").

Even presuming, arguendo, that the INA is "sufficiently comprehensive to meet the [national security] need identified by Congress," it does not follow that "States . . . are barred from identifying additional needs[.]" *See AbbVie, Inc. v. Fitch*, 152 F.4th 635, 645–46 (5th Cir. 2025) (citation modified) (quoting *Hillsborough Cnty. v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 717 (1985)). The Court should construe the federal statute in a manner "that disfavors pre-emption." *Am. Bev. Ass'n*, 820 F. Supp. 3d at 504.

If anything, the INA and Texas's state-level designation scheme regulate in altogether distinct fields. That is because the "state and federal designations . . . regulate[] a different range of conduct, a different category of actors, [and have] . . . a different effect on designated entities." ECF No. 101 at 13; *see id.* at 13–14 (describing those differences).

## 2. THE PROCLAMATION'S ATTENUATED CONNECTION TO "FOREIGN RELATIONS" DOES NOT NECESSITATE FIELD PREEMPTION

Plaintiffs stretch the foreign relations preemption doctrine much further than it can bear.[4] In the "rare cases" involving field preemption, *Kansas*, 589 U.S. at 208, the scope of the relevant field must be narrowly defined, *City of El Cenizo*, 890 F.3d at 177. Thus, "foreign relations" cannot be treated as an all-encompassing field that talismanically satisfies the criteria for preemption. Am. Compl. ¶¶ 55–56; *See Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019) (rejecting preemption premised on "brooding federal interest[s]").

No aspect of Governor Abbott's Proclamation imposes sanctions on foreign nations, interferes with international agreements, or frustrates executive branch policies. *Cf. Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000). And to the extent that the Proclamation impacts foreign relations, its impact is entirely "indirect" and "incidental." *See Zschernig v. Miller*, 389 U.S. 429, 433 (1968) (quoting *Clark v. Allen*, 331 U.S. 503, 517 (1941)); *see Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 419 n.11 (2003).

Additionally, because the Proclamation addresses "matters of health and safety" historically within States' domain, *see Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996), it is not field preempted merely because it might have some incidental effect on foreign relations. *See Garamendi*, 539 U.S. at 419 n.11. The threshold showing for such a state policy to be invalidated is much higher: Plaintiffs must prove it conflicts with federal foreign policy. *Id.*

Neither Governor Abbott's Proclamation nor the state designation and penalty scheme it invokes conflict with federal foreign policy. Plaintiffs do not even raise that argument. States can, and often do, "regulate the same conduct" as the federal government without running afoul of the Supremacy Clause. *Zyla Life Scis.*, 134 F. 4th at 328, 336.

---

[4] Tellingly, the Supreme Court has declined to reaffirm the expansive theory that state actions touching on "matters implicating foreign affairs" are necessarily field preempted since its Cold War-era decision in *Zschernig v. Miller*, 389 U.S. 429 (1968). Julian G. Ku, *Gubernatorial Foreign Policy*, 115 Yale L. J. 2380, 2399-2400 (2006).

### 3.  PLAINTIFFS CANNOT OVERCOME THE PRESUMPTION AGAINST PREEMPTION

"Even in its international relations, the Federal Government must live with the inconvenient fact that it is a Union of independent States, who have their own sovereign powers." *Arizona v. United States*, 567 U.S. 387, 423 (2012) (Scalia, J., concurring in part and dissenting in part). Intrinsic to sovereign power is the prerogative to establish regulations that "will best contribute to the public safety" and "preserve[] peace, tranquility, and concord among the citizens." 1 Emer de Vattel, *The Law of Nations* § 174, at 83 (Joseph Chitty ed., 1844).

Texas, too, has "a legitimate interest in [designating and] punishing" criminal terrorist organizations. *See Zyla Life Scis.*, 134 F. 4th at 333. Given its size and geographical proximity to the US-Mexico border, Texas faces unique security concerns and vulnerabilities.[5] It is no secret that the State and its citizens paid (and still pay) a hefty price for the organized crimes of cartels that flooded its southern borders under the Biden Administration's lackadaisical enforcement of federal immigration policy.[6] Texas has a right to fight back.

State lawmakers, taking note of past crises, responded with legislation to help state officials mitigate security exigencies that could arise in Texas. S.B. 1900 Bill Analysis; S. Rsch. Ctr., Bill Analysis, Tex. S.B. 17, 89th Leg., R.S. (2025) (hereinafter "S.B. 17 Bill Analysis"). They understood that allowing adversarial regimes to lay hold of "key land and natural resources" in Texas could have devastating implications for the State and the nation writ large. S.B. 17 Bill Analysis.

As such, the Proclamation and the state statutes it invokes function to protect people, resources, and real property in Texas from foreign bad actors. Those aims are well aligned with the "power of self-preservation" that the States retained when this Union was formed. *Smith v.*

---

[5] S.B. 1900—one of the statutes cited in the Governor's Proclamation—"defines and adds foreign terrorist organizations to organized crime under state law," and allows for public nuisance actions against state-law designated FTOs, among other things. S. Rsch. Ctr., Bill Analysis, Tex. S.B. 1900, 88th Leg., Reg. Sess., at 1 (2023) [hereinafter "S.B. 1900 Bill Analysis"].  The legislation was designed to combat the security threats and criminal conduct that arise when foreign bad actors, like Mexican cartels, enter the state's borders. *Id.*

[6]  Press Release, Off. of the Tex. Governor, *Governor Abbott Designates Mexican Cartels As Terrorist Organizations* (Sept. 21, 2022), https://tinyurl.com/bdfysjb3.

*Turner*, 48 U.S. (7 How.) 283, 400 (1849).

Plaintiffs' sweeping conception of "foreign relations" does not vitiate Texas's sovereign right to regulate property and property ownership within its own borders. *Dunbar v. Seger-Thomschitz*, 615 F.3d 574, 579 (5th Cir. 2010); In re *Davis*, 170 F.3d 475, 481 (5th Cir. 1999) (en banc). "Questions of title, ownership, and descent of real property are exclusive state interests."[7] Invariably, "[t]he quality and allegiance of those who own, occupy, and use the . . . lands within [the State's] borders . . . affect the safety and power of the State itself." *Terrace v. Thompson*, 263 U.S. 197, 221 (1923). Absent a showing that Governor Abbott's Proclamation either intrudes on a federally occupied field or otherwise conflicts with federal law, Plaintiffs' preemption claim fails.

### C.  PLAINTIFFS' DUE PROCESS CLAIM FAILS EVEN IF IT WERE RIPE

Plaintiffs argue that the Governor's Proclamation itself deprives them of liberty and property interests without due process of law. Am. Compl. ¶ 64. That is not true, but even if it were, it would not be a deprivation of due process by Attorney General Paxton. Plaintiffs do not and could not plausibly allege that Attorney General Paxton issued the Governor's Proclamation.

Moreover, the Proclamation does not unlawfully deprive them of due process. "The Supreme Court long ago established that, when a legislature extinguishes a property interest via legislation that affects a general class of people, the legislative process provides all the process that is due." *McMurtray v. Holladay*, 11 F.3d 499, 504 (5th Cir. 1993) (compiling cases). In enacting statutes to prevent certain foreign adversaries from acquiring property in this state,[8] the Texas Legislature extinguished certain property interests of state-level Transnational Criminal Organizations, which constitute a general class. Because Plaintiffs have already received all the due process they are legally entitled to, their due process claim likewise flounders.

---

[7] James A. Frechter, *Alien Landownership in the United States: A Matter of State Control*, 14 Brook. J. Int'l L. 147, 159 (1988) (compiling cases).

[8] Press Release, Off. of the Tex. Governor, *Governor Abbott Signs Bills Protecting Texans from Foreign Adversaries* (Aug. 26, 2025), https://tinyurl.com/4x5zdajz.

## CONCLUSION

For the foregoing reasons, Attorney General Paxton respectfully requests that this Court grant his motion for judgment on the pleadings.

Date: August 7, 2026

**KEN PAXTON**
Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**ROB FARQUHARSON**
Deputy Attorney General for Legal Strategy

**RYAN G. KERCHER**
Chief, Special Litigation Division

Respectfully submitted.

**DAVID BRYANT**
Senior Special Counsel
Attorney-in-Charge
Texas State Bar No. 03281500

/s/ *Alexia K. Baker*
**ALEXIA K. BAKER**
Assistant Attorney General
Tex. State Bar No. 24149596

**OFFICE OF THE ATTORNEY GENERAL OF TEXAS**
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
david.bryant@oag.texas.gov
alexia.baker@oag.texas.gov

***Counsel for the Defendant Paxton***

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on August 7, 2026, and that all counsel of record were served by CM/ECF.

/s/ *Alexia K. Baker*
**ALEXIA K. BAKER**

14