**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| **COUNCIL ON AMERICAN-ISLAMIC RELATIONS TEXAS DALLAS FORT WORTH**, et al.,<br><br>*Plaintiffs*,<br><br>vs.<br><br>**ABBOTT**, et al.,<br><br>*Defendants*. | CASE No.: 1:25-cv-01878-ADA |

**PLAINTIFFS' OPPOSITION TO**
**DEFENDANT ABBOTT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

## I. INTRODUCTION

Plaintiffs Council on American-Islamic Relations ("CAIR") Texas Dallas Fort Worth, CAIR Austin Texas, and CAIR Texas (together "Plaintiffs") have each operated lawfully in Texas for several years without consequence. *See* First Amended Complaint, ECF No. 26 at ¶¶ 1–3. As Attorney General of Texas from 2002 to 2015, Governor Abbott never criminally or civilly charged any Plaintiff with wrongdoing. Since being elected Governor of Texas in 2014, Governor Abbott went years without sanctioning Plaintiffs for any reason. Yet on July 3, 2025, the Texas Republican Party, of which Greg Abbott is a member, issued its "Resolution Denouncing the Council on American-Islamic Relations (CAIR)," which "call[ed] upon all elected officials in Texas [to] take all appropriate legal and legislative actions to prevent CAIR's ideological infiltration into Texas public life."[1] The Resolution claims that CAIR is "an ideological threat," that Plaintiff CAIR Texas "has actively promoted Sharia-aligned policies in Texas public institutions" by advocating for religious accommodations for American Muslims, and that Plaintiff CAIR Texas "has actively worked to suppress constitutionally protected speech" by drawing attention to Islamophobia directed at American Muslims. *Id.* Shortly afterwards, Governor Abbott, for the first time during his long tenure, declared Plaintiffs foreign terrorist organizations ("FTOs"), transnational criminal organizations ("TCOs"), and an entity the Governor, in his discretion, determined posed a threat to national security. Proclamation 41-4241, ECF No. 26-1. Plaintiffs allege these designations are unlawful because they are preempted by federal authority, violate the Fourteenth Amendment's Due Process Clause, and were issued in bad faith in

---

[1] *Resolution Denouncing the Council on American-Islamic Relations (CAIR)*, TEX. REPUBLICAN PARTY (July 3, 2025), https://texasgop.org/resolution-denouncing-the-council-on-american-islamic-relations-cair/. The Court may take judicial notice of this fact. Fed. R. Evid. 201(b).

retaliation for Plaintiffs' First Amendment-protected advocacy. Am. Compl., ECF No. 26 ¶¶ 52–82.

Governor Abbott's Proclamation continues to cause substantial reputational and property harm to Plaintiffs, and Plaintiffs' claims are redressable by Governor Abbott under *Ex parte Young*. After wasting this Court's time with months of needless discovery disputes involving third parties (*see generally* ECF Nos. 43–87), Governor Abbott finally responds to Plaintiffs' arguments in their Motion for Preliminary Injunction—but only after Plaintiffs withdrew the Motion and requested a Rule 26 Status Conference to proceed to full discovery. Governor Abbott's current motion reveals he never needed any discovery from Plaintiffs to defend against Plaintiffs' claims. Now, after months of calling Plaintiffs FTOs in this Court and in public, Governor Abbott claims his Proclamation has no independent legal effect. Motion, ECF No. 101 at 6, 7. This Court should reject Governor Abbott's gamesmanship in this case. Plaintiffs plead sufficient claims for relief, and Plaintiffs welcome the opportunity to conduct discovery regarding their claims. Plaintiffs request this Court deny Governor Abbott's motion.

## II. <u>FACTS AND PROCEDURAL HISTORY</u>

Plaintiffs are domestic nonprofit organizations operating in Texas. Am. Compl., ECF No. 26 ¶¶ 1–3. On November 18, 2025, Governor Abbott issued Proclamation 41-4241, which purports to designate "CAIR" as both an FTO and a TCO, which Governor Abbott interprets to include the local chapter Plaintiffs. *Id*. ¶¶ 24, 28; ECF No. 26-1. The Proclamation purports to prohibit Plaintiffs from acquiring any interest in real property in Texas. Am. Compl., ECF No. 26 ¶¶ 27, 29–30, 48–49. It also purports to trigger statutory enforcement mechanisms and heightened civil penalties based on Governor Abbott's designations. *Id*. ¶¶ 28, 31. The Proclamation imposes these penalties without any notice, hearing, or opportunity to contest the designation, either before

or after the designation. *Id*. ¶¶ 32–34. Plaintiffs received no notice of the Proclamation prior to its issuance. *Id*. ¶ 36; Abbott Answer, ECF No. 28 ¶¶ 35, 66. Under Texas law, only the Governor may remove the designation. Tex. Prop. Code § 5.254(a)(2)(b).

Plaintiffs filed their Original Complaint on November 20, 2025. ECF No. 1. Defendants filed Answers to the Original Complaint on December 22, 2025. ECF Nos. 12–13. Plaintiffs filed their First Amended Complaint on January 6, 2026, adding CAIR Texas as a Plaintiff. ECF No. 26. Defendants filed their Answers to the First Amended Complaint on January 16, 2026. ECF Nos. 28–29. On January 22, 2026, Plaintiffs filed an Opposed Motion for Preliminary Injunction. ECF No. 30. This Court granted limited discovery to Defendants to respond to Plaintiffs' Motion for Preliminary Injunction. ECF No. 27. After Governor Abbott failed to substantiate his claims against Plaintiffs, he asked this Court to allow him to obtain discovery into CAIR Foundation, Inc., a third party to this case, which this Court granted on March 23, 2026. ECF Nos. 43, 45. Several months passed during which Governor Abbott sought discovery exclusively from CAIR Foundation, not any Plaintiff. *See* ECF No. 55-3 (Abbott's discovery requests to CAIR Foundation); ECF No. 71 (Abbott's motion to compel production from CAIR Foundation); ECF No. 76 (Abbott's second motion to compel production from CAIR Foundation).

As a result, Plaintiffs' Motion for Preliminary Injunction sat unanswered under the presumption that Governor Abbott needed discovery to substantiate the allegations in his November 18, 2025 Proclamation. Tr. of Jan. 7, 2026 Status Conference, ECF No. 27 at 9:14-10:2 (counsel for Governor Abbott representing that he "think[s] there could be substantial discovery in this case given the nature of the claims that the plaintiffs are bringing and given the nature of the defense that we intend to raise" regarding all claims in the Amended Complaint). Tired of waiting, and with an outstanding First Amendment retaliation claim unresolved by the

motion for preliminary injunction, Plaintiffs decided to withdraw their Motion after nearly six months without a response. ECF No. 96. Plaintiffs immediately reached out to request a Rule 26 status conference, as both Defendants have filed their Answers. Instead of proceeding to discovery, Governor Abbott now wishes to avoid facing discovery himself, so he filed a Motion for Judgment on the Pleadings that now asserts his Proclamation "does not *by itself* alter Plaintiffs' legal status." ECF No. 101 at 7 (emphasis original). Plaintiffs now file this opposition in response.

## III. STANDARD OF REVIEW

The standard for dismissal under Federal Rule of Civil Procedure 12(c) is the same as that for dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Rafuse v. Advance Concepts and Techs. Int'l LLC*, No. 6:20-cv-00718, 2026 U.S. Dist. LEXIS 32839, at *6 (W.D. Tex. Feb. 17, 2026) (Albright, J.) (citing *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). A complaint survives a Rule 12(c) motion if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at *6–7. "A court must accept 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Id.* at 7 (citing *Martin K. Eby Const. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

## IV. ARGUMENT

### A. Plaintiffs Possess Standing to Pursue Their Claims

Governor Abbott's Proclamation imposes immediate, self-executing legal and reputational injury on Plaintiffs by (1) purporting to exercise terrorism-designation authority reserved to the federal government, (2) designating Plaintiffs as "proscribed entities" without due process,

restricting their ability acquire any interest in real property in Texas, and (3) penalizing Plaintiffs for their First Amendment-protected advocacy. Am. Compl., ECF No. 26-1 ¶¶ 56–60, 65–68, 79–82. Plaintiffs demonstrate standing by showing "(i) that [they] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). To determine whether an injury is "concrete," "courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* at 424 (citing *Spokeo v. Robins*, 578 U.S. 330, 341 (2016)). These harms include "traditional tangible harms, such as physical harms and monetary harms," as well as "various intangible harms . . . [which] include, for example, reputational harms [and] harms specified by the Constitution itself." *Id.* at 425. Plaintiffs satisfy these requirements.

Governor Abbott admits that he unilaterally designated CAIR as an FTO, a TCO, and a proscribed entity under Texas law. Abbott's Answer, ECF No. 28, at 2; Motion, ECF No. 101 at pp. 6–7. Governor Abbott now claims that his FTO designation does not have the force of law, but rather merely "declares the Governor's legal position." Motion, ECF No. 101 at p. 6. Plaintiffs agree that nothing in the Texas Constitution or Texas Penal Code gives Governor Abbott the authority to "designate" a domestic entity (or any entity) as an FTO under Texas law.[2] Although Governor Abbott finally concedes his lack of authority, he continues to cause reputational harm to

[2] Tex. Penal Code § 71.01(e) (defining "foreign terrorist organization" exclusively as "three or more persons operating as an organization at least partially outside the United States who engage in criminal activity . . . ," but not giving the Governor any designation authority). Further, because Plaintiffs are not foreign, the Governor's authority under the Texas Constitution and Texas Government Code to "call forth the militia . . . to repel invasions" and permit "a military force from another state, territory, or district" to enter Texas has no connection to the Proclamation as it applies to Plaintiffs. TEX. CONST. art. IV, § 7; Tex. Gov't Code § 437.209.

Plaintiffs via his Proclamation. *See* ECF No. 26 ¶¶ 37, 42–46, 48 (Governor Abbott citing his Proclamation as evidence that Plaintiffs as criminal terrorists in communications to federal officials and media).

The Plaintiffs' reputational harms "are classic Article III injuries." *Bost v. Illinois State Bd. of Elections*, 607 U.S. 71, 78, 146 S. Ct. 513, 520, 223 L. Ed. 2d 357 (2026). In *TransUnion*, the Supreme Court held Plaintiffs had standing to sue a credit reporting agency where the agency "provided third parties with credit reports containing OFAC alerts that labeled the class members as potential terrorists, drug traffickers, or serious criminals." *TransUnion*, 594 U.S. at 432. In that case, the Court concluded that even being labeled as a "potential" terrorist was sufficient because it "bears a close relationship to the harm from being labeled a 'terrorist,' [and thus] bears a sufficiently close relationship to the harm from a false and defamatory statement." *Id.* It goes without saying that if being labeled a potential terrorist suffices, then Governor Abbott's labeling Plaintiffs *actual* terrorists and publicizing that label suffices as well.

Further, Governor Abbott does not dispute that his TCO and "proscribed entity" designation "carry the possibility of immediate legal effect by denying Plaintiffs the ability to acquire an interest in real property in Texas." Motion, ECF No. 101 at p. 7. He fails to address how the TCO or proscribed entity designations can properly apply to Plaintiffs, which are domestic entities,[3] but regardless, his designation causes harm to Plaintiffs' property and reputational

[3] Tex. Prop. Code § 5.251(7) (defining "transnational criminal organization" as "two or more persons who are citizens of or domiciled in a designated country; with an identifiable leadership who operate internationally; and who continuously or regularly associate to engage in corruption, . . ."); Tex. Prop. Code § 5.254(a)(2)(A) (allowing "the governor" to "designate a country or a transnational criminal organization or other entity as subject to this subchapter"); Tex. Prop. Code § 5.253 (prohibiting "a company or organization that is . . . designated by the governor under Section 5.254" from "purchas[ing] or acquir[ing] an interest in real property in this state").

interests.[4] As a result of the Governor's designation, Plaintiffs must currently defend against a suit seeking to strip them of their property rights and ability to conduct operations in Texas.[5] Governor Abbott further admits he gave no notice to anyone acting for CAIR prior to issuing the Proclamation, confirming his designation occurred without due process. Abbott's Answer, ECF No. 28 ¶ 66. Plaintiffs face more than the threat of enforcement; Plaintiffs currently face enforcement proceedings in Texas state court without any mechanism to reverse the designations in the Proclamation, even if Governor Abbott now claims he was merely giving his "legal position." *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (holding "an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law" when faced with "threatened enforcement of a law").

The Governor misreads *Huang v. Paxton* and its relationship to Plaintiffs' claims here. In *Huang*, this Court dismissed claims by foreign plaintiffs challenging Texas's prohibition on Chinese nationals from acquiring property because the plaintiffs were noncitizens residing outside the United States and therefore "lack[ed] any standing to assert constitutional rights." *Huang v. Paxton*, No. 1:25-cv-1509, 2025 U.S. Dist. LEXIS 255759, at *8 (W.D. Tex. Dec. 9, 2025)

---

[4] *See* Tex. Prop. Code § 5.252 ("This subchapter does not apply to" (1) an individual who is a citizen or lawful permanent resident of the United States; [or] (2) a company or organization that is owned by or under the control of: (A) one or more individuals described by Subdivision (1); and (B) no individual described by Section 5.253"). Plaintiffs are under the control of United States citizens who do not meet the description of Section 5.253(4).

[5] *See* ECF No. 46-6 at p. 20 (petition in *Texas v. Muslim Brotherhood, et al.*, No. 471-00734-2026 (Tex. Dist. Ct.—Collin Cnty. Feb. 5, 2026), asserting that "Governor Abbott's proclamation prohibits the Muslim Brotherhood and CAIR from purchasing or acquiring land in Texas and authorizes heightened enforcement measures against both organizations and their affiliates operating within Texas"); *id.* at 32 (seeking "declaratory relief that all defendants [including Plaintiffs] are (1) a Foreign Terrorist Organization under Texas Penal Code § 71.01(e); and (2) a Transnational Criminal Organization, pursuant to Texas Property Code § 5.254(a)(2)(A), in accordance with Governor Abbott's Proclamation"). The Court can take judicial notice of these facts. Fed. R. Evid. 201(b).

(Albright, J.) ("There is no injury under the U.S. Constitution to foreign citizens who are not present in the United States."). When Plaintiffs attempted to argue that they intended to arrive in the US to purchase additional property, this Court held that their intention to purchase property was too far into the future, as they would first have to arrive in the United States. *Id.* at *9. In contrast, a noncitizen plaintiff residing within Texas did not have his claims dismissed for lack of standing when he asserted harm to his property interests based on his future intent to renew his leasing agreement. *Id.* at *11–12. The fact that his lease expired in six months was not grounds for this Court to dismiss his complaint for lack of standing, but instead to deny his motion for a preliminary injunction. *Id.* at *12.

Here, Plaintiffs are domestic entities that allege they have a property interest affected by the Proclamation. Am. Compl., ECF No. 26 ¶ 49. This is sufficient at the pleading stage, where "allegations of injury are liberally construed." *Hancock Cnty. Bd. of Sup'rs v. Ruhr*, 487 Fed. Appx. 189, 195 (5th Cir. 2012) (internal quotation marks and citations omitted); *see also Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445, 450 (5th Cir. 2022) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice . . . ."). However, the Governor's arguments are particularly inapt because, due to the preliminary discovery that already occurred, the Governor has actual "documents reflecting real property the named Plaintiffs currently own, lease, or use in Texas." *See* ECF No. 43-2 at 7. Should the Court hold that the pleadings do not identify the property harm with enough specificity, the remedy is granting leave to amend to add that specificity. *See infra* at Part F (requesting alternative relief to amend).

Additionally, Plaintiffs allege harm from the "imposition of heightened legal disabilities within the state," which include currently facing legal actions in state court that seek to enjoin their operations as a direct result of the Governor's Proclamation. *Id.* ¶ 48; ECF No. 46-6. Plaintiffs

demonstrate sufficient concrete, actual, and imminent injury traceable to Governor Abbott's Proclamation that is redressable by declaratory and injunctive relief against Governor Abbott. Plaintiffs, therefore, possess standing to proceed with their claims.

### B. Abbott is a Proper Defendant under *Ex parte Young*

Plaintiffs seek only prospective declaratory and injunctive relief to prevent Defendants' ongoing enforcement, implementation, and reliance on Proclamation 41-4241 as applied to Plaintiffs. Am. Compl., ECF No. 26 at p. 14. Governor Abbott has more than "some enforcement connection" with the Proclamation itself and the unlawful designations, which remain in effect and continue to harm Plaintiffs. *Okpalobi v. Foster*, 244 F.3d 405, 416 (5th Cir. 2001); *see also Healthy Vision Ass'n v. Abbott*, 138 F.4th 385, 398 (5th Cir. 2025) ("We have since elaborated that the state officials must have taken some step to enforce the statute. In deciding how big the step must be, the bare minimum appears to be some scintilla of affirmative action by the state official.") (citations omitted). Plaintiffs' claims against Governor Abbott thus fall within the *Ex parte Young* exception to sovereign immunity permitting suits against state officials for prospective relief to stop ongoing violations of federal law by state executive action. *Ex parte Young*, 209 U.S. 123, 155–56 (1908).

Plaintiffs again agree with Governor Abbott that his "designation" of Plaintiffs as an FTO has no valid legal effect. Motion, ECF No. 101 at pp. 8–9. Despite this fact, however, Governor Abbott continues to represent that his designation is legally in effect and should result in penalties against Plaintiffs without any further need for court enforcement of his "legal position."[6]

---

[6] Motion, ECF No. 101 at p. 6; *see Letter from Greg Abbott, Governor of Tex. to Ken Paxton, Atty Gen. of Tex.*, at 2 (Jan. 28, 2026), https://gov.texas.gov/uploads/files/press/Ken_Paxton_CAIR_Muslim_Brotherhood_Nonprofit_1.28.2026_CCOM_.pdf (discussing Plaintiffs and questioning whether "a group designated as a terrorist organization be allowed nonprofit status in Texas at all").

More importantly, Governor Abbott fails to address that Subchapter H of the Texas Property Code authorizes the Governor to unilaterally remove an entity's ability to "acquire an interest in real property in this state," if he determines it "poses a risk to the national security of the public." Tex. Prop. Code § 5.254(a). The penalty is self-executing—the Governor's designation itself serves as the prohibition on acquiring property interests. Of particular note, a "leasehold interest" acquired by a prohibited entity is "void" under Section 5.255(e). Therefore, by virtue of the designation alone with no further court proceedings, a proscribed entity cannot effectuate (which includes renewal) a lease on real property. Again, to the extent that this Court finds the pleadings insufficiently specific, Plaintiffs would seek leave to amend.

The statute also identifies the Governor as the only office with authority to remove those designations. *Id.* § 5.254(a)(2)(B). The statute does not task the Governor with directing others to act; the Governor makes the designation, the legal consequences take effect with the designation, and only the Governor can undo the designation.[7] *See Mi Familia Vota v. Ogg*, 105 F. 4th 313, 325 (5th Cir. 2024) (holding a state official is sufficiently connected to enforcement when the official has a "particular duty to enforce the statute in question," demonstrates "willingness to exercise that duty," and "through [their] conduct, compels or constrains persons to obey the challenged law").

[7] Tex. Prop. Code § 5.253 ("Notwithstanding any other law, the following may not purchase or otherwise acquire an interest in real property in this state: . . . (2) a company or organization that is . . . (D) designated by the governor under Section 5.254."); Proclamation, ECF No. 26-1 at p. 5 ("I, GREG ABBOTT, Governor of Texas . . . do hereby designate" Plaintiffs as FTOs and Transnational Criminal Organizations "and thereby subject those organizations" to heightened penalties under the Texas Civil Practice and Remedies Code and Texas Property Code); Motion for Temporary Restraining Order, *Texas v. Muslim Brotherhood, et al.*, ECF No. 46-1 at p. 9 ("Because Texas Governor Greg Abbott has specifically declared that the Muslim Brotherhood and the American Chapter are systemically engaged in activities that are unlawful under Chapter 71 of the Texas Penal Code and precluded from owning Texas property via Chapter 5 of the Texas

But for the Governor's designation, done without any due process and in retaliation for Plaintiffs' First Amendment activity, Plaintiffs would not have to defend against the Attorney General's action seeking to enjoin their operations and prohibit their ownership of property. Plaintiffs do not need to rely on the Governor's general duty to enforce the laws to connect Governor Abbott's Proclamation with his specific enforcement of this statute that grants him, and only him, the authority to designate entities as subject to legal penalties. Tex. Prop. Code § 5.254(a)(2)(A); *Mi Familia Vota*, 105 F. 4th at 326 (noting the statutory text "does not need to state the official's duty to enforce it"). Governor Abbott possesses no sovereign immunity with respect to Plaintiffs' claims.

**C. Federal Law Preempts Governor Abbott's "Designations" in the Proclamation**

Plaintiffs allege that Governor Abbott's attempts to designate Plaintiffs as FTOs and TCOs are preempted by federal law because the federal government possesses the exclusive authority to regulate in the field of foreign relations and sanctions on foreign terrorist groups. Am. Compl., ECF No. 26 ¶¶ 55–59.[8] Plaintiffs allege that the federal government, for good reason, possesses the sole ability to determine whether an entity is in fact an FTO. *Id.* ¶ 57; *see Holder v. Humanitarian L. Project*, 561 U.S. 1, 36 (2010) ("Congress and the Executive are uniquely positioned to make principled distinctions between activities that will further terrorist conduct and undermine United States foreign policy, and those that will not."). State governors like Governor Abbott do not have the authority to independently "designate" a domestic entity as an FTO or TCO

Property Code, Texas has explained exactly how it would prevail in preventing the Muslim Brotherhood and the American and Texas Chapters from operating in Texas.").

[8] The Governor argues misrelies on *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, to argue Plaintiffs have no cause of action. Mot. at 10. *Armstrong* turned on the fact that Congress had statutorily limited the courts' traditional equitable powers. *Id.* at 328-29. Here, Plaintiffs have federal question jurisdiction under 28 U.S.C. § 1331. *See, e.g.*, *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 515 (5th Cir. 2017).

and subject them to adverse enforcement actions when the federal government has not done so.[9] *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 378, 380 (2000) (prohibiting enforcement of state law that penalized individuals and conduct that Congress has explicitly excluded from sanctions because "the inconsistency of sanctions here undermines the congressional calibration of force").

In field preemption cases, "Congress' intent to supersede state law altogether may be inferred" because the federal legal scheme "'may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982) (citing *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). First, here, the Proclamation is an impermissible "intrusion by the State into the field of foreign affairs which the Constitution entrusts to the President and the Congress." *Zschernig v. Miller*, 389 U.S. 429, 432 (1968); *see also Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396 (2003). Like the Oregon probate law in *Zschernig*, which allowed state officials to selectively block inheritance by foreign descendants notwithstanding Oregon's traditional authority over inheritance, the Proclamation uses Texas property and nuisance law to make an independent national-security determination about foreign entities, including "designat[ing] a country or a transnational criminal organization or other entity" as incapable of acquiring Texas property interests.

Federal law also occupies the field of designating and sanctioning FTOs and TCOs through a comprehensive and exclusive statutory and regulatory scheme. This scheme is not limited to the

---

[9] Governor Abbott argues Plaintiffs claim state governments "can *never* label entities as terrorist organizations." Motion at p. 10 (emphasis original). Not so. Plaintiffs argue that state governors cannot unilaterally designate domestic organizations as *foreign* and *transnational* organizations and subject them to sanctions in the absence of federal action.

one statute, 8 U.S.C. § 1189, that Governor Abbot focuses on.[10] These statutes include the ability to block property acquisitions across the United States, which definitionally overlaps with blocking property acquisition in Texas. The federal regime therefore leaves no room for alternative state classification or enforcement schemes.

Nor should they, as state governments do not possess the extensive national security intelligence resources of the federal government.[11] The federal government, with its resources and access to the same publicly available facts articulated in Governor Abbott's Proclamation, declines to designate Plaintiffs, or their affiliate, CAIR Foundation, as FTOs and TCOs.[12] Governor Abbott's asserted designation of Plaintiffs as foreign criminal organizations does not incorporate federal law into state law, but instead seeks to usurp the federal government's authority to ascertain and regulate *foreign* threats to *national* security.[13]

---

[10] *See, e.g.*, 8 U.S.C. § 1189 ("Designation of foreign terrorist organizations") (federal statute authorizing the Executive Branch to designate entities as foreign terrorist organizations, mandating procedures for review of the designation, and establishing civil and criminal penalties); 50 U.S.C. §§ 1701, 1702(a) (authorizing the President to declare a national emergency and prohibit foreign nationals from acquiring property interests due to threats to national security); 31 C.F.R. § 590.101, *et seq.* ("Transnational Criminal Organizations Sanctions Regulations") (enforcing President Obama's Executive Order 13,581, "Blocking Property of Transnational Criminal Organizations" and authorizing the Executive Branch to sanction entities as transnational criminal organizations).

[11] *See Holder*, 561 U.S. at 33–36 (recognizing Congressional and Executive expertise in areas of national security).

[12] *Designated Foreign Terrorist Organizations*, U.S. DEP'T OF STATE (last visited Aug. 7, 2026), https://www.state.gov/foreign-terrorist-organizations/; *see Sanctions List Search*, U.S. OFFICE OF FOREIGN ASSETS CONTROL (last visited Aug. 7, 2026), https://sanctionssearch.ofac.treas.gov/ (a search for "Program: TCO" results in 415 results, none of which include Plaintiffs). This Court may take judicial notice of these facts. Fed. R. Evid. 201(b).

[13] *Compare Arizona v. United States*, 567 U.S. 387, 401–02 (2012) (holding the federal government's alien registration regime scheme demonstrated an intent to occupy the field and preclude "every State" from "giv[ing] itself independent authority to prosecute federal registration violations, diminishing the Federal Government's control over enforcement and detracting from the integrated scheme of regulation created by Congress") *with Zyla Life Scis., L.L.C. v. Wells Pharma of Hous., L.L.C.*, 134 F. 4th 326, 336 (5th Cir. 2025) (holding states may regulate the same conduct as the federal government "when state standards mimic federal ones" by directly incorporating federal statutes).

Governor Abbott argues, *inter alia*, that *Crosby* is inapplicable because he asserts that Plaintiffs bring only a field preemption claim. Mot. at 15. However, Plaintiffs allege that the Proclamation "directly conflicts with Congress's exclusive terrorism-designation framework." Am. Compl., ECF No. 26 ¶¶ 59. As the Court recognized in *Crosby*, categories of preemption are not "rigidly distinct." 530 U.S. at 373, n.6. Here, like in *Crosby* though, the State imposes state-level disabilities that could "blunt the consequences" of the federal government's "calibrated" decision-making and undermine its control over foreign-affairs and national-security policy. *Id.* at 364, 378. The state-level prohibition on property acquisition here is directly analogous to the state-level prohibition on contracting with Burmese entities in *Crosby*.

The presumption against preemption has no place here, as unilaterally sanctioning FTOs is not within the State's historic police powers. This Court should ignore Governor Abbott's attempts to characterize the Proclamation as "regulat[ing] public nuisances and public safety." Mot., ECF No. 101, p. 11. The *statutes* under which Governor Abbott purports to designate Plaintiffs as FTOs and TCOs do not even authorize the Governor to "designate" such entities. Governor Abbott concedes this as to FTOs, and TCOs are by definition not domestic. *Supra*, pp. 7–8. By claiming to "designate" Plaintiffs as FTOs and TCOs despite the lack of statutory authority to do so, the Proclamation goes beyond the State's police powers into unconstitutional action.

Finally, Governor Abbott conflates a facial challenge to a statute with Plaintiffs claim that there is no set of circumstances in which *this* Proclamation as to *these* Plaintiffs could be valid. Mot., ECF No. 101, p. 12. Plaintiffs are not challenging the entire FTO and TCO statutes. But because the Governor has no authority to designate Plaintiffs as FTOs or TCOs, there is no possible set of conditions under which *this* Proclamation could be valid, as no court or jury has found that Plaintiffs are either FTOs or TCOs under any Texas law.

### D. The Proclamation Violates Plaintiffs' Due Process Rights

Governor Abbott's Proclamation invokes Subchapter H of the Texas Property Code, which allows him to unilaterally impose immediate and self-executing prohibitions on the acquisition of real property by designated entities. Tex. Prop. Code § 5.253 (prohibiting TCOs and entities designated by the governor from purchasing or acquiring property). The Proclamation subjects Plaintiffs to investigation and suit from Texas state and local attorneys for non-criminal actions such as purchasing property to fundraise for their organization, as US non-profits are permitted to do. *Id.* §§ 5.255, 5.256, 5.259 (authorizing a "civil penalty equal to the greater of: (1) $250,000; or (2) 50 percent of the market value of the interest in real property that is the subject of the violation" for designated companies that attempt to purchase property). The Proclamation authorizes these infringements on Plaintiffs' liberties and deprivations of property rights without providing any notice or opportunity to be heard, in violation of the Fourteenth Amendment.[14] By unilaterally designating Plaintiffs as proscribed entities under Subchapter H, Governor Abbott's Proclamation itself immediately deprives Plaintiffs of the ability to purchase property without any procedural safeguards for redress. *See Fuentes v. Shevin*, 407 U.S. 67, 81–82 (1972) (explaining that the Constitution guarantees a "right to notice and a hearing" prior to the deprivation of a property right, and that "no later hearing can undo the fact that an arbitrary taking subject to procedural due process has already occurred").

Plaintiffs are registered Texas entities and have operated in Texas for decades without any criminal or civil sanction by the state. *See* Am. Compl. ¶¶ 1–3. The Governor cannot credibly allege any threat to public safety posed by Plaintiffs, who continue to operate in Texas despite

[14] *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) (reiterating that the Due Process Clause provides substantive rights to life, liberty, and property, and that due process "is conferred, not by legislative grace, but by constitutional guarantee").

state court proceedings seeking to enjoin all their operations here. *See* Motion for Temporary Restraining Order, ECF No. 46-1. Still, the Governor continues to baselessly assert Plaintiffs are "terrorists" without reference to any terrorist acts committed by Plaintiffs or a court order enforcing the designation. Motion at p. 16-17.

Governor Abbott's claim that "any process is forthcoming" does not suffice to defeat Plaintiffs' Due Process claims because no process exists to challenge the Governor's determination that Plaintiffs are subject to Subchapter H. Tex. Prop. Code § 5.254(a)(2) (granting the governor the sole authority to designate or remove an "other entity" as subject to Subchapter H). Plaintiffs cannot "litigate the designation" because the basis of the designation is solely Governor Abbott's determination that Plaintiffs' acquisition of property "poses a risk to the national security of the public." Motion, ECF No. 101 at p. 16, Tex. Prop. Code § 5.254(a). Even if a court declines to issue an order depriving Plaintiffs of property, nothing requires the court to force the Governor to revoke the designation, and Plaintiffs remain subject to future suit as long as the Governor maintains that Plaintiffs are subject to Subchapter H.

No circumstances existed to justify designating Plaintiffs as proscribed entities under Subchapter H without any notice and opportunity for a formal hearing. As Governor Abbott explains, the Proclamations' allegations "have been in the public domain for years." Motion, ECF No. 101 at p. 17. Specifically, the sole allegations even tangentially related to Plaintiffs have been publicly available since 2009, when Governor Abbott was the Attorney General of Texas. *See* Proclamation, ECF No. 26-1 at p. 2 (referencing convictions in *Holy Land Foundation* case in 2009); *United States v. Holy Land Found.*, No. 3:04-CR-0240, 2009 U.S. Dist. LEXIS 151359, at *15 (N.D. Tex. July 1, 2009) ("The Government has not argued or established any legitimate government interest that warrants publicly identifying CAIR and 245 other individuals and entities

as unindicted co-conspirators."). And the laws upon which Governor Abbott relies have existed since June 9, 2023. Proclamation, ECF No. 26-1 at p. 3 (identifying laws Governor Abbott signed into law on June 9, 2023 and June 20, 2025). Despite awareness of these facts, Texas took no step to criminally charge Plaintiffs as FTOs, or civilly charge Plaintiffs as TCOs, until November of 2025, when Governor Abbott unilaterally issued his Proclamation. *Id.* at. 1, 3.

Unlike in the cases cited by Governor Abbott, he cannot in good faith argue that any emergency required the deprivation of Plaintiffs' due process rights without notice.[15] And his state-level designation is not entitled to any deference under *Holder*.[16] Without a sufficient emergency to justify depriving Plaintiffs of their legal rights before providing due process, state governments must provide some sort of hearing incorporating notice and an opportunity to respond before revoking a protected due process right.[17] But even if there was an emergency, the Proclamation

---

[15] *See Pinkston v. Kuiper*, 67 F. 4th 237, 242–43 (5th Cir. 2023) (prisoner forcibly medicated after displaying violent behavior towards staff received sufficient process when he was injected "only after multiple rounds of verbal persuasion failed, and only after a licensed medical professional determined that medication was appropriate"); *Caine v. Hardy*, 943 F.2d 1406, 1407 (5th Cir. 1991) (anesthesiologist suspended after death of patient received sufficient process when the bylaws authorized a formal hearing following the suspension).

[16] *Holder*, 561 U.S. at 9, 33 (holding "the authority to designate an entity a 'foreign terrorist organization' rests with the Secretary of State and the "evaluation of the facts" regarding support to foreign terror organizations "by the Executive, like Congress's assessment, is entitled to deference"); *CAIR-Foundation, Inc. v. DeSantis*, 822 F. Supp. 3d 1263, 1277 (N.D. Fla. 2026) ("Defendant is wrong to suggest that his independent decision to call Plaintiff a 'terrorist organization' in an Executive Order is entitled to the same deference afforded to the United States Secretary of State's designation in *Holder*.").

[17] *Shevin*, 407 U.S. at 82; *see also Dearman v. Stone Cnty. Sch. Dist.*, 832 F.3d 577, 583 (5th Cir. 2016) (holding plaintiff received adequate due process protections when she was notified that defendant "considered ending her employment" at the end of the year, "was given an opportunity to respond" to defendant's reasons for her termination, "appeared before [defendant] and defended herself from the accusations against her," and "submitted a written rebuttal to the allegations"); *Schaper v. Huntsville*, 813 F.2d 709, 714 (5th Cir. 1987) (5th Cir. 1987) (holding plaintiff received sufficient due process protections because he was "informed . . . of the proposed termination, [given] a list of reasons for the decision, as well as an opportunity to object to the decision," and "received a hearing" prior to his discharge).

and Subchapter H provide no sufficient post-deprivation due process remedy. *See Caine*, 943 at 1412 ("[T]he necessity of quick action by the State justifies a summary deprivation ***followed by an adequate post-deprivation remedy***.") (citations omitted) (emphasis added). Governor Abbott unambiguously failed to provide Plaintiffs with any due process under the Fourteenth Amendment.

**E. The Proclamation Retaliates Against Plaintiffs' Advocacy in Texas**

This Court must accept Plaintiffs' well-plead allegations as true, not the Governor's attempts to recharacterize his own documented behavior. *Rafuse*, 2026 U.S. Dist. LEXIS 32839, at *7. Plaintiffs allege that the Governor's Proclamation is unrelated to any credible claim that Plaintiffs are, in fact, FTOs and TCOs, or even a plausible threat to national security, but is instead retaliation for Plaintiffs' and CAIR Foundation's advocacy for American Muslims in Texas. Am. Compl., ECF No. 26-1 ¶¶ 13–16, 74, 76, 79–82. The fact that each Plaintiff has operated within Texas for eight to seventeen years, all while Governor Abbott was either Attorney General or Governor, undermines any claim that Governor Abbott issued the Proclamation in 2025 to address any serious threat. *Id.* ¶¶ 1–3, 21–22. The Proclamation impedes Plaintiffs' ability to conduct their advocacy work by penalizing and criminalizing lawful activities such as fundraising, soliciting membership in the organization, and purchasing property to conduct operations. Tex. Penal Code § 71.022; Tex. Prop. Code § 5.254. In addition, the Proclamation causes reputational injury, which impedes Plaintiffs' advocacy work, because it claims to immediately alter Plaintiffs' legal status.[18]

While Governor Abbott claims Plaintiffs do not cite any specific "speech," Plaintiffs

---

[18] *See, e.g.*, Greg Abbott (@GregAbbott_tx), X (Mar. 5, 2026, 1:30 PM), https://x.com/GregAbbott_TX/status/2029640636899418533 (penalizing Plaintiffs' abilities to advocate for Muslim parents and students because "[t]here's no school choice for schools with ties to organizations that have connections to terrorism. I designated the Muslim Brotherhood and CAIR as foreign terrorist organizations. Texas will not fund schools with ties to terrorism."). The Court may take judicial notice of these statements. Fed. R. Evid. 201(b).

clearly allege that they "are domestic civil rights organizations engaged in protected expressive activity [and] Plaintiffs' work—including legal advocacy, education, and civic engagement—is protected expression under the First Amendment." *Id.* at ¶¶ 80–81. Governor Abbott cannot dispute that he never sanctioned Plaintiffs for their conduct from his election in 2014 through November 17, 2025, as they have continued to operate lawfully in Texas. The Texas Republican Party, affiliated with Governor Abbott, cited Plaintiffs' specific advocacy in Texas on behalf of American Muslims when it decided to "denounce" CAIR in 2025, not any terrorist activity. *Supra*, n.1. Investigative journalists revealed that the allegations in the Proclamation are identical to those contained in a report by an anti-Islam think tank via an email claiming that CAIR was "very anti-police and anti-counterterrorism" and that they were "bad dudes and file lawsuits nearly every day."[19] These facts, combined with Governor Abbott's public statements,[20] support Plaintiffs' claim that the Proclamation was "substantially motivated against Plaintiffs' exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (reversing district court's grant of summary judgment regarding retaliation because genuine issues of material fact existed regarding whether the officer's actions were retaliatory). Plaintiffs plead a First Amendment retaliation claim and should be allowed to obtain discovery from Governor Abbott regarding his ***actual*** motivations for issuing the Proclamation.

**F. Alternatively, Plaintiffs Should Be Granted Leave to Amend**

Generally, district courts should "'afford plaintiffs at least one opportunity to cure pleading

[19] Nicholas Gutteridge, *Greg Abbott's CAIR Terrorist Designation Looks Awfully Similar to an Anti-Muslim Think Tank's Work*, TEX. MONTHLY (July 29, 2026), https://www.texasmonthly.com/news-politics/greg-abbott-cair-terrorist-designation-think-tank/. The Court may take judicial notice of the facts contained in this public article. Fed. R. Evid. 201(b).

[20] *See, e.g.*, Am. Compl., ECF No. 26 ¶ 47 (citing Governor Abbott's references to Plaintiffs' support of students protesting Israel as justification for his Proclamation).

deficiencies before dismissing a case' for good." *McLemore v. Lumen Techs., Inc.*, No. 25-30264, 2026 WL 252698, at *3 (5th Cir. Jan. 30, 2026) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)) (reversing dismissal with prejudice as abuse of discretion). Plaintiffs meet the pleading standard; however, should this Court disagree, dismissal should be without prejudice with leave to amend. If needed, Plaintiffs could add details regarding reputational injuries, property injuries, additional facts from the last seven months that further support Plaintiffs' First Amendment claims, and address any other identified deficiencies.

## V. CONCLUSION

Governor Abbott has wasted this Court's time and Plaintiffs' resources. When Plaintiffs first filed this lawsuit, Governor Abbott welcomed the opportunity to participate in discovery. He claimed before this Court that he needed to conduct discovery to resolve Plaintiffs' preemption and due process claims, despite Plaintiffs' objections. Tr. of Jan. 7, 2026 Status Conference, ECF No. 27 at 9:14-10:2 (counsel for Governor Abbott representing that he "think[s] there could be substantial discovery in this case given the nature of the claims that the plaintiffs are bringing and given the nature of the defense that we intend to raise" regarding all claims in the Amended Complaint). But now that Governor Abbott faces the possibility of discovery himself, he wants to dismiss, claiming that his Proclamation actually has no legal effect. Motion, ECF No. 101 at p. 6 (arguing the Proclamation did not change Plaintiffs' legal status), 9 (arguing Governor Abbott does not enforce any of the claimed penalties described in the Proclamation). This Court should reject Governor Abbott's attempt to avoid discovery and deny his Motion for Judgment on the Pleadings.

In the alternative, should this Court find Plaintiffs' allegations in their Complaint insufficient, Plaintiffs request dismissal without prejudice and the opportunity to file a motion for leave to file a Second Amended Complaint under Local Rule CV-7(b).

Respectfully submitted this 10th day of August, 2026.


*/s/ Chelsea Glover*
Chelsea G. Glover
Bar No. 24097738
Charles D. Swift
Bar No. 24091964
Jinan Chehade
IL Bar No. 6345527

Muslim Legal Fund of America
100 N. Central Expy. Suite 1010
Richardson, Texas 75080
Tel: (972) 914-2507; Fax (972) 692-7454
cglover@clcma.org
cswift@clcma.org
jinan.chehade@mlfa.org

Lena F. Masri
MI Bar No. P73461
Gadeir Abbas
IL Bar No. 81161

CAIR Legal Defense Fund
453 New Jersey Ave. SE
Washington, DC 20003
T: (202) 488-8787
lmasri@cair.com
gabbas@cair.com

***Attorneys for Plaintiffs***