**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| COUNCIL ON AMERICAN-ISLAMIC RELATIONS TEXAS DALLAS FORT WORTH, COUNCIL ON AMERICAN-ISLAMIC RELATIONS AUSTIN TEXAS, and COUNCIL ON AMERICAN-ISLAMIC RELATIONS TEXAS,<br><br>*Plaintiffs*,<br><br>v.<br><br>GREG ABBOTT, in his official capacity as Governor of Texas, and KEN PAXTON, in his official capacity as Attorney General of Texas,<br><br>*Defendants*. | No. 1:25-cv-01878-ADA |

**REPLY IN SUPPORT OF DEFENDANT GOVERNOR ABBOTT'S**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

## INTRODUCTION

Because of CAIR's association with terrorists—as confirmed by federal investigations and judicial proceedings—Governor Abbott designated it as a Foreign Terrorist Organization (FTO) and a Transnational Criminal Organization (TCO). After moving for a preliminary injunction, Plaintiffs forced the Governor to bring multiple meritorious motions to compel before Plaintiffs eventually chose to withdraw their motion. Remarkably, Plaintiffs now say it is the Governor who "wasted this Court's time." Pls.' Opp'n, ECF No. 108, at 21 ("Opp'n"). Rather than endure another round of these games, the Governor moved for judgment on the pleadings because Plaintiffs stumble on two threshold issues (standing and sovereign immunity) and strike out on all three merits arguments (preemption, due process, and free speech). The Court should grant the motion.

## ARGUMENT

### I. The Motion Should Be Granted Because Plaintiffs Lack Standing.

After inadequately pleading an injury in fact with a vague reference to "direct[] harm[]" from "the Proclamation's legal effects," Def.'s Mot., ECF No. 101, at 6 ("Mot.") (quoting Am. Compl., ECF No. 26, ¶ 48 ("Am. Compl.")), Plaintiffs now seek to rely on three purported injuries— (1) a late-breaking argument about reputational harm, Opp'n at 5–7; (2) an inadequately pleaded property harm claim, *id.* at 7–9; and (3) a confused "legal disabilit[y]" hypothesis, *id.* at 9–10. None of these overdue theories suffice.

*First*, Plaintiffs belatedly unveil an allegation that the Governor "cause[s] reputational harm to Plaintiffs via" the Proclamation's FTO and TCO designations. Opp'n at 5–7. This revelation of reputational injury comes too late and proves too little. To start, Plaintiffs did not plead reputational harm: That is why Plaintiffs must cite portions of the Amended Complaint containing the Governor's statements and a conclusory claim of general injury rather than any

allegation of reputational harm. *See id.* at 6–7 (citing Am. Compl. ¶¶ 37, 42–46, 48). Next, Plaintiffs' new argument for reputational harm fails to satisfy standing's redressability requirement. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). According to Plaintiffs, the supposed reputational harm comes from the Proclamation's public "labeling" of Plaintiffs as an FTO and TCO. Opp'n at 7. Yet Plaintiffs offer no argument that a positive injunction ordering the Governor to retract the Proclamation would have been "available in the High Court of Chancery" in 1789. *See Trump v. CASA*, 606 U.S. 831, 841 (2025). Thus, Plaintiffs' newly alleged reputational harm is not "likely" to "be redressed by judicial relief." *TransUnion*, 594 U.S. at 423.

*Second*, Plaintiffs invoke (Opp'n at 7–9) a phantom property harm from the TCO designation that they variably refer to as a "self-executing legal . . . injury" (Opp'n at 5–6), the "ability [to] acquire any interest in real property" (Opp'n at 6), and "a property interest affected by the Proclamation" (Opp'n at 9). But Plaintiffs did not allege any intention to acquire property interests in the future, and pre-existing property interests are not affected by the Proclamation. *See* S.B. 17, § 6, 89th Leg., Reg. Sess. (Tex. 2025). The Amended Complaint merely alleges that at "least one Plaintiff currently maintains a property interest in Texas that is directly affected by the Proclamation's restrictions." Am. Compl. ¶ 49. Plaintiffs ask the Court to overlook their failure to plead property harm because Plaintiffs produced documents explaining the property they "currently own, lease, or use in Texas." Opp'n at 9 (citation omitted). Of course, Plaintiffs' *current* property holdings do not matter for the TCO designation. And although Plaintiffs liberally inject non-pleaded facts, *id.* at 8 n.5, 14 n.12, they offer no details on the alleged property at stake. So, as the Governor has explained, any statement from this Court about what would happen if Plaintiffs attempted to acquire property in some hypothetical future would be advisory. *See* Mot. at 7 (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

*Third*, Plaintiffs assert the FTO designation causes a generalized "harm from the imposition of heightened legal disabilities within" Texas "legal actions in state court that seek to enjoin their operations." Opp'n at 9 (internal quotation omitted). But this misguided theory is falsely premised on the Proclamation's FTO designation having independent legal effect. *See* Mot. at 6–7. In neither a state court public nuisance action, *see* TEX. CIV. PRAC. & REM. CODE § 125.065(a), nor a state court criminal prosecution, *see* TEX. PENAL CODE §§ 71.02, 71.022, 71.023, 76.045, would the Governor's FTO determination be conclusive. *See also* Mot. at 6–7. In sum, like reputational injury and property harm, Plaintiffs' claim of a "legal disability" does not provide them with an injury in fact. Thus, Plaintiffs lack standing and this Court lacks jurisdiction.

## II. The Motion Should Be Granted Because Sovereign Immunity Bars this Suit.

Not only do Plaintiffs lack standing, but Governor Abbott is immune from suit in his official capacity. *See United States v. Abbott*, 85 F.4th 328, 333 (5th Cir. 2023) (citing *Fitts v. McGhee*, 172 U.S. 516, 524–27 (1899)). Plaintiffs attempt to avoid sovereign immunity by invoking (Opp'n at 10) the *Ex parte Young* exception. *See* 209 U.S. 123 (1908). Yet Governor Abbott lacks any "connection with the enforcement of the" designations. *Abbott*, 85 F.4th at 334 (quoting *Ex parte Young*, 209 U.S. at 157). The *Ex parte Young* exception therefore does not apply, and sovereign immunity bars Plaintiffs' suit.

Start with the TCO designation. Plaintiffs say (Opp'n at 11) that when the Governor designates an entity as a TCO under "Subchapter H," TEX. PROP. CODE. §§ 5.251–5.259, there is a "self-executing" "penalty" that meets *Ex parte Young*'s "some connection with the enforcement" requirement. But that argument (1) applies the wrong test (2) to target the wrong defendant and (3) seek the wrong remedy.

*First*, Plaintiffs apply the wrong test because their term "self-executing" is not synonymous

with "some connection with the enforcement." "Self-executing" means that something is legally operative. "[S]ome connection with the enforcement" requires a defendant to have "a particular duty to act." *Mi Familia Vota v. Ogg*, 105 F.4th 313, 327 (5th Cir. 2024). On Plaintiffs' theory, legislators would be proper defendants in challenges to every law they enact. But *Ex parte Young* is about *enforcement*, and the Governor has no "particular duty" to enforce the TCO designation. *See* TEX. PROP CODE §§ 5.255(c), 5.258, 5.259. That is true even with respect to "leasehold interest[s]"—notwithstanding Plaintiffs' protesting, Opp'n at 11—because the statute gives the Governor no power to do anything about a void lease. And it's doubly true with respect to all other property interests covered by the statute, which are not void until someone other than the Governor brings an enforcement action. *See* TEX. PROP. CODE § 5.255(e).

*Second*, Plaintiffs target the wrong defendant because Subchapter H makes clear that other actors have the "particular duty to act" required for the *Ex parte Young* exception. Subchapter H's enumeration of proper enforcers of a TCO designation—such as, state prosecuting attorneys, the Attorney General, and local, state, or federal law enforcement agencies—implicitly excludes the Governor. *Abbott*, 85 F.4th at 334; *see* Mot. at 9 (citing TEX. PROP. CODE §§ 5.255(c)(1), 5.255(c)(2), 5.258, 5.259). So, Plaintiffs' reliance on *Mi Familia Vota* for the proposition that a statute "does not need to state the official's duty to enforce it" is inapposite since the statute lists some enforcers to the exclusion of the Governor. Opp'n at 12 (quoting 105 F.4th at 326). Moreover, Plaintiffs disclaim reliance "on the Governor's general duty to enforce the laws" to establish an enforcement connection. *Id.* That concession was necessary since the "governor's general duty to 'take care that the laws are faithfully executed' is" not a "sufficient connection under *Young*." *Okpalobi v. Foster*, 244 F.3d 405, 415–16 (5th Cir. 2001) (en banc) (plurality).

*Third*, Plaintiffs seek the wrong remedy because the *Ex parte Young* exception does not

provide courts with the power to order the repeal of all "self-executing" government acts. *Contra* Opp'n at 11. Nor does it permit courts to "control the exercise of the discretion of an officer." *Ex parte Young*, 209 U.S. at 158. Instead, it only gives courts the power to prevent government actors from "taking any steps towards the enforcement of an unconstitutional enactment." *Id.* at 159. As the Supreme Court recently explained, *Ex parte Young*-style injunctions are authorized because "[h]istorically, a court of equity could issue an antisuit injunction to prevent an officer from engaging in tortious conduct." *CASA*, 606 U.S. at 846 n.9. Accordingly, to keep *Ex parte Young* within its proper bounds, courts look for an enforcement duty "that a federal court *might enjoin*" the defendant "from exercising." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 43 (2021) (emphasis added). Yet Plaintiffs say that the Governor enforces the TCO designation because his is the "only office with authority to remove those designations," and "only the Governor can undo the designation." Opp'n at 11. Plaintiffs make no argument that ordering the Governor to "remove" or "undo" his exercise of discretion to designate CAIR as a TCO and FTO falls within the scope of the historical antisuit injunction. Plaintiffs therefore fail to establish that the Governor's role in the TCO scheme is the type of enforcement power "that a federal court might enjoin" the Governor "from exercising." *Whole Woman's Health*, 595 U.S. at 43.

Turning from the TCO designation to the FTO designation, Plaintiffs offer just two sentences, in which they both concede that the Proclamation's FTO designation has no independent legal effect and improperly insert non-pleaded facts. Opp'n at 10. Plaintiffs' backtracking makes sense because, as Governor Abbott has argued, the Governor's FTO determination does not bind a factfinder in a public nuisance action or a criminal prosecution. Mot. at 8–9. The takeaway is that the Governor does not civilly or criminally enforce an FTO designation, so the *Ex parte Young* exception does not apply, and sovereign immunity bars Plaintiffs' suit.

## III. The Motion Should Be Granted Because Plaintiffs Inadequately Pleaded the Merits.

Even if Plaintiffs had standing and the Governor were not immune, this Court should grant the Governor's motion for judgment on the pleadings because Plaintiffs have not adequately alleged the merits of their preemption, due process, and free speech claims.

### A. The FTO Designation Is Not Preempted.

Start with preemption, for which Plaintiffs' Opposition is deficient in numerous ways. *First*, Plaintiffs persist (Opp'n at 12 n.8) in their failure to identify a cause of action. *See* Mot. at 10. Plaintiffs merely insist that they "have federal question jurisdiction." Opp'n at 12 n.8. But the existence of statutory subject matter jurisdiction does not mean that Plaintiffs have a cause of action. *See Cisco Sys., Inc. v. Doe I*, 146 S. Ct. 1882, 1886 (2026).

*Second*, any reference by Plaintiff (Opp'n at 14 n.10, 15) to preemption of the TCO designation and the associated real-property acquisition limits should be ignored because Plaintiffs failed to allege any such preemption. *See* Mot. at 11 n.3. The sole preemption claim in the Amended Complaint is whether Texas's FTO scheme has been preempted, not the TCO scheme

*Third*, Plaintiffs fail to appreciate the weight of the presumption against preemption in this case (Opp'n at 15) because they focus on the labels attached to Texas's regulation of public nuisances and public safety instead of the substance of those regulations. *See* TEX. CIV. PRAC. & REM. CODE § 125.065; TEX. PENAL CODE §§ 71.02, 71.022, 71.023, 76.045. As a matter of fact, not form, Texas's FTO designation scheme regulates in "areas of law traditionally reserved to the states," so the presumption against preemption applies in full force. *Deanda v. Becerra*, 96 F.4th 750, 761 (5th Cir. 2024) (citation omitted).

*Fourth*, Plaintiffs err when they try to disclaim their facial challenge to elide the consequences of bringing one, Opp'n at 15—that is, that they must show "no set of circumstances"

exists under which a designation would not be preempted. *Nat'l Horsemen's Benevolent and Protective Ass'n v. Black*, 178 F.4th 224, 235 (5th Cir. 2026) (citation omitted). Plaintiffs challenged Texas's FTO designation scheme in its entirety. *See* Am. Compl. ¶¶ 56–58. And they continue to argue that "[f]ederal law . . . occupies the field of designating and sanctioning FTOs," Opp'n at 13, and the "federal regime therefore leaves no room for alternative state classification or enforcement schemes," *id.* at 14. That is not a mere challenge "as to these Plaintiffs," *contra id.* at 15 (emphasis omitted), but instead a frontal assault on Texas's entire FTO scheme.

*Fifth*, Plaintiffs fall flat in their attempt to deviate from their amended complaint by suggesting that they brought more than a field preemption claim, *id.* at 15—a type of preemption claim reserved for "rare cases." Mot. at 12 (quoting *Kansas v. Garcia*, 589 U.S. 191, 208 (2020)). They alleged only that Congress "occupie[d] the field." Am. Compl. ¶ 56; *see also id.* ¶¶ 54, 57, 59 (citation omitted). Even the paragraph Plaintiffs now quote refers to field preemption by pinning Plaintiffs' preemption claim on "Congress's *exclusive* terrorism-designation framework"—*i.e.*, an allegedly occupied field. Opp'n at 15 (quoting Am. Compl. ¶ 59 (emphasis added)).

*Sixth*, and even without the above, Plaintiffs have not adequately alleged field or obstacle preemption. *See* Mot. at 13–16.

For field preemption, Plaintiffs claim that Texas's FTO designation scheme intrudes "into the field of foreign affairs" and "the field of designating and sanctioning FTOs." Opp'n at 13–14. But Texas's FTO scheme does no such thing. As Governor Abbott has argued, *see* Mot. at 13–14, while Texas's scheme shares the FTO label with the federal designation in 8 U.S.C. § 1189(a)(1), Texas's scheme differs from the federal scheme in what, who, and how it regulates. Moreover, this Court should ignore Plaintiffs' attempt (Opp'n at 14 n.10) to invoke statutes and regulations not mentioned in the Amended Complaint. As with the federal FTO label, these authorities differ from

Texas's schemes in their targets and effects. And they relate primarily to Texas's TCO designation scheme, which also was not mentioned in Plaintiffs' preemption claim. *See* Mot. at 11 n.3.

For obstacle preemption, Plaintiffs continue (Opp'n at 15) their misplaced reliance on *Crosby v. National Foreign Trade Council*, 530 U.S. 363 (2000), in two ways. First, Plaintiffs' analogy between *Crosby*'s contracting ban and the TCO property-acquisition restrictions is beside the point because Plaintiffs never alleged that the TCO provisions were preempted. *See* Mot. at 11 n.3. Second, Plaintiffs never pleaded any facts showing an obstacle to enforcement of federal law. Because Texas's law has different effects on different entities engaged in different conduct than that governed by the federal statute, Plaintiffs have at best shown "overlap to some degree with federal" law, which "does not even begin to make a case for conflict preemption." *Kansas*, 589 U.S. at 211. In sum, under either preemption theory, Texas's FTO designations are not preempted.

**B. The TCO Designation Does Not Deny Plaintiffs Procedural Due Process.**

In the same way that Plaintiffs' preemption argument is all about the FTO designation, their procedural due process argument focuses on the TCO designation and its restriction on Plaintiffs' ability to acquire real property. But Plaintiffs failed to sufficiently allege either element of the procedural due process test: neither (1) deprivation of life, liberty, or property, nor (2) a deficiency in the process provided. *See* Mot. at 16–17 (citing *Reed v. Goertz*, 598 U.S. 230, 236 (2023)).

At step one, Plaintiffs hypothesize that they have a right to *acquire* property rights, and that the TCO designation's restriction on the acquisition of future property interests "immediately deprives" them of that supposed right. Opp'n at 16. But rely only *Fuentes v. Shevin*, 407 U.S. 67 (1972), which provides no support for the proposition that the Fourteenth Amendment protects any supposed right to acquire property rights. In fact, "[a] mere opportunity to acquire property . . . does not itself qualify as a property interest protected by the Constitution." *Head v.*

*Chicago Sch. Reform Bd. of Trs.*, 225 F.3d 794, 802 (7th Cir. 2000). The reality remains that Plaintiffs have suffered no deprivation of property because being designated a TCO only affects *future* acquisition of property. *See* Mot. at 16 (citing TEX. PROP. CODE § 5.254(a)).

At the second step of the due process inquiry, and assuming *arguendo* a deprivation, Plaintiffs incorrectly suggest that Texas must provide pre-deprivation process because the Governor's TCO designation is "state-level." Opp'n at 18 & n.16. Whether an emergency justifies dispensing with a pre-deprivation hearing does not turn on whether the government actor is federal, state, or local. *See, e.g.*, *Pinkston v. Kuiper*, 67 F.4th 237, 239 (5th Cir. 2023) (per curiam) (state prison); *Caine v. Hardy*, 943 F.2d 1406, 1407 (5th Cir. 1991) (en banc) (county hospital). Equally unavailing, Plaintiffs are mistaken to say that the TCO designation statute provides them "no sufficient post-deprivation due process remedy." Opp'n at 18–19. To the contrary, Plaintiffs may attempt to challenge the designation in any enforcement action brought under the TCO scheme.

**C. Neither the FTO nor the TCO Designation Infringes on Plaintiffs' Free Speech.**

Finally, Plaintiffs do not advance any argument that the Proclamation directly regulates their expressive conduct, only that it somehow "retaliates against" their protected expression. *Id.* at 19–20. Yet Plaintiffs fail to (a) identify which expression is being retaliated against, *see* Mot. at 19–20, or (b) establish that retaliatory grounds were a "but-for" cause of the Proclamation, *see id.* at 18 (quoting *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019)).

As to (a), Plaintiffs suggest merely that the Proclamation was in "retaliation for Plaintiffs' and CAIR Foundation's advocacy" in Texas. Opp'n at 19. For support, Plaintiffs cite paragraphs from the Amended Complaint that offer only conclusory allegations that Plaintiffs engage in expressive activity, *id.* (citing Am. Compl. ¶¶ 13–16, 74, 80–81), and that the Proclamation supposedly burdens that activity, *id.* (citing Am. Compl. ¶¶ 76, 79, 82). Those conclusory

allegations are insufficient to establish that the Proclamation retaliated for any protected speech.

As to (b), Plaintiffs did not adequately plead that their protected speech was a "but-for" cause of the Proclamation. *Nieves*, 587 U.S. at 400–01. They merely pointed to an interview from over a month *after* the Proclamation was issued in which the Governor made clear that Plaintiffs' support of terrorism was the basis for the FTO designation. *See* Mot. at 19–20 (citing Am. Compl. ¶ 47). Here again, Plaintiffs resort to reaching beyond the pleadings. Opp'n at 2 n.1, 20 n.19. A "retaliation claim is only available when non-retaliatory grounds are in fact insufficient to provoke the adverse consequences." *Degenhardt v. Bintliff*, 117 F.4th 747, 758 (5th Cir. 2024) (internal quotations omitted). Plaintiffs have not come close to pleading that the Governor "would not have" issued the Proclamation "absent [their] protected speech." *Mandawala v. Ne. Baptist Hosp.*, 16 F.4th 1144, 1151 (5th Cir. 2021). The Proclamation explains why the Governor issued it. And his consideration of some forms of protected speech—such as CAIR Executive Director Nihad Awad's statement that he was "happy to see" the October 7th attacks where dozens of Americans were killed—when determining whether Plaintiffs constitute an FTO is "wholly legitimate." Mot. at 18–19 (quoting *Nieves*, 587 U.S. at 401).

## IV. Granting Leave to Amend the Complaint a Second Time Would Be Futile.

Recognizing the shortcomings of their pleadings, Plaintiffs attempt to backfill numerous non-pleaded assertions. *See* Opp'n at 2 & n.1, 8 n.5, 14 n.12, 19 n.18, 20 n.19. But even their post hoc attempt to manufacture a claim from facts they never pleaded fails to establish a legally cognizable basis for relief. Since a new complaint would not cure the legal deficiencies, leave to amend would be futile. *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016).

## CONCLUSION

This Court should grant Governor Abbott's motion for judgment on the pleadings.

Dated: August 17, 2026

Respectfully submitted,

/s/ *Charles J. Cooper*
Charles J. Cooper (Pro Hac Vice)
John D. Ramer (Pro Hac Vice)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com
jramer@cooperkirk.com

TREVOR W. EZELL
*General Counsel*
Tex. State Bar No. 24109849
OFFICE OF THE GOVERNOR OF TEXAS
P.O. Box 12428
Austin, TX 78711
Tel: (512) 463-3329
Fax: (512) 463-1932
trevor.ezell@gov.texas.gov

*Counsel for Defendant Greg Abbott, in his official capacity as Governor of Texas*

## CERTIFICATE OF SERVICE

On August 17, 2026, this document was filed electronically through the Court's CM/ECF system, which automatically serves all counsel of record.

/s/ *Charles J. Cooper*
Charles J. Cooper