**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| **COUNCIL ON AMERICAN-ISLAMIC RELATIONS TEXAS DALLAS FORT WORTH**, et al.,<br><br>*Plaintiffs*,<br><br>vs.<br><br>**ABBOTT**, et al.,<br><br>*Defendants*. | CASE No.: 1:25-cv-01878-ADA |

**PLAINTIFFS' OPPOSITION TO**
**DEFENDANT PAXTON'S MOTION FOR JUDGMENT ON THE PLEADINGS**

# I. INTRODUCTION

Plaintiffs Council on American-Islamic Relations ("CAIR") Texas Dallas Fort Worth, CAIR Austin Texas, and CAIR Texas (together "Plaintiffs") have each operated lawfully in Texas for several years without consequence. *See* First Amended Complaint, ECF No. 26 at ¶¶ 1–3. Despite his lengthy tenure as both the former Attorney General and current Governor of Texas, Governor Abbott went years without sanctioning Plaintiffs for any reason. Yet on July 3, 2025, the Texas Republican Party, of which both Governor Abbott and Attorney General Paxton ("AG Paxton") are members, issued its "Resolution Denouncing the Council on American-Islamic Relations (CAIR)," which "call[ed] upon all elected officials in Texas [to] take all appropriate legal and legislative actions to prevent CAIR's ideological infiltration into Texas public life."[1] The Resolution claims that CAIR is "an ideological threat," that Plaintiff CAIR Texas "has actively promoted Sharia-aligned policies in Texas public institutions" by advocating for religious accommodations for American Muslims, and that Plaintiff CAIR Texas "has actively worked to suppress constitutionally protected speech" by drawing attention to Islamophobia directed at American Muslims. *Id.* Shortly afterwards, Governor Abbott, for the first time during his long tenure, declared Plaintiffs foreign terrorist organizations ("FTOs"), transnational criminal organizations ("TCOs"), and an entity the Governor, in his discretion, determined posed a threat to national security. Proclamation 41-4241, ECF No. 26-1. Plaintiffs allege these designations are unlawful because they are preempted by federal authority, violate the Fourteenth Amendment's Due Process Clause, and were issued in bad faith in retaliation for Plaintiffs' First Amendment-

[1] *Resolution Denouncing the Council on American-Islamic Relations (CAIR)*, TEX. REPUBLICAN PARTY (July 3, 2025), https://texasgop.org/resolution-denouncing-the-council-on-american-islamic-relations-cair/. The Court may take judicial notice of this fact. Fed. R. Evid. 201(b).

protected advocacy. Am. Compl., ECF No. 26 ¶¶ 52–82.

AG Paxton is explicitly authorized to enforce the Texas statutes implicated by the Proclamation, and he has already begun enforcement proceedings against Plaintiffs. *See, e.g.*, Tex. Civ. Prac. & Rem. Code §§ 125.064, 125.070; Tex. Prop. Code §§ 5.255 *et seq.*; State of Texas's Original Petition and Application for Temporary and Permanent Injunctions, *Texas v. Muslim Brotherhood, et al*, No. 471-00734-2026 (Tex. Dist. Ct.—Collin Cnty.), ECF No. 46-6[2] ¶ 108 ("Because Texas Governor Greg Abbott has specifically declared that the Muslim Brotherhood and [Plaintiffs] are systematically engaged in activities that are unlawful under Chapter 71 of the Texas Penal Code and **precluded from owning Texas property via** Chapter 5 of the Texas Property Code, the Court should enter temporary and permanent injunctive relief against the Muslim Brotherhood and [Plaintiffs] prohibiting [them] from engaging in any additional acts within the State of Texas.") (emphasis in original). Plaintiffs sued to prevent this lawsuit. Am. Compl., ECF No. 26 at 14 (seeking to permanently enjoin Defendants from enforcing or otherwise relying on the Proclamation). AG Paxton's argument that any harm to Plaintiffs is merely speculative defies logic, given his ongoing efforts to enforce the Proclamation against them. AG Paxton's enforcement of Governor Abbott's Proclamation causes substantial reputational and property harm to Plaintiffs. Plaintiffs have standing to sue AG Paxton to cease his attempts to enforce the Proclamation, and Plaintiffs' claims against him are ripe for review before this Court. Plaintiffs request this Court deny AG Paxton's motion.

## II. FACTS AND PROCEDURAL HISTORY

Plaintiffs are domestic nonprofit organizations operating in Texas. Am. Compl., ECF No. 26 ¶¶ 1–3. On November 18, 2025, Governor Abbott issued Proclamation 41-4241, which

[2] The Court can take judicial notice of this lawsuit. Fed. R. Evid. 201(b).

purports to designate "CAIR" as both an FTO and a TCO, which Governor Abbott interprets to include the local chapter Plaintiffs. *Id.* ¶¶ 24, 28; ECF No. 26-1. The Proclamation purports to prohibit Plaintiffs from acquiring any interest in real property in Texas. Am. Compl., ECF No. 26 ¶¶ 27, 29–30, 48–49. It also purports to trigger statutory enforcement mechanisms and heightened civil penalties based on Governor Abbott's designations. *Id.* ¶¶ 28, 31. The Proclamation imposes these penalties without any notice, hearing, or opportunity to contest the designation, either before or after the designation. *Id.* ¶¶ 32–34. Plaintiffs received no notice of the Proclamation prior to its issuance. *Id.* ¶ 36; Abbott Answer, ECF No. 28 ¶¶ 35, 66. AG Paxton is authorized to initiate legal proceedings under the statutes cited in the Proclamation. Am. Compl., ECF No. 26 ¶¶ 51, 69 (citing relevant statutes).

Plaintiffs filed their Original Complaint on November 20, 2025. ECF No. 1. Defendants filed Answers to the Original Complaint on December 22, 2025. ECF Nos. 12–13. Plaintiffs filed their First Amended Complaint on January 6, 2026, adding CAIR Texas as a Plaintiff. ECF No. 26. Defendants filed their Answers to the First Amended Complaint on January 16, 2026. ECF Nos. 28–29. On January 22, 2026, Plaintiffs filed an Opposed Motion for Preliminary Injunction. ECF No. 30. This Court granted limited discovery to Defendants to respond to Plaintiffs' Motion for Preliminary Injunction. ECF No. 27. After Governor Abbott failed to substantiate his claims against Plaintiffs, he asked this Court to allow him to obtain discovery into CAIR Foundation, Inc. ("CAIR Foundation"), a third party to this case, which this Court granted to both Defendants on March 23, 2026. ECF Nos. 43, 45. Several months passed during which AG Paxton sought discovery exclusively from CAIR Foundation, not any Plaintiff. *See* ECF No. 55-4 (AG Paxton's discovery requests to CAIR Foundation); ECF No. 64 (Order regarding CAIR Foundation's response to AG Paxton's discovery requests); ECF No. 89 (AG Paxton's motion to compel

production from CAIR Foundation).

While discovery was ongoing, and as Plaintiffs reasonably foresaw, AG Paxton filed a lawsuit on February 5, 2026, against Plaintiffs, CAIR Foundation, and the Muslim Brotherhood to enforce Governor Abbott's Proclamation. *See generally*, ECF No. 46-6. In this lawsuit, AG Paxton asks a Texas court to declare that Plaintiffs are FTOs and TCOs "in accordance with Governor Abbott's Proclamation," and "prohibit all Defendants [including Plaintiffs] from engaging in any activities within the State of Texas." *Id.* at 32 (internal pagination at 31). AG Paxton cites Governor Abbott's Proclamation as the basis for each of his three causes of action. *See id.* ¶¶ 108 (citing Proclamation to request permanent injunctive relief precluding Plaintiffs from "engaging in any additional acts within the State of Texas"), 120 (citing Proclamation to obtain a declaration that the Muslim Brotherhood [which AG Paxton preposterously claims includes Plaintiffs and CAIR Foundation] is an FTO and TCO), 128–29 (citing Proclamation to claim that Plaintiffs have "engaged in organized criminal activity" and therefore requesting to "abate this public nuisance").

As a result, Plaintiffs' Motion for Preliminary Injunction sat unanswered under the presumption that both Defendants needed discovery to substantiate the allegations in Governor Abbott's November 18, 2025 Proclamation. Tr. of Jan. 7, 2026 Status Conference, ECF No. 27 at 9:14-10:2 (counsel for Governor Abbott representing that he "think[s] there could be substantial discovery in this case given the nature of the claims that the plaintiffs are bringing and given the nature of the defense that we intend to raise" regarding all claims in the Amended Complaint). Tired of waiting, and with an outstanding First Amendment retaliation claim unresolved by the motion for preliminary injunction, Plaintiffs decided to withdraw their Motion after nearly six months without a response. ECF No. 96. Plaintiffs immediately reached out to request a Rule 26

status conference, as both Defendants have filed their Answers. Instead of proceeding to full discovery on all claims, which both Defendants insisted was necessary to defend against Plaintiffs' claims, both Defendants have filed Motions for Judgment on the Pleadings that now assert the Proclamation "does not *by itself* alter Plaintiffs' legal status." Abbott's Motion, ECF No. 101 at 7 (emphasis original), Paxton's Motion, ECF No. 106 at 6 (explaining that Proclamation "does not subject Plaintiffs to self-executing legal penalties or automatically alter their legal status"). Plaintiffs filed their opposition in response to Governor Abbot's Motion on August 10, 2026. ECF No. 108. Plaintiffs now file this opposition in response to AG Paxton's Motion.

## III. STANDARD OF REVIEW

The standard for dismissal under Federal Rule of Civil Procedure 12(c) is the same as that for dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Rafuse v. Advance Concepts and Techs. Int'l LLC*, No. 6:20-cv-00718, 2026 U.S. Dist. LEXIS 32839, at *6 (W.D. Tex. Feb. 17, 2026) (Albright, J.) (citing *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)). A complaint survives a Rule 12(c) motion if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at *6–7. "A court must accept 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Id.* at 7 (citing *Martin K. Eby Const. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

## IV. ARGUMENT

### A. Plaintiffs Possess Standing to Pursue Their Claims

Plaintiffs demonstrate standing by showing "(i) that [they] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). To determine whether an injury is "concrete," "courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* at 424 (citing *Spokeo v. Robins*, 578 U.S. 330, 341 (2016)). These harms include "traditional tangible harms, such as physical harms and monetary harms," as well as "various intangible harms . . . [which] include, for example, reputational harms [and] harms specified by the Constitution itself." *Id.* at 425. Plaintiffs satisfy these requirements. *See* Opposition to Abbott's Motion ("Opp."), ECF No. 108 at 7–10.[3]

Plaintiffs' allegation that they are domestic entities possessing a property interest affected by the Proclamation suffices at the pleading stage, where "allegations of injury are liberally construed." Am. Compl., ECF No. 26 ¶ 49; *Hancock Cnty. Bd. of Sup'rs v. Ruhr*, 487 Fed. App'x. 189, 195 (5th Cir. 2012) (internal quotation marks and citations omitted); *see also Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445, 450 (5th Cir. 2022) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice . . . ."). Due to the preliminary discovery that already occurred, AG Paxton, like Governor Abbott, has actual "documents reflecting real property the named Plaintiffs currently own, lease, or use in Texas."

---

[3] Plaintiffs refer this Court to its response to similar arguments against standing asserted by Governor Abbott.

*See* ECF No. 43-2 at 7.[4] Plaintiffs' property interest mirrors the property interest possessed by Plaintiff Dong in *Huang v. Paxton*, and this Court did not dismiss his claims for lack of standing. *Huang v. Paxton*, 2025 U.S. Dist. LEXIS 255759, at *4–5, 12 (W.D. Tex. Dec. 9, 2025) (Albright, J.). Should this Court hold that Plaintiffs' pleadings do not identify the property harm with enough specificity, the remedy is granting leave to amend to add that specificity. *See infra* at Part E (requesting alternative relief to amend).

The Supreme Court holds that "courts may make 'commonsense inferences' when assessing Article III standing, including inferences about 'third party behavior.'" *First Choice Women's Res. Ctrs., Inc. v. Davenport*, 146 S. Ct. 1114, 1125 (2026). When Plaintiffs filed their Amended Complaint on January 2, 2026, Plaintiffs faced an imminent threat of enforcement from AG Paxton based on his stated intentions to defend the Proclamation.[5] *See, e.g.*, Raeylee Barefield, *Ken Paxton Defends CAIR, Muslim Brotherhood Designation as Foreign Terrorist Organizations*, TEXAS POLITICS (Dec. 24, 2025), https://texaspolitics.com/2025/12/24/ken-paxton-defends-cair-muslim-brotherhood-designation-as-foreign-terrorist-organizations/ (quoting AG Paxton as stating, "My office will continue to defend the Governor's lawful, accurate, declaration that CAIR is an FTO, as well as Texas's right to protect itself from organizations with documented ties to foreign extremist movements"). As Plaintiffs correctly predicted, AG Paxton initiated enforcement proceedings against Plaintiffs based on the Proclamation in February of this year, shortly after

[4] AG Paxton is in possession of all documents produced by Plaintiffs to Governor Abbott. *See* ECF No. 55-4 at 8 (reflecting nearly identical language to the same discovery requests propounded on Plaintiffs earlier in preliminary discovery).

[5] Moreover, despite Defendants' claims that the Proclamation's FTO designation has no immediate legal effect, the statute allows private citizens to bring suits against FTOs and their affiliates. *See* Tex. Civ. Prac. & Rem. Code § 125.064 (allowing private citizen suits against "foreign terrorist organizations" under the Texas Penal Code); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014) (holding that plaintiffs alleged a credible threat of enforcement where the state panel found them liable for violating statute and statute allowed private citizens to sue them).

Plaintiffs filed their Amended Complaint. *See* ECF No. 46-6 at 32 (seeking "declaratory relief that all defendants [including Plaintiffs] are (1) a Foreign Terrorist Organization under Texas Penal Code § 71.01(e); and (2) a Transnational Criminal Organization, pursuant to Texas Property Code § 5.254(a)(2)(A), in accordance with Governor Abbott's Proclamation"). This Court does not have to pretend that AG Paxton does not intend to enforce Subchapter H based on his enforcement actions after Plaintiffs filed their First Amended Complaint, as "commonsense inferences" regarding his future actions led Plaintiffs to sue AG Paxton *to prevent any enforcement of the Proclamation*. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007) ("[W]here threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced."). Should this Court require Plaintiffs to allege facts regarding AG Paxton's current lawsuit against them, Plaintiffs request that this Court grant leave for Plaintiffs to move to amend. *See infra*, Part E.

Plaintiffs do not challenge laws of general applicability, but instead challenge a Proclamation that, as agreed by Defendants, exclusively applies to them, as the sole "CAIR" organizations operating in Texas. *See generally*, Proclamation, ECF No. 26-1; Am. Compl., ECF No 26 ¶ 27. Plaintiffs do not need to speculate whether AG Paxton would enforce Subchapter H of the Texas Property Code against them, as the Proclamation renders them directly subject to those provisions. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (holding plaintiffs lacked standing to challenge surveillance statute because their theory of harm was "highly speculative"). Plaintiffs in *Clapper* were domestic attorneys and non-profit organizations that sought to prevent the enforcement of a federal statute authorizing surveillance of certain foreign communications. *Id.* at 406. The plaintiffs alleged that the statute was unconstitutional on its face

because it could frustrate their work and subject their communications with foreign contacts to unlawful surveillance. *Id.* at 407. The Supreme Court rejected the *Clapper* plaintiffs' theory of harm as too speculative, as the plaintiffs would need to show first that "the Government will decide to target the communications of non-U.S. person with whom they communicate" and that they "will be parties to the particular communications that the Government intercepts" under the statute. *Id.* at 410.

Here, the Proclamation explicitly designates Plaintiffs as subject to various statutes that would not apply to them but for the Proclamation. ECF No. 26-1 at 5 (purporting to "subject" "CAIR" and their affiliates "to the heightened penalties authorized by Chapter 125 of the Texas Civil Practices and Remedies Code" and "to Chapter 5 of the Texas Property Code, which prohibits them from purchasing or acquiring land in Texas"). Plaintiffs, unlike the plaintiffs in *Clapper*, need not speculate whether Texas will enforce these statutes against them. *See* ECF No. 46-6. Plaintiffs demonstrate sufficient concrete, actual, and imminent injury traceable to Governor Abbott's Proclamation that is redressable by declaratory and injunctive relief against both Governor Abbott and AG Paxton. Plaintiffs, therefore, possess standing to proceed with their claims.

**B. Plaintiffs' Due Process Claim Against AG Paxton is Ripe**

The Fifth Circuit holds that "[a] case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *Groome Res., Ltd. v. Parish of Jefferson*, 234 F.3d 192, 199 (5th Cir. 2000); *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985) (holding case sufficiently ripe when "the issue presented in this case is purely legal, and will not be clarified by further factual development"). Plaintiffs' due process claim is ripe for judicial review because the Proclamation's designation of Plaintiffs as

proscribed entities under Subchapter H of the Texas Property Code created immediate due process violations, including the inability to purchase property and the threat of unjust enforcement proceedings by AG Paxton. Tex. Prop. Code §§ 5.253, 5.254, 5.255, 5.256, 5.259. Plaintiffs' claims involve purely legal issues, and Plaintiffs do not have to wait for a new enforcement action by AG Paxton to bring a pre-enforcement challenge. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167–68 (2014) (prudential ripeness concerns insufficient to defeat pre-enforcement challenge to statute when faced with a credible threat of enforcement and present pure legal issues); *Thomas*, 473 U.S. at 581 (1985) ("One does not have to await the consummation of a threatened injury to obtain preventative relief. If the injury is certainly impending, that is enough.") (citations omitted).

While AG Paxton claims that he "has wholly discretionary authority to bring civil actions against entities that violate" Subchapter H, that does not mean that Plaintiffs fail to allege impending harm from the threat of enforcement. *Susan B. Anthony List*, 573 U.S. at 158 ("When an individual is subject to such a threat [to enforce the law], an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law."). Plaintiffs allege that they possess a property interest affected by the prohibition in Subchapter H, and their intention to purchase property renders them imminently subject to investigation and suit from the state without the ability to challenge the designation at the outset. Am. Compl., ECF No. 26 ¶¶ 48–49, 51, 67–69. AG Paxton claims that Plaintiffs would receive sufficient process in an *in rem* proceeding under Section 5.255, but Plaintiffs argue that *no portion* of Subchapter H should be enforced against them, as they are domestic entities expressly exempted from the Subchapter's applicability. Tex. Prop. Code § 5.252 (explaining that Subchapter H does not apply to entities owned or controlled by US citizens and lawful permanent residents). Plaintiffs should not have to be subjected to any *in rem* proceeding under this Subchapter—that itself is an additional intrusion on Plaintiffs' liberty

interests. Plaintiffs' due process claim against AG Paxton is ripe for review before this Court.

**C. Federal Law Preempts Governor Abbott's "Designations" in the Proclamation**

In response to AG Paxton's arguments against preemption, Plaintiffs refer this Court to its response to substantially similar arguments made by Governor Abbott. *See* Motion, ECF No. 106 at 8–13; Opp., ECF No. 108 at 12–15. Plaintiffs are not facially challenging the entire FTO and TCO statutes, but instead allege that there is no set of circumstances in which *this* Proclamation as to *these* Plaintiffs could be valid. Am. Compl., ECF No. 26 ¶¶ 57–61. AG Paxton's own arguments reveal that *this* Proclamation cannot be valid on its face, as no court or jury has found that Plaintiffs are either FTOs or TCOs under any Texas law. *See* Motion, ECF No. 106 at 5–6 (noting that "state criminal law alone defines what constitutes a [FTO] under Texas law" and that only a court may "determine whether the designated [TCO] should be divested of its acquired interest in real property and held liable for a civil penalty").

Plaintiffs allege and establish that the federal government possesses the sole authority to designate organizations as FTOs and TCOs. *See* Am. Compl., ECF No. 26 ¶¶ 55–57 (citing 8 U.S.C. § 1189, which vests the U.S. Secretary of State with the authority to designate an entity as an FTO); Opp., ECF No. 108 at 13–14 (identifying additional statutes vesting the Executive Branch with the authority to designate an entity as a TCO); *Arizona v. United States*, 567 U.S. 387, 399 (2012) (holding that "States are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance"). Classifying foreign entities by designating them as FTOs and TCOs remains within the federal government's exclusive authority. *See United States v. Texas*, 97 F.4th 268, 278–79 (5th Cir. 2024) (precluding Texas from establishing state criminal offenses regarding unauthorized entry of noncitizens because "[f]or nearly 150 years, the Supreme Court has held that the power to control

immigration—the entry, admission, and removal of noncitizens—is *exclusively* a federal power") (emphasis in original).

While Texas retains the authority to apply its historic police powers to FTOs and TCOs designated by the federal government or found by a court to meet the Texas statutory definitions, the Governor and AG Paxton cannot unilaterally deem domestic organizations to be foreign organizations and penalize them accordingly. *See Zyla Life Scis., L.L.C. v. Wells Pharma of Hous., L.L.C.*, 134 F. 4th 326, 336 (5th Cir. 2025) (holding states may regulate the same conduct as the federal government "when state standards mimic federal ones" by directly incorporating federal statutes). Governor Abbott is frustrated that the federal government will not designate Plaintiffs or CAIR Foundation as FTOs and TCOs, so he purports to do it himself via the Proclamation. *See* Am. Compl., ECF No. 26 ¶ 42 (citing Governor Abbott's letter to U.S. Secretary of the Treasury requesting that Plaintiffs lose their tax-exempt status based on his determination that they are FTOs and TCOs).[6] States are not permitted to pursue a more aggressive strategy than the federal government in the area of designating organizations as FTOs and TCOs. *See Am. Ins. Assn. v. Garamendi*, 539 U.S. 396, 427 (2003) (holding California's greater insurance protections for Holocaust victims was preempted for interfering with foreign affairs because although the state interest was "powerful," "[t]he basic fact is that California seeks to use an iron fist where the President has consistently chosen kid gloves").

The presumption against preemption has no place here, as unilaterally designating and

[6] Governor Abbott claims that Plaintiffs should have their tax-exempt status revoked under 26 U.S.C. § 501(p). *See* Letter from Governor Greg Abbott to Secretary Scott Bessent at 2, U.S. Dep't. of Treasury (Dec. 2, 2025), https://gov.texas.gov/uploads/files/press/Scott_Bessent.pdf. But Section 501(p) authorizes suspension of tax-exempt status only for organizations designated as terrorist organizations pursuant to a stated Congressional Act or Executive Order "issued under the authority of any Federal law." 26 U.S.C. § 501(p)(2)(A)–(C).

sanctioning organizations as FTOs (or asserting that a domestic organization is an FTO) is not within the State's historic police powers. AG Paxton's references to Texas's interests in protecting itself from foreign threats are completely irrelevant when applied to domestic organizations incorporated in the state. Am Compl., ECF No. 26 ¶¶ 1–3; *see Terrace v. Thompson*, 263 U.S. 197 (1923) ("[W]hile Congress has exclusive jurisdiction over immigration, naturalization, and the disposal of the public domain, each State, in the absence of any treaty provision to the contrary, has the power to deny to *aliens* the right to own land within its borders.") (emphasis added). AG Paxton cites cases where the court refused to hold that a state statute that procedurally frustrated a federal law or policy was preempted. *See Dunbar v. Seger-Thomschitz*, 615 F.3d 574, 579 (5th Cir. 2010) (rejecting argument that federal policy favoring adjudication of claims related to art stolen by Nazis preempted state prescription laws that applied generally to all property claims); *In re Davis*, 170 F.3d 475, 482–83 (5th Cir. 1999) (rejecting argument that federal Bankruptcy Code's policy of enforcing family support obligations preempted Texas' homestead law protections that preclude seizure of property used as a homestead). But Texas's general authority to regulate property does not bleed into the federal government's express and exclusive authority to designate entities as FTOs and TCOs, and AG Paxton's cited cases do not hold otherwise. Plaintiffs sufficiently demonstrate that the federal government occupies the field of designating entities as FTOs and TCOs, and Plaintiffs respectfully request this Court deny AG Paxton's attempts to dismiss this claim. *See Texas*, 97 F.4th at 278 (holding that field preemption can be inferred "where an Act of Congress touches a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject") (citing *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990)).

**D. AG Paxton's Enforcement of the Proclamation Violates Plaintiffs' Due Process Rights**

The Proclamation subjects Plaintiffs to investigation and suit from Texas state and local attorneys, including AG Paxton, for non-criminal actions such as purchasing property to fundraise for their organization, as U.S. non-profits are permitted to do. Tex. Prop. Code §§ 5.255, 5.256, 5.259 (authorizing a "civil penalty equal to the greater of: (1) $250,000; or (2) 50 percent of the market value of the interest in real property that is the subject of the violation" for designated companies that attempt to purchase property). The Proclamation authorizes these infringements on Plaintiffs' liberties and deprivations of property rights without providing any notice or opportunity to be heard, in violation of the Fourteenth Amendment.[7] AG Paxton does not need to issue the Proclamation himself to be liable for the due process violations caused by enforcing the statute *as though the designations are legally in effect*, as he has already done. *See* ECF No. 46-6 ¶¶ 80, 102 (lawsuit against Plaintiffs claiming that "Governor Abbott's proclamation prohibits [Plaintiffs] from purchasing or acquiring lang in Texas and authorizes heightened enforcement measures against both organizations and their affiliates operating within Texas" and "Once issued, the Attorney General has the authority to enforce the Governor's proclamation"), ECF No. 46-1 at 9 ("Because Texas Governor Greg Abbott has specifically declared that the Muslim Brotherhood and the American Chapter are systemically engaged in activities that are unlawful under Chapter 71 of the Texas Penal Code and precluded from owning Texas property via Chapter 5 of the Texas Property Code, Texas has explained exactly how it would prevail in preventing the Muslim Brotherhood and the American and Texas Chapters from operating in Texas."). Because AG Paxton is tasked with enforcing the statutes affected by Governor Abbott's unilateral designations

[7] *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) (reiterating that the Due Process Clause provides substantive rights to life, liberty, and property, and that due process "is conferred, not by legislative grace, but by constitutional guarantee").

of Plaintiffs as FTOs, TCOs, and proscribed entities under Subchapter H, and because he has taken steps to enforce these statutes, AG Paxton is liable under *Ex parte Young* for infringing upon Plaintiffs' liberty and property interests without any procedural safeguards for redress. *See* Tex. Civ. Prac. & Rem. Code §§ 125.064, 125.070 (authorizing Defendant Paxton to seek injunctive orders against Plaintiffs and its members as "public nuisances" and for violating any injunctive orders issued under the statute); Tex. Prop. Code § 5.259 (authorizing Defendant Paxton to bring lawsuits against designated entities that purchase or acquire interests in real property in Texas).

AG Paxton's argument that the legislative process has provided sufficient due process lacks all relevance to this case. *See* Motion, ECF No. 106 at 13. The Texas Legislature did not deprive Plaintiffs of their property interests; *Governor Abbott's Proclamation* did. Proclamation, ECF No. 26-1 at 5. The Texas Legislature defined "TCO" to mean "two or more persons who are citizens of or domiciled in a designated country; with an identifiable leadership who operate internationally; *and* who continuously or regularly associate to engage in corruption, violence, or the commission or other criminal activities." Tex. Prop. Code § 5.251(7). Plaintiffs are Texas organizations led by U.S. citizens and residents that operate exclusively in the United States. *See* Am. Compl., ECF No. 26 ¶¶ 1–3, 27, 48; *see also* ECF No. 46-6 ¶¶ 3–5 (AG Paxton asserting that each Plaintiff in this case "is an incorporated Texas nonprofit corporation"), 106 ("[Plaintiffs], which comprise the American Chapter of the Muslim Brotherhood are incorporated non-profits and are likewise domestic entities under State law."). Plaintiffs do not meet the Legislature's definition of TCO and, therefore, challenge the authority of Governor Abbott and AG Paxton to subject Plaintiffs to penalties that do not apply to them. *See McMurtray v. Holliday*, 11 F.3d 499, 504 (5th Cir. 1993) (holding that legislative act extinguishing property interests for all employees in a department did not violate due process where plaintiffs were indisputably employees of the

affected department and therefore subject to the statute).

The only statutory provision at issue here that allows the Governor to unilaterally designate any domestic entity as subject to its penalties is Section 5.254 of the Property Code. Tex. Prop. Code § 5.254(a). The Proclamation is the sole source of authority for AG Paxton to claim that Plaintiffs are TCOs under Texas law. ECF No. 26-1 at 5 (designating Plaintiffs as "proscribed entities under Texas Property Code § 5.254(a)(2)(A) . . . which prohibits them from purchasing or acquiring land in Texas"). Plaintiffs are not part of a broad class of individuals subject to this law—they are "a relatively small number of persons . . . who were exceptionally affected, in each case upon individual grounds, and it was held that they had a right to a hearing." *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 446 (1915) (citing *Londoner v. Denver*, 210 U.S. 373, 385 (1908)). Plaintiffs were entitled to a hearing under the Fourteenth Amendment prior to the Proclamation's designations, and AG Paxton should be enjoined from continuing to enforce these statutory penalties against Plaintiffs.

**E. Alternatively, Plaintiffs Should Be Granted Leave to Amend**

Generally, district courts should "'afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case' for good." *McLemore v. Lumen Techs., Inc.*, No. 25-30264, 2026 WL 252698, at *3 (5th Cir. Jan. 30, 2026) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)) (reversing dismissal with prejudice as abuse of discretion). Plaintiffs meet the pleading standard; however, should this Court disagree, dismissal should be without prejudice with leave to amend. If needed, Plaintiffs could add details regarding reputational injuries, property injuries, additional facts from the last seven months that further support Plaintiffs' claims (including AG Paxton's current lawsuit against Plaintiffs), and address any other identified deficiencies.

## V. <u>CONCLUSION</u>

This Court should deny Attorney General Paxton's Motion for Judgment on the Pleadings. In the alternative, should this Court find Plaintiffs' allegations in their Complaint insufficient, Plaintiffs request dismissal without prejudice and the opportunity to file a motion for leave to file a Second Amended Complaint under Local Rule CV-7(b).

Respectfully submitted this 21st day of August, 2026.

*/s/ Chelsea Glover*
Chelsea G. Glover
Bar No. 24097738
Charles D. Swift
Bar No. 24091964
Jinan Chehade
IL Bar No. 6345527

Muslim Legal Fund of America
100 N. Central Expy. Suite 1010
Richardson, Texas 75080
Tel: (972) 914-2507; Fax (972) 692-7454
cglover@clcma.org
cswift@clcma.org
jinan.chehade@mlfa.org

Lena F. Masri
MI Bar No. P73461
Gadeir Abbas
IL Bar No. 81161

CAIR Legal Defense Fund
453 New Jersey Ave. SE
Washington, DC 20003
T: (202) 488-8787
lmasri@cair.com
gabbas@cair.com

***Attorneys for Plaintiffs***